UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

IVAN ANTONYUK, et al.,

        *Plaintiffs-Appellees,*

        v.

STEVEN A. NIGRELLI, and MATTHEW J. DORAN,

        *Defendants-Appellants,*

WILLIAM FITZPATRICK, et al.,

        *Defendants.*

No. 22-2908

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR A STAY PENDING APPEAL AND AN ADMINISTRATIVE
STAY PENDING RESOLUTION OF THE MOTION**

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellants
28 Liberty Street
New York, NY 10005
(212) 416-6279

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
  *of Counsel*

Dated: November 28, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..........................................................................ii

PRELIMINARY STATEMENT................................................................ 1

ARGUMENT

    THE PRELIMINARY INJUNCTION SHOULD BE STAYED PENDING APPEAL......3

        A.   The Equities Support a Stay Pending Appeal..........................3

        B.   The District Court's Decision Is Flawed on the Merits............8

CONCLUSION ....................................................................................... 12

i

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Bonidy v. United States Postal Serv.*,
   790 F.3d 1121 (10th Cir. 2015) ........................................................... 10

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
   839 F.2d 93 (2d Cir. 1988) ..................................................................... 5

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities*
   *Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ................................................................. 8-9

*Dandridge v. Williams*,
   397 U.S. 471 (1970) ............................................................................... 7

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ............................................................................. 10

*Libertarian Party of Erie County v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020) ............................................................. 4, 9

*New York State Rifle & Pistol Association v. Bruen*,
   142 S. Ct. 2111 (2022) ..................................................................... 1, 10

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................... 8

*United States v. Decastro*,
   682 F.3d 160 (2d Cir. 2012) ................................................................. 9

*Virginia Office for Protection and Advocacy v. Stewart*,
   563 U.S. 247 (2011) ............................................................................... 6

## PRELIMINARY STATEMENT

Appellants seek a stay pending appeal of a preliminary injunction against the statewide enforcement of vital portions of New York's Concealed Carry Improvement Act (CCIA), including the requirement of "good moral character" to obtain a firearm permit, the prohibition on firearms in various sensitive locations including bars and theaters, and the obligation to obtain express consent prior to entering private property while armed. Absent a stay, the preliminary injunction ruling would disrupt the status quo, cause considerable confusion to the public and government agencies, and risk substantial public safety harms.

Appellees chiefly contend that the preliminary injunction would not cause irreparable harm but would merely return New York law to a pre-CCIA norm. As a factual matter, this statement is incorrect as the "good moral character" requirement has been a feature of New York licensing law since 1913. Moreover, appellees conveniently ignore that the pre-CCIA norm was predicated on the "proper cause" licensing requirement invalidated by the U.S. Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The CCIA was enacted specifically to address the ramifications of eliminating the "proper cause" requirement,

including the possibility that many additional guns could be carried in myriad places, with the corresponding risks of gun-related injuries and deaths. The CCIA was in effect for over two months prior to the preliminary injunction ruling; it was the district court's decision which upset the status quo and, together with two prior decisions from the same court, created enormous public and regulatory confusion.

Appellees likewise fail to rebut appellants' showing of an entitlement to a stay pending appeal. Appellees insist that the equities weigh against a stay because, in their view, the CCIA is constitutionally flawed. But merely raising a Second Amendment challenge does not entitle a plaintiff to immediate statewide relief, especially where, as here, appellants were not given a meaningful opportunity to defend the law. The district court's decision is also riddled with errors on the merits, including a flawed analysis of standing and an improper application of *Bruen*. If the preliminary injunction is not stayed in its entirety, it should at least be narrowed to the six appellees.

## ARGUMENT

### THE PRELIMINARY INJUNCTION SHOULD BE STAYED PENDING APPEAL

**A.    The Equities Support a Stay Pending Appeal.**

As explained in appellants' motion (at 14-19), the equities overwhelmingly support a stay pending appeal.[1] The injunction compels the State to grant firearms permits to applicants irrespective of whether they have "the essential character, temperament and judgment necessary to be entrusted with a weapon." Mot., Ex. C at 182 (enjoining enforcement of Penal Law § 400.00(1)(b)). The injunction would also permit firearms in parks, restaurants, bars, theaters, political protests, and other sensitive locations, and would allow persons to carry firearms onto any private property (including into a person's home) without obtaining express consent or even notifying the property owner of the presence of a deadly weapon on their property. *Id.* at 183-184.

---

[1] Appellees incorrectly assert that a three-judge panel of this Court improperly granted an interim stay. *See* Opp. at 3-5. Appellants timely filed this motion on November 12, five days after the district court issued its 184-page decision and during a holiday weekend. The motion complied with all requirements for emergency relief and appellants provided opposing counsel with 46-hour notice of the motion.

