# 22-2908-cv(L), 22-2972-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

_____

IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE, JOSEPH
MANN, LESLIE LEMAN, LAWRENCE SLOANE,

*Plaintiffs-Appellees,*

– v. –

STEVEN A. NIGRELLI, IN HIS OFFICIAL CAPACITY AS ACTING
SUPERINTENDENT OF THE NEW YORK STATE POLICE, MATTHEW J.
DORAN, IN HIS OFFICIAL CAPACITY AS THE LICENSING OFFICIAL OF
ONONDAGA COUNTY, JOSEPH CECILE, IN HIS OFFICIAL CAPACITY AS
THE CHIEF OF POLICE OF SYRACUSE,

*Defendants-Appellants.*

KATHLEEN HOCHUL, IN HER OFFICIAL CAPACITY AS THE
GOVERNOR OF THE STATE OF NEW YORK, WILLIAM FITZPATRICK, IN
HIS OFFICIAL CAPACITY AS THE ONONDAGA COUNTY DISTRICT
ATTORNEY, EUGENE CONWAY, IN HIS OFFICIAL CAPACITY AS THE
SHERIFF OF ONONDAGA COUNTY, P. DAVID SOARES, IN HIS
OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY OF ALBANY
COUNTY, GREGORY OAKES, IN HIS OFFICIAL CAPACITY AS THE
DISTRICT ATTORNEY OF OSWEGO COUNTY, DON HILTON, IN HIS
OFFICIAL CAPACITY AS THE SHERIFF OF OSWEGO COUNTY, JOSEPH
STANZIONE, IN HIS OFFICIAL CAPACITY AS THE DISTRICT
ATTORNEY OF GREENE COUNTY,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## JOSEPH CECILE

CITY OF SYRACUSE
OFFICE OF THE CORPORATION COUNSEL
Todd M. Long, Esq.
Danielle R. Smith, Esq.
*Attorneys for Defendant-Appellant Joseph Cecile*
233 East Washington Street, 300 City Hall
Syracuse, New York 13202
(315) 448-8400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

PRELIMINARY STATEMENT ....................................................1

ARGUMENT .....................................................................................3

   I.    The District Court Erred in Finding Plaintiff Johnson had Standing Against Chief Cecile ....................................................................3

   II.   The District Court Erred in Finding Plaintiff Johnson Would Suffer Imminent and Irreparable Harm ...............................................11

      A.   The District Court Erred in Assuming Plaintiff Johnson was a City Resident ...................................................................................11

      B.   The District Court Erred in Finding Plaintiff Johnson Would Suffer Irreparable Harm with Respect to the Rosamond Zoo ...........................15

   III.  The District Court Erred in Finding Plaintiff Johnson Established a Likelihood of Success on the Merits .........................................18

      A.   The District Court Erred in Finding a Cognizable Nexus Between Plaintiff Johnson and Chief Cecile .....................................................18

      B.   The District Court Erred in Failing to Consider that the Rosamond Gifford Zoo Contains Government Buildings and is an Educational Facility .....19

      C.   Chief Cecile Adopts the Arguments Raised by the State Defendants.....20

   IV.  The Trial Court Erred in Finding the Balance of Equities and Service of Public Interest Favor Plaintiffs ...............................................21

   V.   The Historical Record Supports Defendants, Not Plaintiffs ....................22

CONCLUSION ....................................................................................22

CERTIFICATE OF COMPLIANCE...................................................23

i

# TABLE OF AUTHORITIES

## Cases

*Am. Charities for Reasonable Fundraising Regulation, Inc. v. Shiffrin*, 205 F.3d 1321 (2d Cir 2000) .............................................................10

*Avitabile v. Beach*, 277 F. Supp. 3d 326 (N.D.N.Y. 2017) ......................................4

*Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979) ................................... 4, 5, 9, 10

*Cacchillo v. Insmed, Inc*., 638 F.3d 401 (2d Cir. 2011) ...........................................4

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016)..........................................10

*D.C. v. Heller*, 554 U.S. 570 (2008) .......................................................................19

*Does 1 – 10 v. Suffolk Cnty., N.Y.,* 2022 WL 2678876 (2d Cir. July 12, 2022)3,   4,   10, 11

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ................................................. 4, 8, 9, 10

*Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110 (2d Cir. 2009)..........15

*Frey v. Bruen*, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ................................3, 4

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)........................................10

*MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118 (2007) ........................... passim

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) .....................................................10

*Poe v. Ullman*, 367 U.S. 497 (1961).........................................................................9

