## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

Docket Number(s): _22-2908(Lead), 22-2972(Consolidated)_    Caption [use short title]

Motion for: **Leave to File Amicus Curiae Brief and**

**for extension of time to file proposed Brief**

_____

Antonyuk, et al. v. Nigrelli, et al.

Set forth below precise, complete statement of relief sought:

The Minority Leader of the New York State Senate, Robert G. Ortt,

and the Minority Leader of the New York State Assembly, William A. Barclay,

joined by several Members of the New York State Senate and Assembly,

request leave to file the proposed amicus curiae brief in support of Plaintiffs-Appellees Ivan Antonyuk, et al. ("Appellees") and urge

that the Decision and Order issued by the United States District Court for the Northern District of New York,

which blocked enforcement of multiple provisions of the Concealed Carry Improvement Act, L. 2022, Ch. 371, be upheld.

**MOVING PARTY:** Minority Leader of the New York State Senate, Robert G. Ortt and Senator Andrew J. Lanza, et al., and Minority Leader of the New York State Assembly, William A. Barclay and Assembly Members Robert Smullen and Christopher Tague, et al.

**OPPOSING PARTY:** Defendants-Appellants Steven A. Nigrelli, et al.

☐ Plaintiff       ☐ Defendant

☐ Appellant/Petitioner   ☐ Appellee/Respondent

**MOVING ATTORNEY:** John Ciampoli, Esq.    **OPPOSING ATTORNEY:** Please see annexed Addendum

[name of attorney, with firm, address, phone number and e-mail]

Perrillo & Hill, LLP

285 W. Main Street, Suite 203, Sayville, New York 11782

CiampoliLaw@yahoo.com

Court- Judge/ Agency appealed from: _____

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No If yes, enter date:_____

**Signature of Moving Attorney:**

_s/ John Ciampoli, Esq._  Date: _02/21/23_   Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

## MOTION INFORMATION STATEMENT ADDENDUM

Opposing Party: Steven A. Nigrelli, et al.
Opposing Attorney: Assistant Solicitor General Philip Levitz, Esq.
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
philiplevitz@ag.ny.gov

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Opposing Party: Matthew J. Doran, et al.
Opposing Attorney: Assistant Solicitor General Philip Levitz, Esq.
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
philiplevitz@ag.ny.gov

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Opposing Party: Joseph Cecile, et al.
Opposing Attorney: Danielle Smith, Esq.
City of Syracuse Office of the Corporation Counsel
233 East Washington Street
300 City Hall
Syracuse, NY 13202
315-448-8400
DSmith@syrgov.net

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

# 22-2908-cv(L), 22-2972-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE,
JOSEPH MANN, LESLIE LEMAN, LAWRENCE SLOANE,

*Plaintiffs-Appellees,*

– v. –

STEVEN A. NIGRELLI, in his Official Capacity as Acting Superintendent of the
New York State Police, MATTHEW J. DORAN, in his Official Capacity as the
Licensing Official of Onondaga County, JOSEPH CECILE, in his Official
Capacity as the Chief of Police of Syracuse,

*Defendants-Appellants,*

KATHLEEN HOCHUL, in her Official Capacity as the Governor of the State of
New York, WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga
County District Attorney, EUGENE CONWAY, in his Official Capacity as the

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**MOTION FOR LEAVE TO FILE BRIEF FOR *AMICI CURIAE*
MINORITY LEADER OF THE NEW YORK STATE SENATE, ROBERT
G. ORTT AND SENATOR ANDREW J. LANZA, ET AL., JOINED BY
SEVERAL NEW YORK STATE SENATORS AND THE MINORITY
LEADER OF THE NEW YORK STATE ASSEMBLY, WILLIAM A.
BARCLAY AND ASSEMBLY MEMBERS ROBERT SMULLEN AND
CHRISTOPHER TAGUE, ET AL., JOINED BY SEVERAL MEMBERS OF
THE NEW YORK STATE ASSEMBLY IN SUPPORT OF PLAINTIFFS-
APPELLEES AND AFFIRMANCE**

JOHN CIAMPOLI
PERILLO HILL LLP
*Attorneys for Amici Curiae*
285 West Main Street, Suite 203
Sayville, New York 11782
(631) 582-9422

Sheriff of Onondaga County, P. DAVID SOARES, in his Official Capacity as the
District Attorney of Albany County, GREGORY OAKES, in his Official
Capacity as the District Attorney of Oswego County, DON HILTON, in his
Official Capacity as the Sheriff of Oswego County, JOSEPH STANZIONE,
in his Official Capacity as the District Attorney of Greene County,