Appellees seek to minimize the extreme nature of the injunction by stating that the enjoined provisions "are entirely novel in New York law, as well lacking any historical analogue." Opp. at 8. To the contrary, the preliminary injunction precludes the State from enforcing the licensing requirement of "good moral character," which has been a principal component of the State's firearm-licensing scheme for over 100 years, has been upheld against constitutional challenge by this Court, *see Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 127 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111, and resembles long-standing features of licensing schemes in several other States, *see* State Defs.' Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj. at 18-19 (collecting examples). Relatedly, the injunction precludes the State from requiring permit applicants to provide information relevant to the assessment of an applicant's character. *See* Mot., Ex. C at 92-116.

Appellees contend that other provisions of state and federal law might independently allow for the denial of firearms permits to certain categories of dangerous persons and opine that the State might have passed a different statute to allow the denial of permits to those "'who have been found, based on their past conduct, to be likely to use the

4

weapon in a manner that would injure themselves or others.'" Opp. at 10-11 (quoting Mot., Ex. C at 103). The existence of other statutes that might preclude some categories of dangerous persons from obtaining firearms does not prevent the harm to New York from the inability to preclude different dangerous persons from obtaining a firearm through the longstanding "good moral character" requirement. Nor do appellees provide any support for their suggestion that the State should have to pass a different statute to avoid the irreparable harm from an erroneous preliminary injunction.

Appellees also minimize the regulatory chaos and public confusion that would ensue if the injunction remained in effect. *See* Opp. at 8-10. As an initial matter, the district court in this case has already created substantial confusion by issuing three different decisions in the span of ten weeks, each of which reached a different result as to which provisions of the CCIA may be enforced and for which reasons. *See Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (public confusion can constitute irreparable harm). In addition, the need for state and local law enforcement to explain the effect of these decisions to officials and members of the public and to implement compliance with a piecemeal

5

injunction that may ultimately be vacated on appeal is a substantial burden warranting a stay.[2]

Appellees are also wrong to argue that the mere presence of additional guns in certain places "cannot possibly be deemed a public safety threat." *See* Opp. at 11. Research confirms that the proliferation of guns in public spaces increases the likelihood of gun injuries and deaths. *See* Br. of Giffords L. Ctr. to Prevent Gun Violence as *Amicus Curiae* at 6-11, *Antonyuk v. Bruen*, No. 22-cv-734 (N.D.N.Y. Aug. 17, 2022), Dkt. No. 30.

Even with mandatory training, many people carrying guns will lack the tactical skills or judgment needed to use guns in self-defense, leading

---

[2] As noted, the injunction imposes burdens directly on appellants. In any event, appellees are wrong to suggest (*see* Opp. at 8-10) that burdens imposed on non-parties, including other governmental agencies and the public, are irrelevant to the stay analysis. At a minimum, such concerns are relevant to the question of whether a stay pending appeal would be in the public interest. And governmental concerns are especially relevant where, as here, appellees invoke the *Ex parte Young* exception to sovereign immunity to seek statewide relief against enforcement of a state law by naming two state officials as defendants. *See Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (noting that the *Ex parte Young* exception "rests on the premise—less delicately called a fiction—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." (quotation marks omitted)).

to accidental shootings of innocent bystanders and other lethal accidents. *Id.* at 11-12. Moreover, the presence of guns (including legally owned guns) can escalate commonplace disputes into dangerous confrontations. *See id.* at 12. It is no answer to say that shootings will happen in sensitive locations despite the CCIA. *See* Opp. at 12. Even if so, the Constitution "does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471, 486-87 (1970).

Appellees equally miss the mark in citing the Supreme Court's observation that the Second Amendment "'has controversial public safety implications.'" *See* Opp. at 13 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 783 (2010) (plurality op.)). And appellees are similarly wrong to argue that the alleged denial of their constitutional rights is sufficient to establish their own irreparable injury. *See* Opp. at 14-15. Under appellees' logic, the government could never show irreparable harm from an adverse Second Amendment decision, no matter how improvident, because the Constitution supposedly enshrines a tolerance of preventable gun violence. That is not—and cannot be—the law.

7

**B.  The District Court's Decision Is Flawed on the Merits.**

Appellants' likelihood of success on the merits further supports staying the Order pending appeal.[3] Contrary to appellees' contention (*see* Opp. at 5-6 & n.3), prevailing legal standards allow for calibrating the required merits showing to the strength of the equities. In arguing otherwise, appellees point to the Supreme Court's formulation of the first stay factor as whether the movant "has made a strong showing that [it] is likely to succeed on the merits." *See Nken v. Holder*, 556 U.S. 418, 434 (2009). But the Supreme Court and this Court have held that interim injunctive relief may be granted where the questions presented "'are grave, and the injury to the moving party'" without such relief "'will be certain and irreparable.'" *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 36 (2d Cir. 2010) (quoting *Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929)). *Nken* did not pass "at