*Steffel v. Thompson*, 415 U.S. 452 (1974) ..................................................... passim

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................... 4, 7, 8, 10

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) ...............................................12

*Younger v. Harris*, 401 U.S. 37 (1971)....................................................................9

**Rules**

Federal Rules of Appellate Procedure, Rule 28................................................. 20, 22

## PRELIMINARY STATEMENT

Cecile Chief[1] argued in his Opening Brief that Plaintiffs failed to meet their burden warranting preliminary injunctive relief. Chief Cecile first argued that Plaintiffs failed to establish standing—requiring Plaintiffs to demonstrate their burden by no less than that required on a motion for summary judgment. In response, Plaintiffs fail to mention, let alone distinguish, the two matters on which Chief Cecile heavily relied, including a decision from this Court. Instead, Plaintiffs cite Supreme Court precedent. However, the facts of those matters – facts which are noticeably absent from Plaintiffs' Brief[2] – are easily distinguishable from those at issue here and provide far clearer grounds for standing. Indeed, even a cursory review of this precedent does not support Plaintiffs' argument.

In addition to Plaintiffs' lack of standing, Chief Cecile maintained that Plaintiffs failed to establish they would suffer an imminent and irreparable harm given that 1) *the only* Plaintiff to assert a connection with the City, Plaintiff Johnson, did not claim to be a resident; and, 2) *the only* identified location in the City that Plaintiff Johnson intends to visit, Rosamond Zoo, was not owned or operated by the City. As to this latter argument, Chief Cecile further argued that the Rosamond Zoo

---

[1] Chief Cecile will employ the same short-hand references used in his Opening Brief.

[2] "Plaintiffs' Brief" refers to the Brief Plaintiffs filed in response to Chief Cecile's Opening Brief. *See* Doc. No. 216 (Con).

included aspects of teaching facilities and government buildings, areas where even the Supreme Court has ruled the state is permitted to regulate weapons.

In response, Plaintiff Johnson argues that it was Chief Cecile's responsibility *to prove* that Plaintiff Johnson was not a City resident. Plaintiff Johnson further submits that it was Chief Cecile's responsibility *to prove* that the Rosamond Zoo is more than just a zoo. Plaintiff Johnson's response constitutes an improper attempt to shift the burden of proof to Chief Cecile. However, Chief Cecile, as the non-movant, does not carry the burden. Rather, that burden rests entirely with Plaintiff.

Nevertheless, the following facts are incontrovertible, regardless of how much Plaintiffs attempt to redirect their burden and complicate the analysis: 1) Plaintiff Johnson did not claim to be a City resident (eliminating standing with respect to gas stations, grocery stores, home improvement stores, and big box stores); 2) the only identified location in the City that Plaintiff Johnson intends to visit is the Rosamond Zoo; 3) Plaintiff Johnson did not claim that he intended to travel through any City parks to access the Rosamond Zoo; 4) the Rosamond Zoo is not owned or controlled by the City; and, 5) the Rosamond Zoo has its own police force, rendering it all the more unlikely that Plaintiff Johnson would face an arrest by SPD. Again, with respect to standing, it is squarely Plaintiffs' burden to show that there is no genuine issue as to any material fact that Plaintiff Johnson has standing to bring an action against Chief Cecile.

Finally, Plaintiffs generally argue the virtuous nature of their position as the CCIA harms law-abiding citizens by preventing them from obtaining a license. Plaintiffs' argument is inherently contradictory and presupposes that every applicant is a law-abiding citizen. There is no proof in the record for this finding. For Plaintiffs to argue that "guns don't kill people; people kill people," while this Country is in the midst of a mass shooting epidemic, Plaintiffs' Brief, 24, is frankly insulting to the thousands of lives that are impacted every year by senseless death. Contrary to Plaintiffs' argument, the CCIA does not eliminate a law-abiding citizen's right to obtain a license and carry a firearm. Rather, the CCIA is the very mechanism by which licensing officials determine whether an applicant is in fact law-abiding.

Accordingly, for the following reasons, as well as for the reasons stated in the Opening Brief, Chief Cecile respectfully submits Plaintiffs failed to meet their burden warranting the extraordinary relief of a preliminary injunction.