*Defendants.*

**INTRODUCTION**

Pursuant to Federal Rule of Appellate Procedure 29, *amici curiae* Minority Leader of the New York State Senate Robert G. Ortt and Senator Andrew J. Lanza, et al., joined by seven Members of the New York State Senate and Minority Leader of the New York State Assembly William A. Barclay and Assembly Members Robert Smullen and Christopher Tague, et al., joined by 17 fellow Members of the New York State Assembly, ("*Amici*")[1] respectfully request leave to file the annexed *amicus curiae* brief in support of *Plaintiffs-Appellees* Ivan Antonyuk, et al. ("Appellees") and urge that the Decision and Order issued by the United States District Court for the Northern District of New York (Suddaby, J.), which blocked enforcement of multiple provisions of the Concealed Carry Improvement Act (CCIA), L. 2022, ch. 371, be upheld. See Fed. R. App. P. 29. Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *Amici* certify that all parties to this proceeding have been contacted in connection with the application for *Amicus* Status. See Fed. R. App. P. 29(a)(2). *Plaintiffs-Appellees* have consented to the filing of this brief. *Defendant-Appellants* have refused to give their consent. *Amici* certify that no party's counsel authored the brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief, and no other

---

[1] Please see the annexed Addendum for a list and description of *Amici*.

1

person contributed money intended to fund preparing or submitting the brief.  See Fed. R. App. P. 29(a)(4)(E).

Your proposed *Amici* jointly comprise 30 Republican Members of the New York State Legislature, entrusted by the State Constitution to exercise legislative power. As Members of the Legislature, *Amici* were elected by the voters of New York State to, *inter alia*, consider and vote on legislation before their respective houses. *Amici's* function as duly-elected representatives underscores the necessary role of their involvement in matters of significant public interest such as the case at bar.

As the Court is likely aware, the 2023 State Legislative Session is currently underway, and in addition to the weekly convening of the Legislature for session days, its Members are presently in the process of conducting extensive joint budget hearings.  The bicameral nature of the Legislature, and the extensive conferencing that is required by both houses of the Legislature in order to determine whether to engage in litigation, or file an *amicus curiae* brief in any active matters, presents unique burdens and hinderances.  Here, *Amici* recently became aware that the deadline for filing an *amicus* brief in the instant matter was on February 8, 2023. Despite their belated application, *Amici* respectfully submit that the parties would not be prejudiced if *Amici* are granted leave to file their annexed proposed *amicus curiae* brief.  Conversely, the constituencies represented by the *Amici*, comprised

of New York State residents from diverse geographic regions of the State, would be severely prejudiced should *Amici* not be granted leave to file their proposed *amicus* brief, especially given their legitimate good cause for their untimely application.

As elaborated above, *Amici* are able to demonstrate legitimate good cause for filing their motion for leave to file an *amicus* brief nearly a week immediately following the deadline. The inordinately time-pressing nature of their constitutionally-mandated duties as duly-elected Members of the New York State Legislature, only exacerbated by the particular current events of the consideration of the 2023 Executive Budget Proposal which was released on February 1, 2023, and the accompanying nearly daily joint budget hearings, serve to excuse untimeliness.

Pursuant to Federal Rule of Appellate Procedure 29(a)(6), this Court may grant leave for later filing. See Fed. R. App. P. 29(a)(6). *Amici* respectfully submit that this matter unequivocally involves matters of significant public interest, and it has been noted that courts are more likely to grant leave to appear as an *amicus* curiae in cases involving public interest, and "a public body clothed with powers and duties affecting the public interest, and involved in the subject matter presented before the court, may be entitled to the favor of appearing as *amicus* curiae." See Andersen v. Leavitt, No. 03-cv-6115 (DRH) (ARL), 2007 U.S. Dist. LEXIS

3

59108, at *7 (E.D.N.Y. Aug. 13, 2007) (quoting 4 Am. Jur. 2d Amicus Curiae § 3 (updated May 2007) (footnotes omitted). Despite their belated application, *Amici* are comprised entirely of duly-elected officials of a public body, and indeed clothed with powers and duties affecting the public interest, and are in one form or another, involved in the subject matter presented before the Court, namely the defense of the federal and state constitutions and of legislative proposals that will affect the over 20 million people that reside in New York State.

Lastly, *Amici* respectfully submit that their motion for leave to file an *amicus curiae* brief, along with consideration of their proposed *amicus curiae* brief, will not result in any prejudice or unnecessary delay to the parties or to the Court. Conversely, substantial prejudice to *Amici,* and the constituencies that they represent, would undoubtedly result from denial of the instant Motion.