---

[3] Appellees incorrectly assert that appellants' decision not to seek a stay pending appeal as to certain aspects of the district court's injunction (see Mot. at 13 n.5) means that appellants are not appealing those portions of the decision. *See* Opp. at 4-6 & n.2. To the contrary, appellants reserve the right to seek review of every adverse portion of the district court's ruling, while making prudential judgments about which portions of the ruling most urgently require a stay from this Court.

all, much less negatively," on this "more flexible approach" to injunctive relief or even "address the issue of a moving party's likelihood of success on the merits." *Citigroup Glob. Mkts*, 598 F.3d at 37. In any event, the evident flaws in the district court's decision give appellants a strong likelihood of success on appeal under any applicable standard.

First, appellees fail to meaningfully defend the district court's erroneous conclusions regarding standing—including its determination that an individual who has not applied for a permit has standing to challenge licensing requirements, a ruling plainly foreclosed by this Court's precedent. *See Libertarian Party*, 970 F.3d at 122; *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012). Contrary to appellees' suggestion (*see* Opp. at 17-18), the length of the district court's standing analysis does not make it correct, in the face of binding contrary law.

Second, appellees, like the district court, erroneously disclaim their obligation to establish that the challenged provisions of the CCIA implicate the Second Amendment in the first place. *See id.* at 16-18. *Bruen* made clear that the government's obligation to defend a challenged provision with historical evidence is triggered only when a challenger first shows that "the Second Amendment's plain text covers an individual's

9

conduct." 142 S. Ct. at 2129-30. In both *Heller* and *Bruen*, the challengers—and the Court—"canvassed the historical record" in depth for evidence supporting their textual interpretations before shifting the burden to the government to respond. *Id.* at 2127; *see also* Br. for Pet'rs at 25-40, *Bruen*, 142 S. Ct. 2111 (No. 20-843). And *Bruen* cannot be read to relieve the challengers of their initial burden, when the Court in *Bruen* endorsed certain licensing laws without any historical analysis, *see* 142 S. Ct. at 2138 n.9; *see also id.* at 2161-62 (Kavanaugh, J., joined by Roberts, J., concurring). Appellees are wrong to argue otherwise.

Third, appellees make no effort to meet their burden to establish that the Second Amendment applies at the outset. Here, the challenged provisions include the "good moral character" licensing requirement which precludes persons who are *not* law-abiding and responsible citizens from obtaining a firearm permit, and sensitive-place restrictions, which the Supreme Court has made clear fall outside the "scope of the Second Amendment" and are "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008); *see also Bonidy v. United States Postal Serv.*, 790 F.3d 1121, 1125-26 (10th Cir. 2015) (finding that the Second Amendment "does not apply" to sensitive places).

10

In any event, the State amply defended each challenged provision of the CCIA with robust historical analogues. Notwithstanding the extraordinarily compressed briefing schedule imposed by the district court in a case involving challenges to dozens of discrete statutory provisions, the State submitted a 117-page brief and hundreds of pages of historical statutes and primary sources. Unsurprisingly, appellees endorse the district court's cramped analysis of the State's historical evidence. *See* Opp. at 18-20. But as explained in appellants' motion (at 25-27), the court's decision was flawed in approach and reasoning and inconsistent with *Bruen*'s recognition that modern firearms regulation is an important governmental prerogative.

Finally, at a minimum, the district court overreached by granting disproportionate statewide injunctive relief based on highly individualized assertions of harms raised by the six individual appellees. The court had no cause to restrain defendants' enforcement of the CCIA as to everyone, everywhere in New York—including in Central Park, bars and restaurants in the Financial District, and theaters on Broadway—each approximately 250 miles from the Syracuse federal courthouse and none a proper subject of injunctive relief here.

11

Appellees barely dispute this point; instead, they mistakenly argue that they will not receive full relief personally unless the injunction applies statewide. *See* Opp. at 20. Naturally, an injunction limited to the appellees would apply statewide as to those appellees. However, there is no basis to impose drastic preliminary injunctive relief as to all other persons in the State.

## CONCLUSION

This Court should grant a stay pending appeal of the district court's order.

Dated:  New York, New York
   November 28, 2022

         Respectfully submitted,

         LETITIA JAMES
          *Attorney General*
          *State of New York*
         Attorney for Appellants

       By:   */s/ Ester Murdukhayeva*
         ESTER MURDUKHAYEVA
         Deputy Solicitor General

BARBARA D. UNDERWOOD     28 Liberty Street
 *Solicitor General*       New York, NY 10005
ESTER MURDUKHAYEVA     (212) 416-6279
 *Deputy Solicitor General*
  *of Counsel*

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Alenette B. Jordan, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 2,355 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

*/s/ Alenette B. Jordan*