## ARGUMENT

## I. The District Court Erred in Finding Plaintiff Johnson had Standing Against Chief Cecile

Chief Cecile's Opening Brief argued that Plaintiff Johnson, the only Plaintiff with even a tenuous connection to the City, lacked standing. *See generally*, Opening Brief, pp. 8-16. Chief Cecile cited several matters in support but focused on *Frey v. Bruen*, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022), and *Does 1 – 10 v. Suffolk Cnty., N.Y.,* 2022 WL 2678876 (2d Cir. July 12, 2022). Taken together, the matters

3

establish that a plaintiff lacks standing if there has been no threat of prosecution, *Frey*, 2022 WL 522478, and an attenuated threat is insufficient, *Does I - 10,* 2022 WL 2678876. Chief Cecile further argued that Plaintiffs' burden to establish standing for a preliminary injunction "will normally be no less than that required on a motion for summary judgment." Opening Brief, p. 9 (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)).

    *In response, Plaintiffs fail to mention, let alone distinguish, Frey and Does 1 – 10* from the facts at bar. Nor do Plaintffs rebut the legal standard by which they must establish standing; namely, *summary judgment*.

    As set forth below, as Plaintiffs cannot rebut the matters on which Chief Cecile relies, they instead chose to simply quote short excerpts from various Supreme Court matters without any discussion of the underlying facts.[3] *See* Plaintiffs' Brief, pp. 13-17 (citing *Steffel v. Thompson*, 415 U.S. 452 (1974); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979). However, as discussed below, a review of these matters reveals they do not support Plaintiffs' argument. This is particuarly

---

[3] Plaintiffs also refer to a Northern District decision. Plaintiffs' Brief, p. 16 n.9 (citing *Avitabile v. Beach*, 277 F. Supp. 3d 326 (N.D.N.Y. 2017)). Respectfully, as *Avitabile* is a district court matter issued several years before this Court's decision in *Does 1 - 10*, it carries little weight.

true for *Babbit*, as Plaintiffs conveniently misquote the Supreme Court effectively reversing the court's holding.

At the outset, each Supreme Court matter generally stands for the fundamental legal principle that a plaintiff need not be arrested to establish standing – a legal principle Chief Cecile does not dispute. However, that is not to say that anyone can establish standing. Rather, the plaintiff must face "a credible threat of prosecution." *Babbitt*, 442 U.S. at 298; *see also MedImmune*, 549 U.S. at 129 ("genuine threat of enforcement"). The question therefore becomes, at what point does "a credible threat of prosecution" exist? *Id.* As Plaintiffs' own matters reveal, "a credible threat of prosecution" does *not* exist under the facts here – namely, Plaintiff Johnson's claim that he *intends* to visit the Rosamond Zoo where he *could* be arrested by SPD *if* someone makes a complaint to the police *and if* the Rosamond Zoo's actual police force choose not to respond.

Turning first to *Steffel*, the facts upon which the Court based its determination found the petitioner "ha[d] been twice warned to stop handbilling . . . and ha[d] been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted." *Steffel*, 415 U.S. at 459. Of note, in a prior police interaction, petitioner had "left to avoid arrest," but "[h]is companion stayed, . . . continued handbilling, and was arrested." *Id.* at 455-56. The Supreme Court therefore found that petitioner had standing. *Id.* at 459. Unlike the petitioner

5

in *Steffel*, Plaintiff Johnson has had no police contact and has not been warned that his actions may result in his an arrest. Furthermore, in stark contrast to *Steffel*, Plaintiff Johnson was not *individually* warned about specified activity that would result in being arrested (e.g., his individualized decision to enter the Rosamond Zoo with a concealed handgun *after* an individualized warning as to the consequences of those specific actions resulting in an arrest under the CCIA if he were to do so). Finally, Plaintiff Johnson does not claim to know anyone who has been arrested for a CCIA violation by Chief Cecile or SPD. Thus, *Steffel* runs contrary to Plaintiffs' argument as it sets a far higher standing requirement.

*MedImmune* carries less weight as the matter involved a private contractual dispute between pharmaceutical companies. *MedImmune*, 549 U.S. at 121. Nevertheless, the petitioner in *MedImmune* received a letter from the respondent that the petitioner interpreted as "a clear threat to," among other things to "sue for patent infringement if petitioner did not make royalty payment as demanded." *Id.* at 122. If the respondent was successful, the "petitioner could [have been] ordered to pay treble damages." *Id.* Under these facts, the Supreme Court held that "[t]he rule that a plaintiff must . . . risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III." *Id.* at 134. Thus, the petitioner was specifically "threat[ened]" that its action could lead to litigation resulting in "treble damages." *Id.* Again, Plaintiff

Johnson himself has received no particularized "threat" from Chief Cecile. Indeed, Plaintiff Johnson does not allege any SPD contact of any kind. Moreover, unlike *MedImmune*, Plaintiff Johnson did not "risk" those damages (i.e., arrest) prior to seeking declaratory relief from the District Court. Accordingly, Plaintiffs have not satisfied the standing requirement as set forth in *MedImmune*.