## I.  IDENTITY AND PROPOSED INTERESTS OF THE AMICI

*Amici* are duly-elected officials that respectively represent both houses of the New York State Legislature, and the electors and constituents of diverse districts spanning all across New York State.  *Amici* and the constituencies that they represent are directly impacted by the issues presented in this matter, especially in their role as duly-elected representatives that are tasked with legislating in accordance, and within the confines of, the federal and state constitutions.  *Amici*

4

are committed to ensuring that the United States Constitution is protected from legislation that seeks to unlawfully violate its sacred provisions. The people, in framing the Constitution, committed to the Legislature the whole law-making power of the state, except as expressly or impliedly withheld in that document. *Amici* respectfully submit that the District Court's Decision and Order correctly found Chapter 371 of the Laws of 2022 (Concealed Carry Improvement Act (CCIA)) unconstitutional under the First and Second Amendments to the United States Constitution and correctly preliminarily enjoined said unconstitutional provisions.

## II. AN AMICUS BRIEF FROM MEMBERS OF THE NEW YORK STATE LEGISLATURE IS NECESSARY IN THIS CASE, AND THE MATTERS ASSERTED ARE UNEQUIVOCALLY RELEVANT TO ITS DISPOSITION

In their proposed *amicus* brief annexed hereto, *Amici* provide their perspectives as Members of the legislative body tasked with drafting, debating, and passing laws that pass constitutional muster on behalf of the People of the State of New York. As duly-elected Members of the New York State Legislature, *Amici* are uniquely qualified to apprise the Court on the legislation at issue in the present matter. Specifically, as Members of the New York State Legislature, *Amici* are tasked with passing laws that uphold the federal and state constitutions, and with recognizing which legislative proposals are likely constitutionally violative. With the

exception of new Members first elected to office for the 2023-2024 Legislative Session, *Amici* each cast votes in the negative against passage of the CCIA on July 1, 2022. *Amici* describe the importance of their, and their constituents' constitutional rights to bear arms and freely exercise their religious beliefs, as well as the importance of federalism. *Amici's* insights are relevant because the instant Appeal involves the consideration of the constitutionality of legislation that originated in the New York State Legislature and which was considered and voted on by Members of the New York State Legislature, and also because *Amici* offer an alternative perspective to that of *Appellants* without simply duplicating the arguments of *Appellees*. The issues raised in *Amici*'s proposed *amicus* brief would therefore necessarily assist the Court in the disposition of the case on appeal.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully ask this Court to grant their motion for leave to file their proposed *amicus* brief in support of Plaintiffs-Appellees.

/s/ John Ciampoli
John Ciampoli

6

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1,293 words, exclusive of the table of contents, table of citations, certificate of service, certificate of digital submission and this certificate of compliance, which are exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2021 in a proportionally spaced typeface, namely Times New Roman 14-point font.

Dated: February 21, 2023

/s/ John Ciampoli
John Ciampoli

**EXHIBIT A**

# 22-2908-cv(L), 22-2972-cv(CON)

## United States Court of Appeals
### *for the*
## Second Circuit

IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE,
JOSEPH MANN, LESLIE LEMAN, LAWRENCE SLOANE,

*Plaintiffs-Appellees,*

– v. –

STEVEN A. NIGRELLI, in his Official Capacity as Acting Superintendent of the
New York State Police, MATTHEW J. DORAN, in his Official Capacity as the
Licensing Official of Onondaga County, JOSEPH CECILE, in his Official
Capacity as the Chief of Police of Syracuse,

*Defendants-Appellants,*

KATHLEEN HOCHUL, in her Official Capacity as the Governor of the State of
New York, WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga
County District Attorney, EUGENE CONWAY, in his Official Capacity as the

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**BRIEF FOR *AMICI CURIAE* MINORITY LEADER OF THE NEW YORK
STATE SENATE, ROBERT G. ORTT AND SENATOR ANDREW J.
LANZA, ET AL., JOINED BY SEVERAL NEW YORK STATE
SENATORS AND THE MINORITY LEADER OF THE NEW YORK
STATE ASSEMBLY, WILLIAM A. BARCLAY AND ASSEMBLY
MEMBERS ROBERT SMULLEN AND CHRISTOPHER TAGUE, ET AL.,
JOINED BY SEVERAL MEMBERS OF THE NEW YORK STATE
ASSEMBLY IN SUPPORT OF PLAINTIFFS-APPELLEES AND
AFFIRMANCE**