Plaintiffs next rely on *Susan B. Anthony List*. Plaintiffs' Brief, p. 14. The petitioner in *Susan B. Anthony List* was an advocacy group subject to a non-criminal proceeding with the Ohio Elections Commission for allegedly making false statements against a congressman during the election. *Susan B. Anthony List*, 573 U.S. at 153-54. There, a finding against the petitioner would result in the matter being referred to a prosecutor. *Id.* at 153. Although a panel of the Commission found probable cause to conduct a hearing, the proceeding was withdrawn before the hearing was held. *Id.* at 154. However, the petitioner was clear that it intended to make similar statements in future elections.[4] *Id.* at 155.

The Supreme Court in *Susan* held the petitioner had standing as "a Commission panel [] already found probable cause to believe that [the petitioner] violated the statute" and the petitioner intended to issue "the same sort of statement

---

[4] A second petitioner refrained from engaging in similar conduct in light of Commission proceedings against the first petitioner. *Susan B. Anthony List*, 573 U.S. at 156. As with the first petitioner, the second petitioner stated its "desire[] to make the same or similar statements" in the future. *Id.*

. . . in the future." *Id.* at 162. In stark contrast to *Susan B. Anthony List*, Plaintiff Johnson has not been subject to any prior proceedings by Chief Cecile. Nor has Plaintiff Johnson identified any individuals who have been subject to such a proceeding. Like the two previous misapplied Supreme Court examples, there is nothing about Chief Cecile's general previous statements about complaint driven enforcement of the CCIA that would rise to some sort of finding (e.g., probable cause) as to the particularized prospective and speculative actions taken by Plaintiff Johnson, which could apply if Plaintiff Johnson were to go to the Rosamond Zoo with a concealed handgun. As such, unlike the petitioner in *Susan B. Anthony List*, Plaintiff Johnson has no credible reason to believe he would be subject to a subsequent proceeding.

As for *Elrod*, respectfully, the Supreme Court's decision has little relevance as the "injury" the petitioners suffered "was both threatened *and occurring*." *Elrod*, 427 U.S. at 374 (emphasis added). Specifically, "one of the respondents was [] threatened with discharge. In addition, many of the members of the class . . . were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge." *Id.* at 373. Here, Plaintiff Johnson claims he may face criminal and civil penalties if he violates the CCIA. JA135; JA141. However, Plaintiff Johnson does not claim he himself was "threatened" with these penalties

and certainly does not assert they are "occurring." As such, *Elrod* is inapposite and does not support Plaintiffs' argument.

In support of Plaintiffs' overrarching argument that Plaintiff Johnson need not face an actual arrest to satisfy standing, Plaintiff selectively quotes *portions* of a sentence from *Babbitt*. Specifically, Plaintiffs argue the following: "Moreover, Johnson need only allege 'that a prosecution is remotely possible' under these circumstances for this challenge to be 'susceptible to resolution by a federal court.' Johnson has met his burden." Plaintiffs' Brief, p. 15 (quoting *Babbitt*, 442 U.S. at 299). According to Plaintiffs, binding Supreme Court precedent dictates that a "remotely possible" prosecution establishes standing. If true, *Babbitt* would represent a significant departure from the Supreme Court's earlier holdings that an arrest be more than "chimerical." *Steffel*, 415 U.S. at 459 (quoting *Poe v. Ullman*, 367 U.S. 497, 508 (1961)).

However, contrary to Plaintiffs' position, the Supreme Court *did not* find a "remotely possible" prosecution was sufficient. In fact, the Supreme Court found just the opposite. The sentence Plaintiff quotes from *Babbitt*, in its entirety, reads as follows: "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' *they do not allege a dispute susceptible to resolution by a federal court*." *Id.* at 298-99 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971) (emphasis added).

9

Thus, when read in its entirety, and taken in context, it is clear that Plaintiff Johnson's "remotely possible" arrest, is precisely the type of speculative future harm the Supreme Court in *Babbitt* proscribed. Indeed, if Plaintiffs' interpretation was correct, subsequent Second Circuit case law would have long ago run afoul of the same by ruling in complete contradiction to the dictates of *Babbitt*. *See Am. Charities for Reasonable Fundraising Regulation, Inc. v. Shiffrin*, 205 F.3d 1321 (2d Cir 2000) ("a prosecution that is only 'remotely possible' is inadequate to support standing") (quoting *Babbitt*, 442 U.S. at 298-99); *see also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016); *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022); *Does 1 - 10*, 2022 WL 2678876, at *2.