JOHN CIAMPOLI
PERILLO HILL LLP
*Attorneys for Amici Curiae*
285 West Main Street, Suite 203
Sayville, New York 11782
(631) 582-9422

Sheriff of Onondaga County, P. DAVID SOARES, in his Official Capacity as the District Attorney of Albany County, GREGORY OAKES, in his Official Capacity as the District Attorney of Oswego County, DON HILTON, in his Official Capacity as the Sheriff of Oswego County, JOSEPH STANZIONE, in his Official Capacity as the District Attorney of Greene County,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... ii

INTERESTS OF *AMICUS CURIAE* AND CONSENT TO FILE ............................1

SUMMARY OF ARGUMENTS ...............................................................3

ARGUMENT .....................................................................................6

      POINT I

      THE CCIA IS NOTHING MORE THAN AN ATTEMPT TO
      "REVERSE" THE U.S. SUPREME COURT'S RECENT
      DECISION IN <u>NEW YORK STATE RIFLE & PISTOL</u>
      <u>ASSOCIATION v. BRUEN</u>, AND TO ABRIDGE
      CONSTITUTIONALLY GUARANTEED RIGHTS ....................................6

CONCLUSION ................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

New York State Rifle & Pistol Association v. Bruen,
  142 S. Ct. 2111 (2022).................................................................. passim

**Statutes & Other Authorities:**

U.S. Constitution, amend. I............................................................... passim

U.S. Constitution, amend. II ............................................................. passim

U.S. Constitution, amend. XIV .................................................................4

N.Y. CONST. art XIV ................................................................................11

Federal Rule of Appellate Procedure 29 ...................................................1

Federal Rule of Appellate Procedure 29(a)(2)......................................2, 3

Federal Rule of Appellate Procedure 29(a)(4)(E).....................................1

## INTERESTS OF *AMICUS CURIAE* AND CONSENT TO FILE[1]

*Amici curiae,* the Minority Leader of the New York State Senate, Robert G. Ortt and Senator Andrew J. Lanza, et al., joined by several New York State Senators and the Minority Leader of the New York State Assembly, William A. Barclay and Assembly Members Robert Smullen and Christopher Tague, et al., joined by several Members of the New York State Assembly, ("*Amici*") have pursuant to Federal Rule of Appellate Procedure 29, requested leave to file this *amicus curiae* brief in support of *Plaintiffs-Appellees* Ivan Antonyuk, et al. ("Appellees") and urge that the Decision and Order issued by the United States District Court for the Northern District of New York (Suddaby, J.), which blocked enforcement of multiple provisions of the Concealed Carry Improvement Act (CCIA), L. 2022, Ch. 371, be upheld. <u>See</u> Fed. R. App. P. 29.

Your proposed *Amici* jointly comprise 30 Republican Members of the bicameral New York State Legislature, entrusted by the State Constitution to

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(e), *Amici,* Minority Leaders Robert G. Ortt and William A. Barclay, et al., certify that: (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (3) no person other than the *Amici*, Minority Leaders Robert G. Ortt and William A. Barclay, et al., contributed money that was intended to fund preparing or submitting the brief.

exercise legislative power. As Members of the Legislature, *Amici* were elected by the voters of New York State to, *inter alia*, consider and vote on legislation before their respective houses. *Amici's* function as duly-elected representatives of the people of New York State underscores the necessary role of their involvement in matters of significant public interest such as the case at bar. It is respectfully submitted that the challenged statute's effect of squelching the Second Amendment rights of these elected officials' constituents over their objection justifies their status as *Amici*, and the offering of this brief in support of their right to keep and bear arms in the State of New York.

For the reasons set forth herein, it is demonstrated that the New York State Legislature and the Governor, over the opposition of the proposed *Amici*, rushed to judgement in enacting the statute challenged in this case mere days after the Supreme Court of the United States issued its opinion in <u>New York State Rifle & Pistol Association v. Bruen</u>, 142 S. Ct. 2111 (2022). Further, the New York State Legislature and the Governor acted improperly in attempting to override the decision of the United States Supreme Court in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>, and to improperly restrict the *Plaintiffs'-Appellees'* rights under the First and Second Amendment to the United States Constitution.

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), your *Amici* certify that all parties to this proceeding have been contacted in connection with the application for *Amicus* Status. <u>See</u> Fed. R. App. P. 29(a)(2). *Plaintiffs-Appellees* have consented to the filing of this brief. *Defendant-Appellants* have refused to give their consent.