In sum, the foregoing Supreme Court cases demonstrate a plaintiff may establish standing through: (i) the immediate threat of prosecution rendered directly to the plaintiff if the plaintiff takes a specific course of action, *Steffel*, 415 U.S. at 459, *MedImmune*, 549 U.S. at 121; (ii) the plaintiff's stated intention to take an action that was previously subject to challenge, *Susan B. Anthony List*, 573 U.S. at 162; or (iii) an "occurring" constitutional violation, *Elrod*, 427 U.S. at 373-74. As none of these scenarios are present here, Plaintiffs own citations establish that Plaintiff Johnson lacks standing as against Chief Cecile.

10

Respectfully, if this Court found the plaintiffs in *Does 1 - 10* lacked standing, despite actual police contact directing them to take a specific action or face a consequence, then so too does Plaintiff Johnson lack standing. Chief Cecile therefore respectfully submits that the District Court erred in finding Plaintiff Johnson had standing against Chief Cecile.

## II. The District Court Erred in Finding Plaintiff Johnson Would Suffer Imminent and Irreparable Harm

### A. The District Court Erred in Assuming Plaintiff Johnson was a City Resident

Chief Cecile argued in his Opening Brief that Plaintiff Johnson did not claim to be a City resident. Opening Brief, pp. 17-19. As such, the District Court's finding that Plaintiff Johnson was a resident was an assumption and not based on fact. *Id.* Plaintiff Johnson's assumed residency is of the utmost importance as it formed the basis for the District Court's finding that Plaintiff Johnson's unidentified "gas stations, grocery stores, home improvement stores, [and] big box stores" *could* be located within the City and therefore under Chief Cecile's purview. SA83. Plaintiffs respond to Chief Cecile's argument with the following: 1) "if Chief Cecile had any questions about Johnson's residency, he could have inquired" at the hearing; and 2) Plaintiff Johnson's residency is irrelevant to his stated intention to visit the Rosamond Zoo. Plaintiffs' Brief, pp. 18-20.

11

Prior to addressing Plaintiffs' arguments, notably absent from Plaintiffs' Brief is a record citation wherein Plaintiff Johnson claims to be a City resident. This omission is not surprising as no citation exists. Accordingly, Plaintiffs implicitly, if not explicitly, acknowledge that the District Court's finding could only have been an assumption.

Plaintiffs' first argument – that Chief Cecile "could have inquired" into Plaintiff Johnson's residence – improperly shifts the movant's burden of proof to Chief Cecile. Plaintiffs are attempting to rely on Plaintiff Johnson's assumed residence and therefore carry the sole burden to establish that fact. *See Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.") (quotations and citations omitted, emphasis in original). Respectfully, Chief Cecile is not required to prove Plaintiff Johnson's residency, particularly when Plaintiff Johnson never asserted he was a City resident. Instead, Plaintiffs must establish Plaintiff Johnson's residency by a "clear showing." *Id.* Plaintiffs simply have not met their burden.

Plaintiffs next argue Plaintiff Johnson's residency is irrelevant to his stated intention to visit to the Rosamond Zoo. Plaintiffs conflate Chief Cecile's residency argument with his subsequent Rosamond Zoo argument. Chief Cecile's Rosamond Zoo argument is premised on the undisputed fact that the City does not own or

control the Rosamond Zoo. Moreover, the Rosamond Zoo has its own police force. As such, it is unlikely that Plaintiff Johnson would suffer irreparable harm by Chief Cecile when the Rosamond Zoo. Such facts further erode Plaintiff Johnson's argument by creating a genuine issue of material fact that challenges Plaintiff's standing as to his credible threat of imminent arrest by SPD at the Rosamond Zoo under his hypothetical scenario. Thus, this argument was not based on Plaintiff Johnson's residence.

Plaintiff Johnson's residency is, however, relevant to Plaintiffs' contention that *as a City resident*, the unnamed retail stores Plaintiff Johnson claims he visits, JA140, could be located within the City. Despite being put on notice of this argument, *see* Opening Brief, p. 19, Plaintiffs still fail to cite a single retail location within the City that Plaintiff Johnson intends to visit. The reason for Plaintiffs' silence is simply that there is no such retail location.