## SUMMARY OF ARGUMENTS

It is contended herein that the District Court properly ruled that a plethora of the restrictions imposed by Chapter 371 of the New York Laws of 2022, the Concealed Carry Improvement Act (hereinafter the "CCIA"), were unconstitutional restrictions upon the rights guaranteed under the U.S. Constitution, Amendments I and II. This Court of Appeals is urged to affirm the Decision and Order below, and further, lift the stay of the District Court's injunction.

Generally, New York State Law makes it a crime to possess a firearm without a license, whether inside or outside the home. Until the holding in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>, an individual who wanted to carry a firearm outside their home was required to obtain an unrestricted license to "have and carry" a concealed "pistol or revolver" for which they needed to prove that "proper cause" existed for doing so. An applicant could only satisfy the

3

"proper cause" requirement if they could demonstrate a special need for self-protection distinguishable from that of the general community.

On June 23, 2022, in a 6-3 decision, the United States Supreme Court held that New York's proper cause requirement violated the Fourteenth Amendment by preventing law abiding citizens with ordinary self-defense needs from exercising their Second Amendment right to keep and bear arms in public for self-defense. According to the ruling, New York's existing law was deemed unconstitutional because it gives too much discretion to the State and its licensing officers in determining proper cause. The proper cause requirement to conceal carry is no longer valid.

Days later, on July 1, 2022, the CCIA, Senate Bill S.51001/Assembly Bill A. 41001 was introduced, voted out of committee, sent to the floor of each house of the Legislature, and then signed into law by the Governor. The new Law removed the "good cause" standard for obtaining a license to carry a firearm and instead imposed numerous requirements for an individual to meet in order to obtain a license to carry a firearm, including a "good moral character" requirement and, additionally, restricted license holders from carrying a firearm in "sensitive areas." The CCIA also criminalizes possession of a firearm on private property where the property owner has not expressly granted permission to carry the firearm on that property or conspicuously posted signage allowing firearms on the premises. In

4

short, the practical effect of these restrictions is to ban the exercise of First and Second Amendment rights throughout the State of New York. The overly expansive nature of sensitive places that the ban placed upon carrying a firearm on private property in the CCIA (by licensed carriers) infringes upon Constitutional protections to be afforded to our citizens. Indeed, the CCIA's pervasive restrictions placed upon the Second Amendment right to bear arms are little more than an attempt to nullify the Supreme Court's decision in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>, and the Second Amendment of the United States Constitution itself.

Amici contend here that the requirements placed upon citizens applying for licenses are onerous and, in many instances, overbroad and vague. These requirements bring into question, and unduly curtail, the *Plaintiffs'-Appellees'* Constitutional rights. Further, the CCIA establishes "sensitive area" restrictions that are so broad and expansive as to effectively preclude firearm possession by those obtaining a license. *Amici* assert here, and join with *Plaintiffs'-Appellees'* arguments, that the restrictions upon First and Second Amendment rights are unconstitutional. The decision of the District Court in declaring the CCIA to be unconstitutional, and enjoining the enforcement of this law, was correct and should be affirmed.

**ARGUMENT**

**POINT I**

**THE CCIA IS NOTHING MORE THAN
AN ATTEMPT TO "REVERSE"
THE U.S. SUPREME COURT'S RECENT
DECISION IN <u>NEW YORK STATE RIFLE &
PISTOL ASSOCIATION v. BRUEN</u>, AND TO
ABRIDGE CONSTITUTIONALLY
GUARANTEED RIGHTS**

Within minutes of the issuance of the United States Supreme Court's decision in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>, there was an acrimonious cry from Governor Kathy Hochul, Assembly Speaker Carl E. Heastie, and Senate Majority Leader Andrea Stewart-Cousins. Governor Hochul referred to the Supreme Court's decision as: ". . . this decision isn't just reckless. It's reprehensible," also calling the ruling "frightful in its scope." <u>See</u> *'Frightful in its scope': New York lawmakers scramble to counteract SCOTUS gun ruling*, Pᴏʟɪᴛɪᴄᴏ (June 23, 2022), https://www.politico.com/news/2022/06/23/new-york-hochul-supreme-court-gun-00041715. Majority Leader Stewart Cousins said that the Supreme Court "decided guns are more important than lives in this country." <u>See</u> *NY State Senate Majority reacts to the Supreme Court's ruling on gun laws*, NPR (June 23, 2022), https://www.npr.org/2022/06/23/1107151035/ny-state-

senate-majority-reacts-to-the-supreme-courts-ruling-on-gun-laws.  Speaker Heastie said, "… the right to keep and bear arms is not absolute . . . this Supreme Court appears to believe otherwise."  See *Speaker Heastie Statement on the Supreme Court Decision to Severely Limit States Rights to Prohibit Carrying Guns in Public*, NEW YORK STATE ASSEMBLY (June 23, 2022), https://assembly.state.ny.us/Press/?sec=story&story=102469.