Although Plaintiffs fail to cite a retail location in the City, they inexplicably assert that they "have explained that 'Defendant Cecile's jurisdiction includes places where Plaintiffs intend to be in violation of the CCIA.'" Plaintiff's Brief, p. 17, n. 10 (citing JA24, ¶ 14; JA135, 137-138, 140). Plaintiffs are either mistaken or intentionally misleading. None of the referenced appendix pages names a single location within the City where Plaintiff Johnson intends to visit, except the Rosamond Zoo. *See* JA24, ¶ 14 (includes the conclusory quote from Plaintiffs' Brief,

13

but does not name any locations); JA135 (does not mention the City or Chief Cecile); JA137-38 (same); JA140 (same). Although Plaintiffs attempt to expand the record, respectfully, Plaintiff Johnson's declaration speaks for itself. JA134-42. A review of Plaintiff Johnson's declaration does not include *any* retail locations within the City. JA134-42.

Rather than admit their error, Plaintiffs fault Chief Cecile for failing to "allege[] that such locations (other than 'Longhorn Steakhouse') are *not* within Syracuse and thus outside his jurisdiction." Plaintiffs' Brief, pp. 17-18, n. 10 (emphasis in original). Plaintiffs' position requires Chief Cecile to demonstrate fictitious locations are not within the City's limits[5]. Once again, Plaintiffs seek to shift *their burden* to obscure the fundamental failures in Plaintiff Johnson's declaration. Plaintiff Johnson does not now, nor has he ever, identified a retail location within Chief Cecile's jurisdiction or under his authority. *Id.*

Ultimately, Plaintiffs first ask this Court to find Plaintiff Johnson is a City resident (although the evidence and pleadings to date fail to demonstrate same).

---

[5] Conversely, Chief Cecile addressed the only named locations that could conceivably be located within the City; namely, the New York State Fairgrounds ("State Fairgrounds") and Longhorn Steakhouse. As to the State Fairgrounds, the District Court did not reach Chief Cecile's argument as it ruled Plaintiff Johnson did not express an immediate intention to visit the Fairgrounds. SA72-73; *see also* JA246 (City Zoning Map depicting the western edge of the City, which lies east of the State Fairgrounds). The District Court agreed with Chief Cecile that "no Longhorn Steakhouses exist in the City." SA66. Plaintiffs do not argue that the City contains the State Fairgrounds or a Longhorn Steakhouse.

Then, based on such fictitious residency, Plaintiffs ask this Court to find the unidentified locations Plaintiff Johnson intends to visit are located in the City (although he does not identify any locations within the City, save the Rosamond Zoo). Plaintiffs' requests are precisely the type of "remote" and "speculative" harm this Court prohibits. *See Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) ("[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent"). The record before this Court is simply devoid of any facts or evidence establishing that Plaintiff Johnson has met his burden demonstrating any alleged harm is actual and imminent. Moreover, the District Court abused its discretion to wrongly infer the fact that Plaintiff Johnson is a City resident, *see* SA66 n.49, despite Plaintiff Johnson never once articulating that fact in his declaration.

Based on the foregoing, Chief Cecile respectfully submits Plaintiff Johnson has failed to establish by a "clear showing," that he will suffer an "actual and imminent" injury by Chief Cecile at any of the unidentified retail locations.

### B. The District Court Erred in Finding Plaintiff Johnson Would Suffer Irreparable Harm with Respect to the Rosamond Zoo

Chief Cecile demonstrated in his Opening Brief the Rosamond Zoo is neither owned nor controlled by the City. Moreover, he demonstrated that the Rosamond Zoo has its own independent police force (County Park Rangers). Opening Brief, pp. 19-22. Thus, for Plaintiff Johnson to meet his burden of proof to show irreparable

harm by Chief Cecile, the following must occur: 1) Plaintiff Johnson is discovered at the Rosamond Zoo carrying a concealed weapon; 2) Plaintiff Johnson demonstrates that the Rosamond Zoo is not a protected site as set forth in *Heller* (as it is both an educational facility and contains government administrative buildings); 3) someone makes a complaint to the police; 4) the County Park Rangers choose not to respond; 5) SPD responds; and (6) Plaintiff Johnson is arrested. *Id.* Plaintiffs' response does not rebut any of these fundamental facts.

Rather, Plaintiffs argue that Plaintiff Johnson's residence is irrelevant to whether he will suffer an irreparable harm by Chief Cecile when he visits the Rosamond Zoo. Plaintiffs' Brief, p. 19. As previously stated, Plaintiffs conflate Chief Cecile's residency argument with his Rosamond Zoo argument. Chief Cecile's Rosamond Zoo argument is not premised on Plaintiff Johnson's residency.