Governor Hochul's public statements went on to demonstrate her intention to preclude licensed gun owners from being able to carry their firearms ***anywhere***.  When queried as to what was a sensitive place by CBS reporters, she responded, "We are going to define 'sensitive place' … it's hard to find a place that's ***not*** sensitive in my judgment."  See Analisa Novak, *Gov. Kathy Hochul: Supreme Court gun law ruling is "reprehensible" given nationwide gun violence crisis*, CBS NEWS (June 24, 2022), https://www.cbsnews.com/news/new-york-governor-kathy-hochul-supreme-court-gun-law-ruling/ (video at minute marker 3:05) (emphasis added).

The Court must consider the language of the CCIA against this backdrop and in light of the rapid sequence of events – a veritable knee-jerk reaction to a decision of the highest Court in the land which enforced the Constitutional rights placed by the framers in the Bill of Rights.

The Opinion of the Court in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>,, clearly stated that:

> "… expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly. Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below. <u>See</u> Part III–B, <u>infra</u>. Put simply, there is no historical basis for New York to effectively declare the island of Manhattan a "sensitive place" simply because it is crowded and protected generally by the New York City Police Department."  <u>See</u> <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u>, 142 S. Ct. 2111, 2134 (2022).

Faced with the reality of the application of the Second Amendment, the Governor and Legislature crafted a bill which achieved the same goal of precluding any concealed carry of a firearm within a geographic area.  This was achieved two ways.  First the legislation created a list of "sensitive locations" that was so large and robust as to, when all are overlayed on a geographic map, preclude the exercise of Second Amendment rights.  The list of "sensitive locations" includes:

> "(a) any place owned or under the control of federal, state or local government, for the purpose of government administration, including courts;
> (b) any location providing health, behavioral health, or chemical dependance care or services;
> (c) any place of worship or religious observation;
> (d) libraries, public playgrounds, public parks, and zoos;

8

(e) the location of any program licensed, regulated, certified, funded, or approved by the office of children and family services that provides services to children, youth, or young adults, any legally exempt childcare provider; a childcare program for which a permit to operate such program has been issued by the department of health and mental hygiene pursuant to the health code of the city of New York;

(f) nursery schools, preschools, and summer camps;

(g) the location of any program licensed, regulated, certified, operated, or funded by the office for people with developmental disabilities;

(h) the location of any program licensed, regulated, certified, operated, or funded by office of addiction services and supports;

(i) the location of any program licensed, regulated, certified, operated, or funded by the office of mental health;

(j) the location of any program licensed, regulated, certified, operated, or funded by the office of temporary and disability assistance;

(k) homeless shelters, runaway homeless youth shelters, family shelters, shelters for adults, domestic violence shelters, and emergency shelters, and residential programs for victims of domestic violence;

(l) residential settings licensed, certified, regulated, funded, or operated by the department of health;

(m) in or upon any building or grounds, owned or leased, of any educational institutions, colleges and universities, licensed private career schools, school districts, public schools, private schools licensed under article one hundred one of the education law, charter schools, non-public schools, board of cooperative educational services, special act schools, preschool special education programs, private residential or non-residential schools for the education of students with disabilities, and any state-operated or state-supported schools;

(n) any place, conveyance, or vehicle used for public transportation or public transit, subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation

9

transportation; or any facility used for or in connection with service in the transportation of passengers, airports, train stations, subway and rail stations, and bus terminals; (o) any establishment issued a license for on-premise consumption pursuant to article four, four-A, five, or six of the alcoholic beverage control law where alcohol is consumed and any establishment licensed under article four of the cannabis law for on-premise consumption; (p) any place used for the performance, art entertainment, gaming, or sporting events such as theaters, stadiums, racetracks, museums, amusement parks, performance venues, concerts, exhibits, conference centers, banquet halls, and gaming facilities and video lottery terminal facilities as licensed by the gaming commission; (q) any location being used as a polling place; (r) any public sidewalk or other public area restricted from general public access for a limited time or special event that has been issued a permit for such time or event by a governmental entity, or subject to specific, heightened law enforcement protection, or has otherwise had such access restricted by a governmental entity, provided such location is identified as such by clear and conspicuous signage; (s) any gathering of individuals to collectively express their constitutional rights to protest or assemble; (t) the area commonly known as Times Square, as such area is determined and identified by the city of New York." See L. 2022, Ch. 371.