Plaintiffs further assert that Chief Cecile "has stated that he would enforce the CCIA in such circumstances," namely, "'crimes in progress' at the Zoo." Plaintiffs' Brief, p. 19. Although the sentence's prior clauses include a record citation, this specific clause does not, as there is none. Chief Cecile has *never* said he would enforce the CCIA absent a complaint. Chief Cecile has *never* said he would enforce the CCIA at non-City owned properties, such as the Rosamond Zoo. In sum, and contrary to Plaintiff Johnson's statements, Chief Cecile has *never* "stated that he would enforce the CCIA in such circumstances." Plaintiffs' Brief, p. 19.

16

According to Plaintiffs, if Chief Cecile's argument is accepted, "no one could ever bring a challenge to a 'sensitive location' situated in a location with overlapping jurisdictions . . ., because each potential defendant who enforces the law (city police, county sheriff, park ranger, state police, and who-knows-who-else) could simply point the finger at the others to avoid liability." Plaintiffs' Brief, p. 20. Respectfully, Plaintiffs' *reductio ad absurdum* argument should be rejected.

*First*, the County-owned Rosamond Zoo has County Park Rangers present at the facility. Plaintiffs do not dispute this fact. Defendants Onondaga County Sheriff Eugene Conway and Onondaga County District Attorney William Fitzpatrick (collectively, "County Defendants"), also do not dispute this fact. Plaintiffs have not cited any authority for their novel proposition that a property owner can disavow liability for injuries occurring on their property.

*Second*, Plaintiffs' doomsday scenario has not even occurred here. The District Court held the County Defendants were "proper Defendants to [Plaintiff] Johnson's challenge with regard to zoos." SA43. The County Defendants have not appealed the District Court's decision. Thus, to use Plaintiffs' wording, the County Defendants have *not* "point[ed] the finger at [Chief Cecile] to avoid liability." Plaintiffs' Brief, p. 20.

In sum, Plaintiffs argue that Plaintiff Johnson *could, might* or may *possibly* suffer an irreparable harm by Chief Cecile. If the legal standard for a preliminary

17

injunction was "could", "might" or "possibly" then perhaps Plaintiffs' argument would be compelling. However, the standard is one of "clear showing," *Mazurek*, 520 U.S. 968, 972 (1997), a phrase that appears nowhere in Plaintiffs' Brief. Plaintiffs have failed to satisfy their burden of a "clear showing" when they effectively concede the police force present at the Rosamond Zoo, County Park Rangers, is not under Chief Cecile's control.

## III. The District Court Erred in Finding Plaintiff Johnson Established a Likelihood of Success on the Merits

### A. The District Court Erred in Finding a Cognizable Nexus Between Plaintiff Johnson and Chief Cecile

Chief Cecile argued in his Opening Brief that Plaintiffs failed to establish a likelihood of success on the merits, in part, due to Plaintiffs' failure to identify any locations in the City owned or controlled by Chief Cecile. Opening Brief, p. 22. Plaintiffs do not cite any locations in response. As argued throughout this Brief, Plaintiffs attempt to improperly expand the record and particularly Plaintiff Johnson's declaration. *See supra* Argument II.A. However, the record could not be clearer – Plaintiff Johnson does not claim to be a City resident and the *only* City location Plaintiff Johnson intends to visit is not owned or controlled by the City. Respectfully, Plaintiffs carry the burden on their motion and must be limited to the record before this Court.

**B.** **The District Court Erred in Failing to Consider that the Rosamond Gifford Zoo Contains Government Buildings and is an Educational Facility**

Chief Cecile argued in his Opening Brief the District Court erred in failing to consider whether the Rosamond Zoo contained governmental administrative buildings and elements of a teaching hospital, where a state may lawfully prohibit firearms. Opening Brief, pp. 22-23 (citing *D.C. v. Heller*, 554 U.S. 570, 626 (2008)). In response, Plaintiffs do not dispute the Supreme Court's holding in *Heller* that a state may prohibit firearms at "schools and government buildings." *Heller*, 554 U.S. at 626. Nor do Plaintiffs dispute that Cornell University College of Veterinary Medicine has an education partnership with the Rosamond Zoo. Rather, Plaintiffs generally contend Chief Cecile failed to conclusively establish his argument. Plaintiffs' Brief, pp. 22.

As with many of Plaintiffs' contentions, Plaintiffs' argument seeks to shift their burden of proof to Chief Cecile. Chief Cecile is not required to prove the various elements that make up the Rosamond Zoo. Instead, Plaintiffs and Plaintiffs alone bear that burden, a burden they have not satisfied.