In an urbanized area the combination of "sensitive locations" is likely to obliterate any zone where a licensed gun owner might exercise his right to carry his firearm for personal self defense. The possibility of self-incrimination by carrying a licensed firearm into a precluded zone under this statutory framework increases exponentially if the state or localities establish buffer zones, as the New York City

10

Mayor, and City Council Speaker have promised. See *Council urges state to "blanket" New York City as a gun-free zone*, NEW YORK CITY COUNCIL MEMBER SHAUN ABREU (Aug. 4, 2022), https://council.nyc.gov/shaun-abreu/2022/08/04/council-urges-state-to-blanket-new-york-city-as-a-gun-free-zone/. *Amici* note here that some of the "sensitive locations" will move, and change by the day as polling places, "special events" such as street fairs, parades and even protest marches come and go from the municipal setting.

The CCIA is an assault on self protection while traversing public lands. In the event that one were to tell the licensed firearm owner to head north from New York's urban area to the less populated Catskills or Adirondacks to exercise their Second Amendment rights, they would find a different aspect of Chapter 371's trap.

The CCIA prohibits carrying a licensed firearm in any public park. To the North of New York City lie dozens of state and local parks, including the 236,000 acre Catskill Park. See N.Y. CONST. art XIV. Further to the north is the Adirondack Park. This is an expanse of 6 million acres. The Adirondack Park "is the largest publicly protected area in the contiguous United States. It is the largest National Historic Landmark in the United States, covering an area larger than Yellowstone, Yosemite, Grand Canyon, Glacier, and the Great Smokies National Parks combined." See *Adirondack Park National Historic Landmark – Official*

11

*Regional Website*, https://visitadirondacks.com/about/adirondack-park. The plain language of the statute eliminates the right to bear arms from these two huge parks as well as the 350,000 acres which comprise the 250 more traditional state parks spread across the state, not to mention all of the federal, county, town, village and city parks. Again, the inescapable conclusion is that the purpose of the CCIA was to effectively preclude the exercise of First and Second Amendment rights.

This real and exhaustive prohibition placed upon the exercise of constitutional rights was not enough for the architects of this pernicious legislation. The CCIA creates a presumption that ***all*** private property is a prohibited zone for the licensed gun owner to carry a firearm, unless express permission of the owner is given or signage is posted allowing for the exercise of Second Amendment rights. Inapposite the Constitution, now one cannot exercise their basic rights without permission by the state government or an ordinary non-governmental actor. Under the CCIA, people must be expressly authorized to have their constitutional rights in order to freely exercise them.

Bluntly stated, the terms of Chapter 371, New York Laws of 2022 establish two preclusion zones – public buildings and gathering places, and private properties. *Amici* respectfully submit that the Governor and Legislative Majorities who oppose the Second Amendment for political reasons have quite effectively

12

thrown a blanket prohibition of Second Amendment and the related First Amendment rights over the entire state of New York.

Justice Thomas in the <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>., opinion which invalidated the "proper cause" requirement in New York Law clearly stated:

> "The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." McDonald, 561 U.S. at 780, 130 S.Ct. 3020 (plurality opinion). We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense." <u>See</u> <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u>, 142 S. Ct. 2111, 2156 (2022).

In contrast to the Supreme Court's careful historical analysis to arrive at the decision in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>., the reaction of the Governor and the Legislature in enacting Chapter 371, New York Laws of 2022 smacks of a fast and dirty patchwork designed to push back the high Court's decision in <u>New York State Rifle & Pistol Association v. Bruen</u>, <u>supra</u>., and effectively repeal the First and Second Amendment rights of thousands of New Yorkers. Clearly, in the few days between the Supreme Court's decision and the

adoption of the CCIA no member of the Legislature voting in the affirmative exercised the due diligence of one empowered to legislate under the Constitution, failing to conduct a careful historical analysis to justify the plethora of restrictions New York State was placing on a right guaranteed by the Constitution.

The lengthy decision of the District Court carefully reviewed each of the strictures erected by the partisan New York Legislature and Governor. This detailed analysis must be affirmed.