The Rosamond Zoo is mentioned in only one paragraph in Plaintiff Johnson's declaration. JA138-39, ¶17. Beyond claiming the Rosamond Zoo is located in the City and contains "otters and wolves," there is no description of the facility. For example, Plaintiff Johnson does not describe the size or scope of the Rosamond Zoo.

19

Plaintiff Johnson does not describe how he would access the Rosamond Zoo.[6] Plaintiff Johnson does not discuss any buildings or personnel.

In sum, it is Plaintiffs' burden, as the moving party, to establish a likelihood of success on the merits on their claim that the CCIA cannot regulate firearms at the Rosamond Zoo. At a minimum, this burden would require a basic description of the facility and the scope of the programming provided.

Respectfully, Plaintiffs' failure to provide even a basic description of the facility cannot justify the relief sought. This is particularly true when considered in conjunction with the undisputed fact that Cornell University has an educational relationship with the Zoo. The District Court therefore erred in failing to consider Chief Cecile's meritorious argument.

## C. Chief Cecile Adopts the Arguments Raised by the State Defendants

As he did in his Opening Brief, Chief Cecile respectfully adopts the arguments raised in the State Defendants' Appellate Briefs concerning the constitutionality of the CCIA. Fed. R. App. P. 28(i).

---

[6] The District Court suggested that Plaintiff Johnson would "walk[] to the zoo (through Burnet Park)." SA44. Chief Cecile argued in his Opening Brief that there was no evidence to support this conclusion. Opening Brief, pp. 20-21. Plaintiffs do not cite any evidence in response.

## IV. The Trial Court Erred in Finding the Balance of Equities and Service of Public Interest Favor Plaintiffs

Chief Cecile argued in his Opening Brief that Plaintiff Johnson's "lack of standing, tenuous City connection and the speculative nature of the future harm he may incur" are far outweighed by the "City's imperative to protect all of its citizens" through reasonable and prudent firearms legislation, such as the CCIA. Opening Brief, pp. 24-25. In response, Plaintiffs generally argue that the balance weighs in their favor as the law is unconstitutional. Plaintiffs' Brief, pp. 23-26.

At the outset, Plaintiffs' argument presupposes that the CCIA is unconstitutional yet no court has issued that finding. Indeed, even the District Court held that aspects of the CCIA were historically supported and therefore likely constitutional. *See* SA144-46.

Furthermore, Plaintiffs failed to address Chief Cecile's specific argument – that the balance weighs in Chief Cecile's favor *because* of Plaintiff Johnson's "lack of standing, tenuous City connection and the speculative nature of the future harm he may incur." Opening Brief, p. 25. Indeed, Plaintiff Johnson is never mentioned in this portion of Plaintiffs' Brief. *See* Plaintiffs' Brief, pp. 23-26. Respectfully, Plaintiffs' silence represents, at the very least, an acknowledgement that there exists no cognizable relationship between Plaintiff Johnson and the City or Chief Cecile warranting the relief Plaintiffs seek.

21

**V.     The Historical Record Supports Defendants, Not Plaintiffs**

Chief Cecile's opposition to Plaintiffs' Motion focused on Plaintiff Johnson's tenuous connection with the City and acknowledged that the State Defendants were better positioned to argue the constitutionality of the CCIA. In accordance with Rule 28 of the Federal Rules of Appellate Procedure, Chief Cecile respectfully adopts the arguments raised in the State Defendants' Appellate Briefs concerning the historical application of firearms regulations. Fed. R. App. P. 28(i)

## CONCLUSION

For the foregoing reasons, Chief Cecile respectfully submits that the District Court's Decision and Preliminary Injunction (SA1-184) should be reversed.

Dated: February 21, 2023                    Respectfully Submitted,

SUSAN R. KATZOFF, ESQ.
Corporation Counsel
300 City Hall
Syracuse, New York 13202

_____

Todd M. Long, Esq.
Danielle R. Smith, Esq.

*Attorneys     for     Joseph     Cecile,
Defendant-Appellant*

22

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-volume limitations of Federal Rule of Appellate Procedure 32(a)(5), Federal Rule of Appellate Procedure 32(a)(7) and Local Rule 32.1(a)(4)(B) because this brief is in 14-Point Times New Roman and contains 5,169 number of words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Dated: February 21, 2023

SUSAN R. KATZOFF, ESQ.
Corporation Counsel
300 City Hall
Syracuse, New York 13202

_____
Todd M. Long, Esq.

*Attorneys for Joseph Cecile, Defendant-Appellant*