*Amici* agree with the *Plaintiffs'-Appellees'* argument that the *Defendant-Appellants* have adopted a "revisionist" view that reads "… a broad anti-gun tradition into American History", Document 202, p. 32.  Moreover, the historical analysis defies the strained and contorted recitation of the Appellants.  As observed by fellow *Amici*, New York State Firearms Association, see Document 202, p. 32, our founders typically went, while bearing arms to "… (i) public squares, commons, and greens, (ii) public assemblies, (iii) taverns and while consuming alcohol, (iv) during travel, (v) on private property, (vi) in churches, and (vii) *especially* while exercising other constitutional rights, NYSFA Amicus Brief, Document 202, p. 32, emphasis in the original.  The historical application of the Second Amendment's absolute granting of a right to bear arms demonstrates that each of the places that the founders knew to be open to carrying arms would now be proscribed areas and, indeed, areas where carrying a licensed firearm would be

subjected to criminal prosecution.  The Framers of the Constitution would cringe and look with horror at New York's CCIA.

Without any question, it must be decided that the historical analysis called for in the NYSRPA v. Bruen, supra, decision points decidedly toward the invalidation of the CCIA, the challenged statute herein.

Accordingly, your *Amici* respectfully request an affirmance of the District Court's Decision and Order.

**CONCLUSION**

For all of the reasons advanced herein, as well as the arguments put forward by the Appellees herein, this Court should affirm the decision of the District Court, and vacate the stay of the injunction as against the CCIA.

Respectfully submitted,

/s/ John Ciampoli

John Ciampoli, Esq.

Perrillo & Hill, LLP
285 W. Main Street, Suite 203
Sayville, New York 11782
Phone: 631-582-9422 / 518-522-3548
CiampoliLaw@yahoo.com

On the brief:
Adam Fusco, Esq.
Stefano Perez, Esq.

16

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,360 words, exclusive of the table of contents, table of citations, certificate of service, certificate of digital submission and this certificate of compliance, which are exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2021 in a proportionally spaced typeface, namely Times New Roman 14-point font.

Dated: February 21, 2023

/s/ John Ciampoli

John Ciampoli, Esq.

**ADDENDUM:**
LIST OF PROPOSED *AMICI* CURIAE

Proposed *Amici curiae,* comprised of duly elected and sitting Members of both houses of the New York State Legislature, include:

Hon. William A. Barclay
Minority Leader
New York State Assembly
Assembly District 120

Hon. Robert G. Ortt
Minority Leader
New York State Senate
Senate District 62

Hon. Scott H. Bendett
Assembly Member
New York State Assembly
District 107

Hon. George M. Borrello
Senator
New York State Senate
District 57

Hon. Karl Brabenec
Assembly Member
New York State Assembly
District 98

Hon. Patrick M. Gallivan
Senator
New York State Senate
District 60

Hon. Eric "Ari" G. Brown
Assembly Member
New York State Assembly
District 20

Hon. Joseph A. Griffo
Senator
New York State Senate
District 53

Hon. Keith P. Brown
Assembly Member
New York State Assembly
District 12

Hon. Pamela Helming
Senator
New York State Senate
District 54

Hon. Joseph P. DeStefano
Assembly Member
New York State Assembly
District 3

Hon. Andrew J. Lanza
Senator
New York State Senate
District 24

Hon. Christopher S. Friend
Assembly Member
New York State Assembly
District 124

Hon. Joseph M. Giglio
Assembly Member
New York State Assembly
District 148

Hon. Scott A. Gray
Assembly Member
New York State Assembly
District 116

Hon. Steve M. Hawley
Assembly Member
New York State Assembly
District 139

Hon. John Lemondes, Jr.
Assembly Member
New York State Assembly
District 126

Hon. Brian D. Manktelow
Assembly Member
New York State Assembly
District 130

Hon. Brian D. Miller
Assembly Member
New York State Assembly
District 122

Hon. Angelo J. Morinello
Assembly Member
New York State Assembly
District 145

Hon. Peter Oberacker
Senator
New York State Senate
District 51

Hon. Thomas F. O'Mara
Senator
New York State Senate
District 58

Hon. Mark Walczyk
Senator
New York State Senate
District 49

Hon. Michael J. Norris
Assembly Member
New York State Assembly
District 144

Hon. Sam T. Pirozzolo
Assembly Member
New York State Assembly
District 163

Hon. Michael W. Reilly, Jr.
Assembly Member
New York State Assembly
District 62

Hon. Matthew J. Simpson
Assembly Member
New York State Assembly
District 114

Hon. Robert Smullen
Assembly Member
New York State Assembly
District 118

Hon. Christopher Tague
Assembly Member
New York State Assembly
District 102

Hon. Michael Tannousis
Assembly Member
New York State Assembly
District 64