

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL
DIVISION OF APPEALS & OPINIONS

May 5, 2023

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for
 the Second Circuit
40 Foley Square
New York, NY 10007

Re: *Antonyuk v. Nigrelli*, Nos. 22-2908 (L), 22-2972(Con)

Dear Ms. Wolfe:

I represent the state defendants-appellants, Steven Nigrelli and Matthew Doran, in the above-captioned appeal. In accordance with Federal Rule of Appellate Procedure 28(j), I write to advise the Court of recently enacted amendments to the Concealed Carry Improvement Act (CCIA), the statute at issue in this appeal. The amendments took effect immediately upon enactment on May 3, 2023. Ch. 55, pt. F, § 4, 2023 N.Y. Laws (2023) (attached as Ex. A). The amendments moot plaintiffs' challenges to the CCIA provisions prohibiting firearms in places of worship and in Catskill Park.

*First*, the amended statute permits "persons responsible for security" at places of worship to carry firearms, even if they do not satisfy the statutory exemptions enumerated in Penal Law § 265.01-e(3). *Id.*, pt. F, § 1 (amendment to § 265.01-e(2)(c)). Plaintiff Joseph Mann, the only plaintiff to challenge the place-of-worship provision in this case, alleged that the CCIA injured him because he and his "security team" were not permitted to carry firearms to provide security at their church. (J.A. 72.) But, under the amended statute,

Mann and his security team *are* permitted to carry firearms at their church if they are responsible for security there.[1]

Second, the amended statute expressly provides that the prohibition on firearms in "public parks" does not apply to privately held land within a park or to statutorily defined forest-preserve land. Ch. 15, pt. F, § 1 (§ 265.01-e(2)(d)). Together, these amendments substantially narrow any prohibition on firearms in Catskill and Adirondack Parks, which consist mainly of a combination of privately held and forest-preserve land (with certain minor exceptions not relevant to plaintiffs' allegations). *See* Environmental Conservation Law § 9-0101. Accordingly, insofar as plaintiff Leslie Leman challenges the CCIA's application to Catskill Park (*see* J.A. 76; Pls.-Appellees' Br. in Resp. to Def.-Appellant Cecile (Feb. 1, 2023) at 3), his challenge is moot.

Respectfully,

*/s/ Philip J. Levitz*

Philip J. Levitz
Assistant Solicitor General
(212) 416-6325

cc: Counsel of record (by ECF)

---

[1] Mann separately challenged the CCIA's prohibition of firearms in places of "religious observation" (*see* J.A. 175-176; Pls.-Appellees' Br. in Resp. to State Defs.-Appellants (Feb. 1, 2023) at 53-54), but the amended statute eliminates that reference, thus mooting any separate challenge on this ground.

# Exhibit A

# STATE OF NEW YORK

S. 4005--C                                               A. 3005--C

## SENATE - ASSEMBLY

February 1, 2023

_____

IN SENATE -- A BUDGET BILL, submitted by the Governor pursuant to arti-
cle seven of the Constitution -- read twice and ordered printed, and
when printed to be committed to the Committee on Finance -- committee
discharged, bill amended, ordered reprinted as amended and recommitted
to said committee -- committee discharged, bill amended, ordered
reprinted as amended and recommitted to said committee -- committee
discharged, bill amended, ordered reprinted as amended and recommitted
to said committee

IN ASSEMBLY -- A BUDGET BILL, submitted by the Governor pursuant to
article seven of the Constitution -- read once and referred to the
Committee on Ways and Means -- committee discharged, bill amended,
ordered reprinted as amended and recommitted to said committee --
again reported from said committee with amendments, ordered reprinted
as amended and recommitted to said committee -- again reported from
said committee with amendments, ordered reprinted as amended and
recommitted to said committee

AN ACT to amend chapter 887 of the laws of 1983, amending the correction
law relating to the psychological testing of candidates, in relation
to the effectiveness thereof; to amend chapter 428 of the laws of
1999, amending the executive law and the criminal procedure law relat-
ing to expanding the geographic area of employment of certain police
officers, in relation to extending the expiration of such chapter; to
amend chapter 886 of the laws of 1972, amending the correction law and
the penal law relating to prisoner furloughs in certain cases and the
crime of absconding therefrom, in relation to the effectiveness there-
of; to amend chapter 261 of the laws of 1987, amending chapters 50, 53
and 54 of the laws of 1987, the correction law, the penal law and
other chapters and laws relating to correctional facilities, in
relation to the effectiveness thereof; to amend chapter 55 of the laws
of 1992, amending the tax law and other laws relating to taxes,
surcharges, fees and funding, in relation to extending the expiration
of certain provisions of such chapter; to amend chapter 339 of the
laws of 1972, amending the correction law and the penal law relating
to inmate work release, furlough and leave, in relation to the effec-
tiveness thereof; to amend chapter 60 of the laws of 1994 relating to
certain provisions which impact upon expenditure of certain appropri-

EXPLANATION--Matter in **_italics_** (underscored) is new; matter in brackets
[ ̶ ] is old law to be omitted.

LBD12570-05-3

ations made by chapter 50 of the laws of 1994 enacting the state oper-
ations budget, in relation to the effectiveness thereof; to amend
chapter 907 of the laws of 1984, amending the correction law, the New
York city criminal court act and the executive law relating to prison
and jail housing and alternatives to detention and incarceration
programs, in relation to extending the expiration of certain
provisions of such chapter; to amend chapter 166 of the laws of 1991,
amending the tax law and other laws relating to taxes, in relation to
extending the expiration of certain provisions of such chapter; to
amend the vehicle and traffic law, in relation to extending the expi-
ration of the mandatory surcharge and victim assistance fee; to amend
chapter 713 of the laws of 1988, amending the vehicle and traffic law
relating to the ignition interlock device program, in relation to
extending the expiration thereof; to amend chapter 435 of the laws of
1997, amending the military law and other laws relating to various
provisions, in relation to extending the expiration date of the merit
provisions of the correction law and the penal law of such chapter; to
amend part D of chapter 412 of the laws of 1999, amending the civil
practice law and rules and the court of claims act relating to prison-
er litigation reform, in relation to extending the expiration of the
inmate filing fee provisions of the civil practice law and rules and
general filing fee provision and inmate property claims exhaustion
requirement of the court of claims act of such chapter; to amend the
family protection and domestic violence intervention act of 1994, in
relation to extending the expiration of certain provisions of the
criminal procedure law requiring the arrest of certain persons engaged
in family violence; to amend chapter 505 of the laws of 1985, amending
the criminal procedure law relating to the use of closed-circuit tele-
vision and other protective measures for certain child witnesses, in
relation to extending the expiration of the provisions thereof; to
amend the sentencing reform act of 1995, in relation to extending the
expiration of certain provisions of such chapter; to amend chapter 689
of the laws of 1993 amending the criminal procedure law relating to
electronic court appearance in certain counties, in relation to
extending the expiration thereof; to amend chapter 688 of the laws of
2003, amending the executive law relating to enacting the interstate
compact for adult offender supervision, in relation to the effective-
ness thereof; to amend part H of chapter 56 of the laws of 2009,
amending the correction law relating to limiting the closing of
certain correctional facilities, providing for the custody by the
department of correctional services of inmates serving definite
sentences, providing for custody of federal prisoners and requiring
the closing of certain correctional facilities, in relation to the
effectiveness of such chapter; to amend part C of chapter 152 of the
laws of 2001 amending the military law relating to military funds of
the organized militia, in relation to the effectiveness thereof; to
amend chapter 554 of the laws of 1986, amending the correction law and
the penal law relating to providing for community treatment facilities
and establishing the crime of absconding from the community treatment
facility, in relation to the effectiveness thereof; and to amend part
F of chapter 55 of the laws of 2018, amending the criminal procedure
law relating to the pre-criminal proceeding settlements in the City of
New York, in relation to the effectiveness thereof (Part A); inten-
tionally omitted (Part B); intentionally omitted (Part C); inten-
tionally omitted (Part D); intentionally omitted (Part E); to amend
the penal law, in relation to certain crimes relating to the

possession and storage of a firearm (Part F); to amend the state
finance law and the executive law, in relation to establishing a
hazard mitigation revolving loan fund (Part G); to amend the volunteer
firefighters' benefit law and the general municipal law, in relation
to permitting the paying of a training stipend to volunteer firefight-
ers (Part H); intentionally omitted (Part I); to amend the military
law, in relation to the expansion of eligibility for World Trade
Center death and disability benefits for members of New York's organ-
ized militia (Part J); intentionally omitted (Part K); intentionally
omitted (Part L); intentionally omitted (Part M); intentionally omit-
ted (Part N); to amend chapter 396 of the laws of 2010 amending the
alcoholic beverage control law relating to liquidator's permits and
temporary retail permits, in relation to the effectiveness thereof
(Part O); intentionally omitted (Part P); to amend chapter 303 of the
laws of 1988, relating to the extension of the state commission on the
restoration of the capitol, in relation to extending such provisions
for an additional five years (Part Q); to amend the state finance law,
in relation to methods of procurement; and to repeal certain
provisions of such law relating thereto (Part R); to amend the civil
service law, in relation to competitive workforce expansion and
retention (Part S); to amend the civil service law, in relation to
employment of certain persons with disabilities (Part T); inten-
tionally omitted (Part U); to amend part HH of chapter 56 of the laws
of 2022 amending the retirement and social security law relating to
waiving approval and income limitations on retirees employed in school
districts and board of cooperative educational services, in relation
to the effectiveness thereof (Part V); to amend the retirement and
social security law, in relation to allowing participating employers
of the New York state and local retirement system to withdraw from the
contribution stabilization program (Part W); intentionally omitted
(Part X); to amend the general municipal law, in relation to moving
the special accidental death benefit appropriation from the department
of audit and control to the general fund's miscellaneous all state
department and agencies (Part Y); to amend the executive law, in
relation to the first class of the commission on ethics and lobbying
in government (Part Z); to amend the tax law and part C of chapter 2
of the laws of 2005 amending the tax law relating to exemptions from
sales and use taxes, in relation to extending certain provisions ther-
eof; to amend the general city law and the administrative code of the
city of New York, in relation to extending certain provisions relating
to specially eligible premises and special rebates; to amend the
administrative code of the city of New York, in relation to extending
certain provisions relating to exemptions and deductions from base
rent; to amend the real property tax law, in relation to extending
certain provisions relating to eligibility periods and requirements;
to amend the real property tax law, in relation to extending certain
provisions relating to eligibility periods and requirements, benefit
periods and applications for abatements; and to amend the administra-
tive code of the city of New York, in relation to extending certain
provisions relating to a special reduction in determining the taxable
base rent (Part AA); to repeal subdivision 12 of section 239-bb of the
general municipal law relating to county-wide shared services panels
(Part BB); intentionally omitted (Part CC); to amend chapter 141 of
the laws of 1994, amending the legislative law and the state finance
law relating to the operation and administration of the legislature,
in relation to extending such provisions (Part DD); to amend the

civil service law, in relation to waiving state civil service examina-
tion fees between July 1, 2023 and December 31, 2025; and providing
for the repeal of such provisions upon the expiration thereof (Part
EE); to amend the general municipal law, in relation to providing
Suffolk county certain fees for the services of the Suffolk county
traffic and parking violations agency (Part FF); to amend the retire-
ment and social security law, in relation to providing certain death
benefits to correction officers, correction officer-sergeants,
correction officer-captains, assistant wardens, associate wardens or
wardens employed by Westchester county (Part GG); to amend the retire-
ment and social security law, in relation to authorizing police/fire
members of the New York city fire department pension fund to obtain
credit for service as an EMT member (Part HH); to amend the retirement
and social security law, in relation to providing certain death bene-
fits to county fire marshals, supervising fire marshals, fire
marshals, assistant fire marshals, assistant chief fire marshals,
chief fire marshals and division supervising fire marshals employed by
Nassau county (Part II); to amend the retirement and social security
law, in relation to allowing certain members of the New York city
police pension fund to borrow from contributions (Part JJ); to amend
the retirement and social security law, in relation to the retirement
of deputy sheriffs-civil in the county of Monroe (Part KK); to amend
the retirement and social security law, in relation to certain medical
presumptions applicable to members of the New York state and local
employees' retirement system (Part LL); to amend the state finance
law, in relation to the transfer and disposal of certain personal
property of the state (Part MM); to amend the executive law, in
relation to reports by the director of the office of counterterrorism
(Part NN); and to amend the not-for-profit corporation law, the execu-
tive law, and the education law, in relation to the discovery and
disposition of human remains and funerary objects (Part OO)

**The People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:**

1    Section 1. This act enacts into law major components of legislation
2  necessary to implement the state public protection and general govern-
3  ment budget for the 2023-2024 state fiscal year. Each component is whol-
4  ly contained within a Part identified as Parts A through OO. The effec-
5  tive date for each particular provision contained within such Part is
6  set forth in the last section of such Part. Any provision in any section
7  contained within a Part, including the effective date of the Part, which
8  makes a reference to a section "of this act", when used in connection
9  with that particular component, shall be deemed to mean and refer to the
10 corresponding section of the Part in which it is found. Section three of
11 this act sets forth the general effective date of this act.

12                                 PART A

13   Section 1. Section 2 of chapter 887 of the laws of 1983, amending the
14 correction law relating to the psychological testing of candidates, as
15 amended by section 1 of part A of chapter 55 of the laws of 2021, is
16 amended to read as follows:

1  § 2. This act shall take effect on the one hundred eightieth day after
2  it shall have become a law and shall remain in effect until September 1,
3  [2023] 2025.
4  § 2. Section 3 of chapter 428 of the laws of 1999, amending the execu-
5  tive law and the criminal procedure law relating to expanding the
6  geographic area of employment of certain police officers, as amended by
7  section 2 of part A of chapter 55 of the laws of 2021, is amended to
8  read as follows:
9  § 3. This act shall take effect on the first day of November next
10 succeeding the date on which it shall have become a law, and shall
11 remain in effect until the first day of September, [2023] 2025, when it
12 shall expire and be deemed repealed.
13 § 3. Section 3 of chapter 886 of the laws of 1972, amending the
14 correction law and the penal law relating to prisoner furloughs in
15 certain cases and the crime of absconding therefrom, as amended by
16 section 3 of part A of chapter 55 of the laws of 2021, is amended to
17 read as follows:
18 § 3. This act shall take effect 60 days after it shall have become a
19 law and shall remain in effect until September 1, [2023] 2025.
20 § 4. Section 20 of chapter 261 of the laws of 1987, amending chapters
21 50, 53 and 54 of the laws of 1987, the correction law, the penal law and
22 other chapters and laws relating to correctional facilities, as amended
23 by section 4 of part A of chapter 55 of the laws of 2021, is amended to
24 read as follows:
25 § 20. This act shall take effect immediately except that section thir-
26 teen of this act shall expire and be of no further force or effect on
27 and after September 1, [2023] 2025 and shall not apply to persons
28 committed to the custody of the department after such date, and provided
29 further that the commissioner of corrections and community supervision
30 shall report each January first and July first during such time as the
31 earned eligibility program is in effect, to the chairmen of the senate
32 crime victims, crime and correction committee, the senate codes commit-
33 tee, the assembly correction committee, and the assembly codes commit-
34 tee, the standards in effect for earned eligibility during the prior
35 six-month period, the number of inmates subject to the provisions of
36 earned eligibility, the number who actually received certificates of
37 earned eligibility during that period of time, the number of inmates
38 with certificates who are granted parole upon their first consideration
39 for parole, the number with certificates who are denied parole upon
40 their first consideration, and the number of individuals granted and
41 denied parole who did not have earned eligibility certificates.
42 § 5. Subdivision (q) of section 427 of chapter 55 of the laws of 1992,
43 amending the tax law and other laws relating to taxes, surcharges, fees
44 and funding, as amended by section 5 of part A of chapter 55 of the laws
45 of 2021, is amended to read as follows:
46 (q) the provisions of section two hundred eighty-four of this act
47 shall remain in effect until September 1, [2023] 2025 and be applicable
48 to all persons entering the program on or before August 31, [2023] 2025.
49 § 6. Section 10 of chapter 339 of the laws of 1972, amending the
50 correction law and the penal law relating to inmate work release,
51 furlough and leave, as amended by section 6 of part A of chapter 55 of
52 the laws of 2021, is amended to read as follows:
53 § 10. This act shall take effect 30 days after it shall have become a
54 law and shall remain in effect until September 1, [2023] 2025, and
55 provided further that the commissioner of correctional services shall
56 report each January first, and July first, to the chairman of the senate

1  crime victims, crime and correction committee, the senate codes commit-
2  tee,  the  assembly correction committee, and the assembly codes commit-
3  tee, the number of eligible inmates in each facility under  the  custody
4  and  control  of  the commissioner who have applied for participation in
5  any program offered under the provisions of work release,  furlough,  or
6  leave,  and the number of such inmates who have been approved for partic-
7  ipation.
8    § 7. Subdivision (c) of section 46 of chapter 60 of the laws of 1994,
9  relating to certain provisions which impact upon expenditure of  certain
10 appropriations made by chapter 50 of the laws of 1994 enacting the state
11 operations  budget,  as  amended by section 7 of part A of chapter 55 of
12 the laws of 2021, is amended to read as follows:
13   (c) sections forty-one and forty-two of this act shall expire  Septem-
14 ber  1, [~~2023~~] **2025**; provided, that the provisions of section forty-two
15 of this act shall apply to inmates entering the work release program  on
16 or after such effective date; and
17   § 8.  Subdivision  (aa)  of  section 427 of chapter 55 of the laws of
18 1992, amending the tax law and other laws relating to taxes, surcharges,
19 fees and funding, as amended by section 10 of part A of  chapter  55  of
20 the laws of 2021, is amended to read as follows:
21   (aa)  the  provisions  of  sections  three  hundred  eighty-two, three
22 hundred eighty-three and three hundred eighty-four of  this  act  shall
23 expire on September 1, [~~2023~~] **2025**;
24   § 9.  Section  12  of  chapter  907 of the laws of 1984, amending the
25 correction law, the New York city criminal court act and  the  executive
26 law  relating  to  prison and jail housing and alternatives to detention
27 and incarceration programs, as amended by section 11 of part A of  chap-
28 ter 55 of the laws of 2021, is amended to read as follows:
29   § 12.  This  act  shall  take  effect  immediately, except  that the
30 provisions of sections one through ten of this act shall remain in  full
31 force  and  effect  until  September  1, [~~2023~~] **2025** on which date those
32 provisions shall be deemed to be repealed.
33   § 10. Subdivision (p) of section 406 of chapter 166 of  the  laws  of
34 1991,  amending the tax law and other laws relating to taxes, as amended
35 by section 12 of part A of chapter 55 of the laws of 2021, is amended to
36 read as follows:
37   (p) The amendments to section 1809 of the vehicle and traffic law made
38 by sections three hundred thirty-seven and three hundred thirty-eight of
39 this act shall not apply to any offense committed prior to  such  effec-
40 tive  date;  provided,  further, that section three hundred forty-one of
41 this act shall take effect immediately and shall expire November 1, 1993
42 at which time it  shall  be  deemed  repealed;  sections  three  hundred
43 forty-five  and  three  hundred  forty-six of this act shall take effect
44 July 1, 1991; sections three hundred fifty-five,  three  hundred  fifty-
45 six,  three  hundred  fifty-seven and three hundred fifty-nine of this act
46 shall take effect immediately and shall expire June 30, 1995  and  shall
47 revert  to  and  be read as if this act had not been enacted; section three
48 hundred  fifty-eight of this act shall take effect immediately and shall
49 expire June 30, 1998 and shall revert to and be read as if this act  had
50 not  been  enacted; section three hundred sixty-four through three hundred
51 sixty-seven  of  this  act  shall apply to claims filed on or after such
52 effective date; sections three hundred sixty-nine, three hundred  seven-
53 ty-two,  three  hundred seventy-three, three hundred seventy-four, three
54 hundred seventy-five and three hundred seventy-six of  this  act  shall
55 remain  in  effect  until  September  1, [~~2023~~] **2025**, at which time they
56 shall  be  deemed  repealed;  provided,  however,  that  the  mandatory

1  surcharge  provided  in  section  three  hundred seventy-four of this act
2  shall apply to parking violations occurring on or after  said  effective
3  date;  and  provided  further that the amendments made to section 235 of
4  the vehicle and traffic law by section three hundred seventy-two of this
5  act,  the amendments made to section 1809 of the vehicle and traffic law
6  by sections three hundred thirty-seven and three hundred thirty-eight of
7  this act and the amendments made to section 215-a of  the  labor  law  by
8  section three hundred seventy-five of this act shall expire on September
9  1, [**2023**] **2025**  and upon such date the provisions of such subdivisions
10 and sections shall revert to and be read as if the  provisions  of  this
11 act  had  not  been  enacted;  the amendments to subdivisions 2 and 3 of
12 section 400.05 of the penal law made by sections three hundred  seventy-
13 seven  and  three hundred seventy-eight of this act shall expire on July
14 1, 1992 and upon such date the provisions  of  such  subdivisions  shall
15 revert  and  shall be read as if the provisions of this act had not been
16 enacted; the state board of law examiners shall take such action  as  is
17 necessary to assure that all applicants for examination for admission to
18 practice  as  an  attorney and counsellor at law shall pay the increased
19 examination fee provided for by the amendment made to section 465 of the
20 judiciary law by section three hundred eighty of this act for any  exam-
21 ination given on or after the effective date of this act notwithstanding
22 that an applicant for such examination may have prepaid a lesser fee for
23 such examination as required by the provisions of such section 465 as of
24 the  date  prior  to  the  effective date of this act; the provisions of
25 section 306-a of the civil practice law and rules as  added  by  section
26 three  hundred eighty-one of this act shall apply to all actions pending
27 on or commenced on or after September 1, 1991, provided,  however,  that
28 for  the  purposes of this section service of such summons made prior to
29 such date shall be deemed to have been completed on September  1,  1991;
30 the  provisions  of section three hundred eighty-three of this act shall
31 apply to all money deposited  in  connection  with  a  cash  bail  or  a
32 partially  secured  bail  bond  on or after such effective date; and the
33 provisions of sections  three  hundred  eighty-four  and  three  hundred
34 eighty-five  of  this  act  shall  apply  only to jury service commenced
35 during a judicial term beginning on or after the effective date of  this
36 act; provided, however, that nothing contained herein shall be deemed to
37 affect  the  application,  qualification,  expiration  or  repeal of any
38 provision of law amended by any section of this act and such  provisions
39 shall  be  applied or qualified or shall expire or be deemed repealed in
40 the same manner, to the same extent and on the same date as the case may
41 be as otherwise provided by law;
42   § 11. Subdivision 8 of section 1809 of the vehicle and traffic law, as
43 amended by section 13 of part A of chapter 55 of the laws  of  2021,  is
44 amended to read as follows:
45   8. The provisions of this section shall only apply to offenses commit-
46 ted  on  or  before September first, two thousand [**twenty-three**] **twenty-**
47 **five**.
48   § 12. Section 6 of chapter 713 of the laws of 1988, amending the vehi-
49 cle and traffic law relating to the ignition interlock  device  program,
50 as amended by section 14 of part A of chapter 55 of the laws of 2021, is
51 amended to read as follows:
52   § 6. This act  shall  take  effect  on  the first day of April next
53 succeeding the date on which it  shall  have  become  a  law;  provided,
54 however,  that  effective immediately, the addition, amendment or repeal
55 of any rule or regulation necessary for the implementation of the  fore-
56 going  sections  of  this  act on their effective date is authorized and

1  directed to be made and completed on or before such effective  date  and
2  shall  remain in full force and effect until the first day of September,
3  [2023] 2025 when upon such date the provisions  of  this  act  shall  be
4  deemed repealed.
5    § 13. Paragraph a of subdivision 6 of section 76 of chapter 435 of the
6  laws of 1997, amending the military law and other laws relating to vari-
7  ous  provisions, as amended by section 15 of part A of chapter 55 of the
8  laws of 2021, is amended to read as follows:
9    a. sections forty-three through forty-five of this  act  shall  expire
10 and be deemed repealed on September 1, [2023] 2025;
11   § 14. Section 4 of part D of chapter 412 of the laws of 1999, amending
12 the civil practice law and rules and the court of claims act relating to
13 prisoner  litigation reform, as amended by section 16 of part A of chap-
14 ter 55 of the laws of 2021, is amended to read as follows:
15   § 4. This act shall take effect 120 days after it shall have become  a
16 law  and shall remain in full force and effect until September 1, [2023]
17 2025, when upon such date it shall expire.
18   § 15. Subdivision 2 of section 59 of chapter 222 of the laws of  1994,
19 constituting  the  family  protection and domestic violence intervention
20 act of 1994, as amended by section 17 of part A of  chapter  55  of  the
21 laws of 2021, is amended to read as follows:
22   2.  Subdivision  4  of section 140.10 of the criminal procedure law as
23 added by section thirty-two of this act shall  take  effect  January  1,
24 1996  and  shall  expire  and  be deemed repealed on September 1, [2023]
25 2025.
26   § 16. Section 5 of chapter 505 of the laws of 1985, amending the crim-
27 inal procedure law relating to the use of closed-circuit television  and
28 other  protective  measures  for  certain child witnesses, as amended by
29 section 18 of part A of chapter 55 of the laws of 2021,  is  amended  to
30 read as follows:
31   § 5.  This  act  shall take effect immediately and shall apply to all
32 criminal actions and proceedings commenced prior to the  effective  date
33 of  this  act  but  still  pending  on such date as well as all criminal
34 actions and proceedings commenced on or after such  effective  date  and
35 its provisions shall expire on  September 1, [2023] 2025, when upon such
36 date the provisions of this act shall be deemed repealed.
37   § 17.  Subdivision  d of section 74 of chapter 3 of the laws of 1995,
38 enacting the sentencing reform act of 1995, as amended by section 19  of
39 part A of chapter 55 of the laws of 2021, is amended to read as follows:
40   d.  Sections  one-a  through twenty, twenty-four through twenty-eight,
41 thirty through thirty-nine, forty-two and forty-four of this  act  shall
42 be deemed repealed on September 1, [2023] 2025;
43   § 18. Section 2 of chapter 689 of the laws of 1993, amending the crim-
44 inal  procedure  law  relating to electronic court appearance in certain
45 counties, as amended by section 20 of part A of chapter 55 of  the  laws
46 of 2021, is amended to read as follows:
47   § 2.  This  act  shall  take  effect  immediately, except  that  the
48 provisions of this act shall be deemed to have been in  full  force  and
49 effect  since  July  1, 1992 and the provisions of this act shall expire
50 September 1, [2023] 2025 when upon such date the provisions of this  act
51 shall be deemed repealed.
52   § 19. Section 3 of chapter 688 of the laws of 2003, amending the exec-
53 utive law relating to enacting the interstate compact for adult offender
54 supervision,  as  amended  by  section 21 of part A of chapter 55 of the
55 laws of 2021, is amended to read as follows:

1    § 3. This act shall take effect immediately, except that section one
2  of  this  act  shall take effect on the first of January next succeeding
3  the date on which it shall have become a law, and shall remain in effect
4  until the first of September, [**2023**] **2025**, upon which date this act
5  shall  be deemed repealed and have no further force and effect; provided
6  that section one of this act shall only take effect with respect to  any
7  compacting  state  which has enacted an interstate compact entitled
8  "Interstate compact for adult offender supervision" and having an  iden-
9  tical  effect  to  that  added  by  section one of this act and provided
10  further that with respect to any such compacting state, upon the  effec-
11  tive date of section one of this act, section 259-m of the executive law
12  is  hereby  deemed  REPEALED and section 259-mm of the executive law, as
13  added by section one of  this  act,  shall  take  effect;  and  provided
14  further  that  with respect to any state which has not enacted an inter-
15  state compact entitled "Interstate compact  for  adult  offender  super-
16  vision"  and  having an identical effect to that added by section one of
17  this act, section 259-m of the executive law shall take effect  and  the
18  provisions  of  section one of this act, with respect to any such state,
19  shall have no force or effect until such time as such state shall  adopt
20  an  interstate  compact  entitled "Interstate compact for adult offender
21  supervision" and having an identical effect to that added by section one
22  of this act in which case, with respect to such state,  effective  imme-
23  diately,  section  259-m  of  the  executive  law is deemed repealed and
24  section 259-mm of the executive law, as added by  section  one  of  this
25  act, shall take effect.
26    § 20. Section 8 of part H of chapter 56 of the laws of 2009, amending
27  the correction law relating to limiting the closing of  certain  correc-
28  tional  facilities,  providing  for  the  custody  by  the department of
29  correctional services of inmates serving definite  sentences,  providing
30  for  custody  of  federal prisoners and requiring the closing of certain
31  correctional facilities, as amended by section 22 of part A  of  chapter
32  55 of the laws of 2021, is amended to read as follows:
33    § 8.  This  act shall take effect immediately; provided, however that
34  sections five and six of this act shall expire and  be  deemed  repealed
35  September 1, [**2023**] **2025**.
36    § 21. Section 3 of part C of chapter 152 of the laws of 2001, amending
37  the military law relating to military funds of the organized militia, as
38  amended  by  section  23 of part A of chapter 55 of the laws of 2021, is
39  amended to read as follows:
40    § 3. This act shall take effect immediately; provided however that the
41  amendments made to subdivision 1 of section 221 of the military  law  by
42  section two of this act shall expire and be deemed repealed September 1,
43  [**2023**] **2025**.
44    § 22. Section 5 of  chapter  554 of the laws of 1986, amending the
45  correction law and the penal law relating  to  providing  for  community
46  treatment  facilities  and establishing the crime of absconding from the
47  community treatment facility, as amended by section 24 of  part  A  of
48  chapter 55 of the laws of 2021, is amended to read as follows:
49    § 5. This act shall take effect immediately and shall remain in full
50  force and effect until September 1, [**2023**] **2025**,  and  provided  further
51  that the commissioner of correctional services shall report each January
52  first  and July first during such time as this legislation is in effect,
53  to the chairmen of  the  senate  crime  victims,  crime  and  correction
54  committee,  the  senate codes committee, the assembly correction commit-
55  tee, and the assembly codes committee, the number of individuals who are
56  released to community treatment facilities during the previous six-month

S. 4005--C                          10                          A. 3005--C

1  period, including the total number for each date at  each  facility  who
2  are  not residing within the facility, but who are required to report to
3  the facility on a daily or less frequent basis.
4     § 23. Section 2 of part F of chapter 55 of the laws of 2018, amending
5  the criminal procedure law relating to pre-criminal  proceeding  settle-
6  ments  in  the  city  of New York, as amended by section 25 of part A of
7  chapter 55 of the laws of 2021, is amended to read as follows:
8     § 2. This act shall take effect immediately and shall remain  in  full
9  force  and  effect until March 31, [2023] 2025, when it shall expire and
10 be deemed repealed.
11    § 24. This act shall take effect immediately.

12                               PART B

13                         Intentionally Omitted

14                               PART C

15                         Intentionally Omitted

16                               PART D

17                         Intentionally Omitted

18                               PART E

19                         Intentionally Omitted

20                               PART F

21    Section 1. Section 265.01-e of the penal law, as added by chapter  371
22 of the laws of 2022, is amended to read as follows:
23 § 265.01-e Criminal  possession  of  a  firearm,  rifle  or shotgun in a
24                    sensitive location.
25    1. A person is guilty of criminal possession of a  firearm,  rifle  or
26 shotgun  in  a  sensitive location when such person possesses a firearm,
27 rifle or shotgun in or upon a sensitive location, and such person  knows
28 or reasonably should know such location is a sensitive location.
29    2. For the purposes of this section, a sensitive location shall mean:
30    (a)  any  place  owned or under the control of federal, state or local
31 government, for the  purpose  of  government  administration,  including
32 courts;
33    (b)  any  location  providing  health,  behavioral health, or chemical
34 dependance care or services;
35    (c) any place of worship [or religious observation], except for  those
36 persons responsible for security at such place of worship;
37    (d)  libraries,  public  playgrounds, public parks, and zoos, provided
38 that for the purposes of this section a "public park" shall not  include
39 (i) any privately held land within a public park not dedicated to public
40 use or (ii) the forest preserve as defined in subdivision six of section
41 9-0101 of the environmental conservation law;

1    (e) the location of any program licensed, regulated, certified, fund-
2  ed, or approved by the office of children and family services that
3  provides services to children, youth, or young adults, any legally
4  exempt childcare provider; a childcare program for which a permit to
5  operate such program has been issued by the department of health and
6  mental hygiene pursuant to the health code of the city of New York;
7    (f) nursery schools, preschools, and summer camps; **provided that for**
8  **the purposes of this section, nothing shall prohibit the activity**
9  **permitted under subdivisions seven-c, seven-d, and seven-e of section**
10 **265.20 of this article where such activity occurs at a summer camp in**
11 **accordance with all applicable local, state, and federal laws, rules,**
12 **and regulations;**
13   (g) the location of any program licensed, regulated, certified, oper-
14 ated, or funded by the office for people with developmental disabili-
15 ties;
16   (h) the location of any program licensed, regulated, certified, oper-
17 ated, or funded by office of addiction services and supports;
18   (i) the location of any program licensed, regulated, certified, oper-
19 ated, or funded by the office of mental health;
20   (j) the location of any program licensed, regulated, certified, oper-
21 ated, or funded by the office of temporary and disability assistance;
22   (k) homeless shelters, runaway homeless youth shelters, family shel-
23 ters, shelters for adults, domestic violence shelters, and emergency
24 shelters, and residential programs for victims of domestic violence;
25   (l) residential settings licensed, certified, regulated, funded, or
26 operated by the department of health;
27   (m) in or upon any building or grounds, owned or leased, of any educa-
28 tional institutions, colleges and universities, licensed private career
29 schools, school districts, public schools, private schools licensed
30 under article one hundred one of the education law, charter schools,
31 non-public schools, board of cooperative educational services, special
32 act schools, preschool special education programs, private residential
33 or non-residential schools for the education of students with disabili-
34 ties, and any state-operated or state-supported schools;
35   (n) any place, conveyance, or vehicle used for public transportation
36 or public transit, subway cars, train cars, buses, ferries, railroad,
37 omnibus, marine or aviation transportation; or any facility used for or
38 in connection with service in the transportation of passengers,
39 airports, train stations, subway and rail stations, and bus terminals;
40   (o) any establishment [~~issued a~~] **holding an active** license for
41 on-premise consumption pursuant to article four, four-A, five, or six of
42 the alcoholic beverage control law where alcohol is consumed and any
43 establishment licensed under article four of the cannabis law for
44 on-premise consumption;
45   (p) any place used for the performance, art entertainment, gaming, or
46 sporting events such as theaters, stadiums, racetracks, museums, amuse-
47 ment parks, performance venues, concerts, exhibits, conference centers,
48 banquet halls, and gaming facilities and video lottery terminal facili-
49 ties as licensed by the gaming commission;
50   (q) any location being used as a polling place;
51   (r) any public sidewalk or other public area restricted from general
52 public access for a limited time or special event that has been issued a
53 permit for such time or event by a governmental entity, or subject to
54 specific, heightened law enforcement protection, or has otherwise had
55 such access restricted by a governmental entity, provided such location
56 is identified as such by clear and conspicuous signage;

1  (s) any gathering of individuals to collectively express their consti-
2  tutional rights to protest or assemble;
3  (t) the area commonly known as Times Square, as such area is deter-
4  mined and identified by the city of New York; provided such area shall
5  be clearly and conspicuously identified with signage.
6  3. This section shall not apply to:
7  (a) [consistent with federal law, law enforcement who qualify to carry
8  under the federal law enforcement officers safety act,] qualified law
9  enforcement officers who are authorized to carry concealed firearms
10 pursuant to 18 U.S.C 926B, or qualified retired law enforcement officers
11 who are authorized to carry concealed firearms pursuant to 18 U.S.C.
12 926C;
13 (b) persons who are police officers as defined in subdivision thirty-
14 four of section 1.20 of the criminal procedure law;
15 (c) persons who are designated peace officers by section 2.10 of the
16 criminal procedure law;
17 (d) persons who were employed as police officers as defined in subdi-
18 vision thirty-four of section 1.20 of the criminal procedure law but are
19 retired;
20 (e) security guards as defined by and registered under article seven-A
21 of the general business law, who have been granted a special armed
22 registration card, while at the location of their employment and during
23 their work hours as such a security guard;
24 (f) active-duty military personnel;
25 (g) persons licensed under paragraph (c), (d) or (e) of subdivision
26 two of section 400.00 of this chapter while in the course of his or her
27 official duties;
28 (h) a government employee under the express written consent of such
29 employee's supervising government entity for the purposes of natural
30 resource protection and management;
31 (i) persons while lawfully engaged in taking of wildlife or attempts
32 to take wildlife pursuant to a hunting [activity, including hunter
33 education training] permit or license issued by the department of envi-
34 ronmental conservation, or as otherwise authorized pursuant to the envi-
35 ronmental conservation law, and persons while lawfully engaged in hunter
36 education training, marksmanship practice, marksmanship competition or
37 training, or training in the safe handling and use of firearms, in
38 accordance with all applicable local, state, and federal laws, rules,
39 and regulations; [or]
40 (j) persons operating a program in a sensitive location out of their
41 residence, [as defined by this section,] which is licensed, certified,
42 authorized, or funded by the state or a municipality, so long as such
43 possession is in compliance with any rules or regulations applicable to
44 the operation of such program and use or storage of firearms[.];
45 (k) persons, while acting in the scope of their official duties, who
46 are employed in the revenue control and security departments of the
47 metropolitan transportation authority, or the New York city transit
48 authority or an affiliate or subsidiary thereof, who are authorized to
49 carry a firearm as part of their employment;
50 (l) persons while lawfully engaged in historical reenactments, educa-
51 tional programming involving historical weapons of warfare, or motion
52 picture or theatrical productions, in accordance with all applicable
53 local, state, and federal laws, rules and regulations;
54 (m) persons, while acting within the scope of their official duties,
55 who are responsible for the storage or display of antique firearms,
56 rifles or shotguns at museums and historic sites;

1  (n) persons while participating in military ceremonies, funerals, and
2  honor guards; or
3  (o) persons while lawfully engaging in learning, practicing, training
4  for, competing in, or travelling into or within the state to learn,
5  practice, train for, or compete in, the sport of biathlon, in accordance
6  with all applicable local, state, and federal laws, rules, and regu-
7  lations.
8  Criminal possession of a firearm, rifle or shotgun in a sensitive
9  location is a class E felony.
10  § 2. Section 265.01-d of the penal law, as added by chapter 371 of the
11  laws of 2022, is amended to read as follows:
12  § 265.01-d Criminal possession of a weapon in a restricted location.
13  1. A person is guilty of criminal possession of a weapon in a
14  restricted location when such person possesses a firearm, rifle, or
15  shotgun and enters into or remains on or in private property where such
16  person knows or reasonably should know that the owner or lessee of such
17  property has not permitted such possession by clear and conspicuous
18  signage indicating that the carrying of firearms, rifles, or shotguns on
19  their property is permitted or [has] by otherwise [given] giving express
20  consent.
21  2. This section shall not apply to:
22  (a) police officers as defined in section 1.20 of the criminal proce-
23  dure law;
24  (b) persons who are designated peace officers as defined in section
25  2.10 of the criminal procedure law;
26  (c) [persons who were employed as police officers as defined in
27  section 1.20 of the criminal procedure law, but are] qualified law
28  enforcement officers who are authorized to carry concealed firearms
29  pursuant to 18 U.S.C. 926B, or qualified retired law enforcement offi-
30  cers who are authorized to carry concealed firearms pursuant to 18
31  U.S.C. 926C;
32  (d) security guards as defined by and registered under article seven-A
33  of the general business law who has been granted a special armed regis-
34  tration card, while at the location of their employment and during their
35  work hours as such a security guard;
36  (e) active-duty military personnel;
37  (f) persons licensed under paragraph (c), (d) or (e) of subdivision
38  two of section 400.00 of this chapter while in the course of his or her
39  official duties; [or]
40  (g) persons while lawfully engaged in taking of wildlife or attempts
41  to take wildlife pursuant to a hunting [activity] permit or license
42  issued by the department of environmental conservation, or as otherwise
43  authorized pursuant to section 11-0707 and 11-0709 of the environmental
44  conservation law; or
45  (h) persons, while acting in the scope of their official duties, who
46  are employed in the revenue control and security departments of the
47  metropolitan transportation authority, or the New York city transit
48  authority or an affiliate or subsidiary thereof, who are authorized to
49  carry a firearm as part of their employment.
50  Criminal possession of a weapon in a restricted location is a class E
51  felony.
52  § 3. Subdivision 2 of section 265.45 of the penal law, as added by
53  chapter 371 of the laws of 2022, is amended to read as follows:
54  2. No person shall store or otherwise leave a rifle, shotgun, or
55  firearm out of [his or her] such person's immediate possession or
56  control inside a vehicle without first removing the ammunition from and

1  securely  locking such rifle, shotgun, or firearm in an appropriate safe
2  storage depository out of sight from outside of the  vehicle; provided,
3  however,  this  subdivision  shall not apply to a police officer as such
4  term is defined in subdivision thirty-four of section 1.20 of the crimi-
5  nal  procedure  law,  a  qualified law enforcement officer authorized to
6  carry concealed firearms pursuant to 18 U.S.C. 926B, or a person in  the
7  military service of the United States or the state of New York when such
8  police  officer,  qualified  law  enforcement officer, or person in such
9  military service is acting in the course of such person's official  duty
10  or  employment  and otherwise complying with any applicable standards or
11  requirements pertaining to the  storage  of  such  rifle,  shotgun,  or
12  firearm.
13      § 4. This act shall take effect immediately.

14                                 PART G

15      Section  1.  The  state finance law is amended by adding a new section
16  99-qq to read as follows:
17      § 99-qq. Hazard mitigation state revolving  loan  fund.  1.  There  is
18  hereby established in the joint custody of the state comptroller and the
19  commissioner  of  taxation and finance a fund to be known as the "hazard
20  mitigation revolving loan fund".
21      2. The fund shall consist of all moneys  appropriated  therefore,  all
22  moneys received by the state pursuant to a capitalization grant from the
23  federal  emergency  management  agency  in accordance with the Safeguarding
24  Tomorrow through Ongoing Risk Mitigation Act of 2020 (STORM  Act)  (P.L.
25  116-284),  payments  of  principal  and  interest on loans made from the
26  fund, and interest earned on amounts in the fund.
27      3. Moneys of the account, when allocated, shall be  available  to  the
28  commissioner of the Division of Homeland Security and Emergency Services
29  to  make  loans pursuant to section seven hundred nineteen of the execu-
30  tive law.
31      § 2. The executive law is amended by adding a new section 719 to  read
32  as follows:
33      § 719.  Loans  for  eligible  hazard  mitigation  activities.  1. The
34  commissioner may make loans to local  governments  for  eligible  hazard
35  mitigation  activities,  as  defined  in the STORM Act and corresponding
36  federal regulations, to reduce disaster  risks  for  homeowners,  busi-
37  nesses,  non-profit  organizations,  and  communities subject to available
38  funds for such purpose pursuant to section ninety-nine-qq of  the  state
39  finance law.
40      2.  The commissioner may make loans under this section subject to such
41  other terms and conditions of the STORM Act,  and  related  federal  and
42  state rules, regulations, policies and guidelines.
43      § 3. This act shall take effect immediately.

44                                 PART H

45      Section  1.  Subdivision 3 of section 3 of the volunteer firefighters'
46  benefit law, as amended by chapter 458 of the laws of 1996,  is  amended
47  to read as follows:
48      3.  "Line of duty" means the performance by a volunteer firefighter as
49  a volunteer firefighter of the duties and activities described in subdi-
50  vision one of section five of this chapter and the same such duties  and
51  activities  performed for a specialized team established pursuant to the
52  provisions of section two hundred nine-bb of the general  municipal  law

1  for which the volunteer firefighter does not receive any remuneration or
2  a  gratuity  and shall be deemed to include any date of injury as deter-
3  mined by the workers' compensation board pursuant to the  provisions  of
4  section  forty-one of this chapter. The following shall not be deemed to
5  be remuneration or a gratuity: **receipt of a training stipend as outlined**
6  **in section two hundred-aa of the general municipal law;** reimbursement of
7  expenses for meals, lodging and actual and necessary travel; the receipt
8  of a mileage allowance in  lieu  of  travel  expense;  reimbursement  of
9  expenses  for registration and tuition fees payable under section seven-
10 ty-two-g of the general municipal law, and the acceptance of transporta-
11 tion, food, drink, shelter, clothing and similar items while on duty  or
12 engaged in such activities.
13    § 2.  The general municipal  law is amended by adding a new section
14 200-aa to read as follows:
15    **§ 200-aa. Training stipend for volunteer firefighters. 1. For purposes**
16 **of this section:**
17    **(a) "fire company" shall have the same meaning as defined  in  section**
18 **three of the volunteer firefighters' benefit law.**
19    **(b)  "training  stipend" means payment of a nominal fee to a volunteer**
20 **firefighter of a stipend  for  the  completion  of  certain  firefighter**
21 **training,  as  identified and published by the office of fire prevention**
22 **and control.**
23    **(c) "volunteer firefighter" shall have the same meaning as defined  in**
24 **section three of the volunteer firefighters' benefit law.**
25    **2.  The governing board of a city, town, village or fire district may,**
26 **by local law, ordinance or  resolution,  authorize  a  fire  company  to**
27 **provide training stipends to volunteer firefighters.**
28    **3.  The office of fire prevention and control may make available state**
29 **funds  through  a  training  stipend  to  volunteer  firefighters   for**
30 **completion  of certain firefighter training, as identified and published**
31 **by the office of fire prevention and control.**
32    **4. No volunteer firefighter may receive a training stipend from both a**
33 **volunteer fire company pursuant to subdivision two of  this  section  and**
34 **the  office of fire prevention and control pursuant to subdivision three**
35 **of this section for completion of the same firefighter training.**
36    **5. Any training stipend provided  under  this  section  shall  not  be**
37 **deemed  remuneration or gratuity under the volunteer firefighters' bene-**
38 **fit law or any other provision of law and shall  not  interfere  with  or**
39 **impact  the  volunteer status of volunteer firefighters under the volun-**
40 **teer firefighters' benefit law or any other provision of law.**
41    **6. The office of fire prevention and control shall  promulgate  rules**
42 **and regulations necessary to implement the provisions of this section.**
43    § 3.  Paragraph  c  of  subdivision 1 of section 205-g of the general
44 municipal law, as added by chapter 559 of the laws of 2006,  is  amended
45 to read as follows:
46    c.  "Line of duty" means the performance by a volunteer firefighter of
47 the duties and activities described in subdivision one of  section  five
48 of  the  volunteer firefighters' benefit law and the same such duties and
49 activities performed for a specialized team established pursuant to  the
50 provisions  of  section two hundred nine-bb of this article for which the
51 volunteer firefighter does not receive any remuneration  or  a  gratuity
52 and  shall  be deemed to include any date of injury as determined by the
53 workers' compensation board pursuant to  the  provisions  of  section
54 forty-one  of  the  volunteer  firefighters'  benefit law. The following
55 shall not be deemed to be remuneration or a gratuity:  reimbursement  of
56 expenses for meals, lodging and actual and necessary travel; the receipt

S. 4005--C                        16                        A. 3005--C

1  of a mileage allowance in lieu of travel expense; reimbursement of
2  expenses for registration and tuition fees payable under section seven-
3  ty-two-g of this chapter, [~~and~~] the acceptance of transportation, food,
4  drink, shelter, clothing and similar items while on duty or engaged in
5  such activities; and receipt of a training stipend as outlined in
6  section two hundred-aa of this article.
7      § 4. This act shall take effect on the one hundred twentieth day after
8  it shall have become a law. Effective immediately, the addition, amend-
9  ment and/or repeal of any rule or regulation necessary for the implemen-
10  tation of this act on its effective date is authorized to be made and
11  completed on or before such date.

12                              PART I

13                        Intentionally Omitted

14                              PART J

15      Section 1. Subdivisions 1, 2 and 6 of section 217 of the military law,
16  subdivisions 1 and 6 as amended by chapter 141 of the laws of 1988, and
17  subdivision 2 as amended by chapter 63 of the laws of 1976, are amended
18  and a new subdivision 8 is added to read as follows:
19      1. Any member of the organized militia who (a) shall be disabled or
20  has been so disabled in the performance of any actual service of this
21  state within three years preceding the application for a pension under
22  this chapter, in case of riots, tumults, breach of the peace, resistance
23  to process, invasion, insurrection or imminent danger thereof, or when-
24  ever called upon in aid of the civil authorities, or while engaged in
25  any lawfully ordered parade, drill, encampment or inspection, shall,
26  upon proof of the fact, as hereinafter provided, be placed on the disa-
27  bility retired roll of the state and shall receive out of any moneys in
28  the treasury of the state, not otherwise appropriated, upon the approval
29  of the chief of staff and approval of the governor, the same pension or
30  reward that persons under similar circumstances receive from the United
31  States[~~.~~], or
32      (b) was activated on state active duty on or after September eleventh,
33  two thousand one, to participate in World Trade Center site rescue,
34  recovery, or cleanup operations as part of such state active duty, and
35  who is determined to have incurred a qualifying World Trade Center
36  condition, as hereinafter provided, shall be entitled to a performance
37  of duty disability pension equivalent to three-quarters of the member's
38  final annual pay as provided for under this chapter. The deadline for
39  submitting any qualifying claim under this paragraph shall be on or
40  before September eleventh, two thousand twenty-six. The adjutant general
41  of the division of military and naval affairs is authorized to promul-
42  gate regulations to implement the provisions of this section.
43      2. In case any such member of the organized militia (a) shall die as
44  the result of any such wound, injury or disease within one year after it
45  has been incurred or contracted, the surviving spouse, children under
46  twenty-one years of age or dependent parent of such member of the organ-
47  ized militia shall receive such pension and reward as persons under
48  similar circumstances receive from the United States[~~.~~], or
49      (b) was activated on state active duty on or after September eleventh,
50  two thousand one, to participate in World Trade Center site rescue,
51  recovery, or cleanup operations as part of such state active duty, and

1  whose death is determined to be the result of incurring a qualifying
2  World Trade Center condition, as hereinafter provided, the surviving
3  spouse, children under twenty-one years of age or dependent parent of
4  such member of the organized militia shall be entitled to an accidental
5  death benefit equivalent to one-half of the member's final annual pay as
6  provided under this chapter. The deadline for submitting any qualifying
7  claim under this paragraph shall be on or before September eleventh, two
8  thousand twenty-six. The adjutant general of the division of military
9  and naval affairs is authorized to promulgate regulations to implement
10 the provisions of this section.
11    6. Before the name of any person is placed upon the disability retired
12 roll of the state under this section, proof shall be made under regu-
13 lations issued pursuant to this chapter that the applicant is entitled
14 to such pension or reward; provided, however, that in the case of the
15 death or disability of a member of the organized militia who partic-
16 ipated in World Trade Center rescue, recovery, or cleanup operations,
17 and in which such death or disability is determined, pursuant to regu-
18 lations issued under this chapter, to have been the result of a qualify-
19 ing World Trade Center condition, then unless the contrary is proved by
20 competent evidence, it shall be presumed that such death or disability
21 was the natural and proximate result of an accident sustained in the
22 performance of actual service of this state and not as a result of will-
23 ful negligence on the part of such member. The chief of staff, with the
24 approval of the governor, shall cause to be [~~striken~~] stricken from such
25 roll the name of any person whenever it appears by satisfactory proof
26 that such name was put upon such roll through false or fraudulent
27 representations. The chief of staff, with the approval of the governor,
28 may increase, reduce or withdraw any pension or reward according to the
29 right and justice and the practice under the laws and regulations of the
30 United States.
31    8. For the purposes of this section:
32    (a) "Qualifying World Trade Center condition" shall mean a qualifying
33 condition or impairment of health resulting in disability to a member of
34 the organized militia who participated in World Trade Center rescue,
35 recovery, or cleanup operations for a qualifying period.
36    (b) "Qualifying condition or impairment of health" shall mean a quali-
37 fying physical condition, or a qualifying psychological condition, or
38 both.
39    (c) "Qualifying physical condition" and "qualifying psychological
40 condition" shall have the same meaning as such terms are defined in
41 subdivision thirty-six of section two of the retirement and social secu-
42 rity law.
43    (d) "Participated in World Trade Center rescue, recovery, or cleanup
44 operations" shall mean any member of the organized militia who: (i)
45 participated in the rescue, recovery, or cleanup operations at the World
46 Trade Center site; (ii) worked at the Fresh Kills Land Fill in New York;
47 (iii) worked at the New York city morgue or the temporary morgue on pier
48 locations on the west side of Manhattan; (iv) manned the barges between
49 the west side of Manhattan and the Fresh Kills Land Fill in New York; or
50 (v) repaired, cleaned or rehabilitated vehicles or equipment, including
51 emergency vehicle radio equipment owned by the city of New York that
52 were contaminated by debris in the World Trade Center site, regardless
53 of whether the work on the repair, cleaning or rehabilitation of said
54 vehicles and equipment was performed within the World Trade Center site,
55 provided such work was performed prior to decontamination of such vehi-
56 cles or equipment.

1    (e)  "World Trade Center site" shall mean anywhere below a line start-
2    ing from the Hudson River and Canal Street; east on Canal Street to Pike
3    Street; south on Pike Street to the East River; and extending to the
4    lower tip of Manhattan.
5    (f)  "Qualifying period" shall mean: (i) any period of time within the
6    forty-eight hours after the first airplane hit the towers; or (ii) a
7    total of forty hours accumulated any time between September eleventh,
8    two thousand one and September twelfth, two thousand two.
9    § 2. This act shall take effect immediately.

10                           PART K

11                    Intentionally Omitted

12                           PART L

13                    Intentionally Omitted

14                           PART M

15                    Intentionally Omitted

16                           PART N

17                    Intentionally Omitted

18                           PART O

19   Section 1. Section 5 of chapter 396 of the laws of 2010 amending the
20   alcoholic beverage control law relating to liquidator's permits and
21   temporary retail permits, as amended by section 1 of part M of chapter
22   55 of the laws of 2022, is amended to read as follows:
23   § 5. This act shall take effect on the sixtieth day after it shall
24   have become a law, provided that paragraph (b) of subdivision 1 of
25   section 97-a of the alcoholic beverage control law as added by section
26   two of this act shall expire and be deemed repealed October 12, [2023]
27   2024.
28   § 2. This act shall take effect immediately.

29                           PART P

30                    Intentionally Omitted

31                           PART Q

32   Section 1. Section 2 of chapter 303 of the laws of 1988, relating to
33   the extension of the state commission on the restoration of the capitol,
34   as amended by section 1 of part T of chapter 55 of the laws of 2018, is
35   amended to read as follows:
36   § 2. The temporary state commission on the restoration of the capitol
37   is hereby renamed as the state commission on the restoration of the

1  capitol (hereinafter to be referred to as the "commission") and is here-
2  by continued until April 1, [2023] 2028.  The commission shall consist
3  of eleven members to be appointed as follows:  five members shall be
4  appointed by the governor; two members shall be appointed by the tempo-
5  rary president of the senate; two members shall be appointed by the
6  speaker of the assembly; one member shall be appointed by the minority
7  leader of the senate; one member shall be appointed by the minority
8  leader of the assembly, together with the commissioner of general
9  services and the commissioner of parks, recreation and historic preser-
10 vation.  The term for each elected member shall be for three years,
11 except that of the first five members appointed by the governor, one
12 shall be for a one year term, and two shall be for a two year term, and
13 one of the first appointments by the president of the senate and by the
14 speaker of the assembly shall be for a two year term. Any vacancy that
15 occurs in the commission shall be filled in the same manner in which the
16 original appointment was made. The commission shall elect a chairman and
17 a vice-chairman from among its members.  The members of the state
18 commission on the restoration of the capitol shall be deemed to be
19 members of the commission until their successors are appointed.  The
20 members of the commission shall receive no compensation for their
21 services, but shall be reimbursed for their expenses actually and neces-
22 sarily incurred by them in the performance of their duties hereunder.
23    § 2. Section 9 of chapter 303 of the laws of 1988, relating to the
24 extension of the state commission on the restoration of the capitol, as
25 amended by section 2 of part T of chapter 55 of the laws of 2018, is
26 amended to read as follows:
27    § 9. This act shall take effect immediately, and shall remain in full
28 force and effect until April 1, [2023] 2028.
29    § 3. This act shall take effect immediately and shall be deemed to
30 have been in full force and effect on and after April 1, 2023; provided
31 that the amendments to section 2 of chapter 303 of the laws of 1988 made
32 by section one of this act shall not affect the expiration of such chap-
33 ter, and shall be deemed to expire therewith.

34                                   PART R

35    Section 1. Subdivision 7 of section 163 of the state finance law, as
36 amended by section 2 of subpart A of part KK of chapter 57 of the laws
37 of 2018, is amended to read as follows:
38    7. Method of procurement. Consistent with the requirements of subdivi-
39 sions three and four of this section, state agencies shall select among
40 permissible methods of procurement including, but not limited to, an
41 invitation for bid, request for proposals or other means of solicitation
42 pursuant to guidelines issued by the state procurement council. State
43 agencies may accept bids electronically including submission of the
44 statement of non-collusion required by section one hundred thirty-nine-d
45 of this chapter, and the statement of certification required by section
46 one hundred thirty-nine-l of this chapter[, and, starting April first,
47 two thousand twelve, and ending March thirty-first, two thousand
48 fifteen, may, for commodity, service and technology contracts require
49 electronic submission as the sole method for the submission of bids for
50 the solicitation. State agencies shall undertake no more than eighty-
51 five such electronic bid solicitations, none of which shall be reverse
52 auctions, prior to April first, two thousand fifteen. In addition, state
53 agencies may conduct up to twenty reverse auctions through electronic
54 means, prior to April first, two thousand fifteen. Prior to requiring

1  ~~the electronic submission of bids, the agency shall make a determi-~~
2  ~~nation, which shall be documented in the procurement record, that elec-~~
3  ~~tronic submission affords a fair and equal opportunity for offerers to~~
4  ~~submit responsive offers. Within thirty days of the completion of the~~
5  ~~eighty-fifth electronic bid solicitation, or by April first, two thou-~~
6  ~~sand fifteen, whichever is earlier, the commissioner shall prepare a~~
7  ~~report assessing the use of electronic submissions and make recommenda-~~
8  ~~tions regarding future use of this procurement method. In addition,~~
9  ~~within thirty days of the completion of the twentieth reverse auction~~
10 ~~through electronic means, or by April first, two thousand fifteen,~~
11 ~~whichever is earlier, the commissioner shall prepare a report assessing~~
12 ~~the use of reverse auctions through electronic means and make recommen-~~
13 ~~dations regarding future use of this procurement method. Such reports~~
14 ~~shall be published on the website of the office of general services~~].
15 Except where otherwise provided by law, procurements shall be compet-
16 itive, and state agencies shall conduct formal competitive procurements
17 to the maximum extent practicable. State agencies shall document the
18 determination of the method of procurement and the basis of award in the
19 procurement record. Where the basis for award is the best value offer,
20 the state agency shall document, in the procurement record and in
21 advance of the initial receipt of offers, the determination of the eval-
22 uation criteria, which whenever possible, shall be quantifiable, and the
23 process to be used in the determination of best value and the manner in
24 which the evaluation process and selection shall be conducted.
25   § 2. Subdivision 7-a of section 163 of the state finance law is
26 REPEALED.
27   § 3. Section 163 of the state finance law is amended by adding two new
28 subdivisions 7-a and 7-b to read as follows:
29   <u>7-a. Notwithstanding the electronic bid provisions set forth in subdi-</u>
30 <u>vision seven of this section, starting April first, two thousand twen-</u>
31 <u>ty-three, and ending March thirty-first, two thousand twenty-seven,</u>
32 <u>state agencies may require electronic submission as the sole method for</u>
33 <u>the submission of bids for commodity, service and technology contracts,</u>
34 <u>including submission of the statement of non-collusion required by</u>
35 <u>section one hundred thirty-nine-d of this chapter, and the statement of</u>
36 <u>certification required by section one hundred thirty-nine-l of this</u>
37 <u>chapter, and may require electronic signatures on all documents required</u>
38 <u>for submission of a bid, any resulting contracts, and required</u>
39 <u>submissions during the term of any contract. Prior to requiring the</u>
40 <u>electronic submission of bids, the agency shall make a determination,</u>
41 <u>which shall be documented in the procurement record, that electronic</u>
42 <u>submission affords a fair and equal opportunity for offerers to submit</u>
43 <u>responsive offers, and that the electronic signature complies with the</u>
44 <u>provisions of article three of the state technology law.</u>
45   <u>7-b. On or before December first, two thousand twenty-six, the commis-</u>
46 <u>sioner of the office of general services shall submit to the speaker of</u>
47 <u>the assembly and the temporary president of the senate and post on the</u>
48 <u>website of the office of general services a report including, but not</u>
49 <u>limited to, the following information:</u>
50   <u>(a) which state agencies required electronic submission as the sole</u>
51 <u>method by which bids could be submitted for the period from April first,</u>
52 <u>two thousand twenty-three through March thirty-first, two thousand twen-</u>
53 <u>ty-six;</u>
54   <u>(b) the number and types of contracts for which such state agencies</u>
55 <u>required electronic submission as the sole method by which bids could be</u>

1  submitted for the period from April first, two thousand twenty-three
2  through March thirty-first, two thousand twenty-six;
3    (c) the estimated savings to the state as a result of such state agen-
4  cies requiring electronic submission as the sole method by which bids
5  could be submitted in response to a solicitation and the basis on which
6  the estimate is made;
7    (d) to the extent practicable, the size, industry, minority- and
8  women-owned business enterprise composition, service-disabled veteran-
9  owned business enterprise composition, and geographic distribution of
10 those vendors that submitted bids in response to solicitations from
11 state agencies where electronic submission was the sole method by which
12 bids could be submitted for the period from April first, two thousand
13 twenty-three through March thirty-first, two thousand twenty-six;
14   (e) to the extent practicable, the size, industry, minority- and
15 women-owned business enterprise composition, service-disabled veteran-
16 owned business enterprise composition, and geographic distribution of
17 those vendors that submitted non-electronic bids in response to solic-
18 itations from state agencies where electronic submission was accepted
19 but not required for the period from April first, two thousand twenty-
20 three through March thirty-first, two thousand twenty-six; and
21   (f) recommendations for the future use of electronic bidding as a
22 permissible method of procurement.
23   § 4. This act shall take effect immediately; provided, however, that
24 the amendments to section 163 of the state finance law made by sections
25 one and three of this act shall not affect the repeal of such section
26 and shall be deemed repealed therewith; and provided further that the
27 changes made by this act shall not apply to any contracts or requests
28 for proposals issued before the effective date.

29                                PART S

30   Section 1.  Section 57 of the civil service law, as added by chapter
31 83 of the laws of 1963, is amended to read as follows:
32   § 57. Continuous recruitment for certain positions. Notwithstanding
33 any other provisions of this chapter or any other law, the civil service
34 department or a municipal commission may establish a continuing eligible
35 list for any class of positions for which it finds [inadequate numbers
36 of well qualified persons available for recruitment] such lists appro-
37 priate.  The civil service department may only establish continuing
38 eligible lists for any class of positions filled through open compet-
39 itive examination. Names of eligibles shall be inserted in such list
40 from time to time as applicants are tested and found qualified in exam-
41 inations held at such intervals as may be prescribed by the civil
42 service department or municipal commission having jurisdiction. Such
43 successive examinations shall, so far as practicable, be constructed and
44 rated so as to be equivalent tests of the merit and fitness of candi-
45 dates. The name of any candidate who passes any such examination and who
46 is otherwise qualified shall be placed on the continuing eligible list
47 in the rank corresponding to his or her final rating on such examina-
48 tion. The period of eligibility of successful candidates for certif-
49 ication and appointment from such continuing eligible list, as a result
50 of any such examination, shall be fixed by the civil service department
51 or municipal commission but, except as a list may reach an announced
52 terminal date, such period shall not be less than one year; nor shall
53 such period of eligibility exceed four years. Subject to such conditions
54 and limitations as the civil service department or municipal commission

1  may prescribe, a candidate may take more than one such examination;
2  provided, however, that no such candidate shall be certified simultane-
3  ously with more than one rank on the continuing eligible list. With
4  respect to any candidate who applies for and is granted additional cred-
5  it in any such examination as a disabled or non-disabled veteran, and
6  for the limited purpose of granting such additional credit, the eligible
7  list shall be deemed to be established on the date on which his **or her**
8  name is added thereto.
9      § 2. This act shall take effect immediately.

10                             PART T

11     Section 1. Subdivision 1 of section 55-b of the civil service law, as
12  amended by chapter 603 of the laws of 1995, is amended to read as
13  follows:
14     1. The commission may determine up to [~~twelve~~] **seventeen** hundred posi-
15  tions with duties such as can be performed by persons with a physical or
16  mental disability who are found otherwise qualified to perform satisfac-
17  torily the duties of any such position. Upon such determination the said
18  positions shall be classified in the noncompetitive class, and may be
19  filled only by persons who shall have been certified by the employee
20  health service of the department as being a person with either a phys-
21  ical or mental disability. The number of persons appointed pursuant to
22  this section shall not exceed [~~twelve~~] **seventeen** hundred.
23     § 2. This act shall take effect immediately.

24                             PART U

25                     Intentionally Omitted

26                             PART V

27     Section 1. Section 2 of part HH of chapter 56 of the laws of 2022
28  amending the retirement and social security law relating to waiving
29  approval and income limitations on retirees employed in school districts
30  and board of cooperative educational services, is amended to read as
31  follows:
32     § 2. **Notwithstanding any other provision of law to the contrary, none**
33  **of the provisions of this act shall be subject to section 25 of the**
34  **retirement and social security law.**
35     **§ 3.** This act shall take effect immediately and shall expire and be
36  deemed repealed June 30, [~~2023~~] **2024**.
37     § 2. This act shall take effect immediately.
    FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
    Insofar as this bill affects the New York State and Local Retirement
  System (NYSLRS), this bill would allow retirees employed by a New York
  State school district or by the board of cooperative educational
  services (BOCES) to collect a salary without suspension or diminution of
  their pension benefit through June 30, 2024. Currently, the post-retire-
  ment earnings limit is $35,000. Waivers to that post-retirement earnings
  limitation are only provided after the employer engages in a rigorous
  application process, including failed efforts to locate qualified non-
  retired individuals, requiring approval by the Commissioner of Educa-
  tion, and the retiree so hired did not work with the employer prior to
  retirement.

If this bill were enacted during the 2023 legislative session, the direct cost incurred would be the retiree's post-retirement earnings for the period July 1, 2023 through June 30, 2024, not to exceed the full pension benefit paid by the NYSLRS during that period.

The number of members and retirees who could be affected by this legislation cannot be readily determined. For each retiree hired pursuant to this proposal, an annual cost of $35,000 is expected. If large numbers of retirees are hired into such positions, significant annual costs would result.

All costs will be shared by the State of New York and all participating employers in the NYSLRS and spread over future billing cycles. Since this proposal exclusively benefits retirees, the increased costs are primarily attributable to retirees from Tiers 1 - 4. Approximately half the contributions required to fund this proposal will be collected on salary reported for current members of Tier 6.

Summary of relevant resources:

Membership data as of March 31, 2022 was used in measuring the impact of the proposed change, the same data used in the April 1, 2022 actuarial valuation. Distributions and other statistics can be found in the 2022 Report of the Actuary and the 2022 Annual Comprehensive Financial Report.

The actuarial assumptions and methods used are described in the 2020, 2021, and 2022 Annual Report to the Comptroller on Actuarial Assumptions, and the Codes, Rules and Regulations of the State of New York: Audit and Control.

The Market Assets and GASB Disclosures are found in the March 31, 2022 New York State and Local Retirement System Financial Statements and Supplementary Information.

I am a member of the American Academy of Actuaries and meet the Qualification Standards to render the actuarial opinion contained herein.

This fiscal note does not constitute a legal opinion on the viability of the proposed change nor is it intended to serve as a substitute for the professional judgment of an attorney.

This estimate, dated March 30, 2023, and intended for use only during the 2023 Legislative Session, is Fiscal Note No. 2023-128, prepared by the Actuary for the New York State and Local Retirement System.

FISCAL NOTE.--Pursuant to Legislative Law, Section 50:

This bill would amend section 2 of Part HH of Chapter 56 of the Laws of 2022 to extend the waiver of the earnings-after-retirement limit for one year for retirees of the New York State Teachers' Retirement System to June 30, 2024. The current expiration date is June 30, 2023 for the waiver of this limit. This act shall take effect immediately and shall be deemed repealed on June 30, 2024. Retirees must be employed with a school district or a board of cooperative educational services (BOCES). There is no earnings-after-retirement limit for retirees aged 65 and older.

It is estimated that there will be no additional annual cost to the employers of members of the New York State Teachers' Retirement System if this bill is enacted.

Member data is from the System's most recent actuarial valuation files, consisting of data provided by the employers to the Retirement System. Data distributions and statistics can be found in the System's Annual Report. System assets are as reported in the System's financial statements and can also be found in the System's Annual Report. Actuarial assumptions and methods are provided in the System's Actuarial Valuation Report.

S. 4005--C                          24                          A. 3005--C

The  source  of this estimate is Fiscal Note 2023-18 dated February 8,
2023 prepared by the Office of  the  Actuary  of  the  New  York  State  Teach-
ers'  Retirement  System  and  is  intended  for use only during the 2023
Legislative Session. I, Richard A. Young, am the Chief Actuary  for  the
New  York State Teachers' Retirement System. I am a member of the Ameri-
can Academy of Actuaries and I meet the Qualification Standards  of  the
American  Academy  of  Actuaries  to render the actuarial opinion contained
herein.

1                              PART W

2    Section 1. Paragraphs 2 and 3 of subdivision e of section 19-a of  the
3  retirement  and  social  security  law,  as  amended by chapter 48 of the laws
4  of 2017, are amended to read as follows:
5    (2)  For  any  given  fiscal  year  for which (i) the system actuarial
6  contribution rate exceeds nine and one-half percent of payroll as of  the
7  end  of  the previous fiscal year, and (ii) an employer's average actuari-
8  al contribution rate exceeds the [~~system~~] **employer's** graded contribution
9  rate or the alternative [~~system~~] **employer's**  graded  contribution  rate,
10  the  balance  in  the  employer's  account  within such fund shall be applied
11  to reduce the employer's payment  to  the  retirement  system  for  such
12  fiscal  year  in  an  amount  not  to  exceed the difference between the
13  employer's actuarial contribution and the employer's graded contribution
14  for the fiscal year.
15    (3) Notwithstanding the provisions of paragraph two of  this  subdivi-
16  sion,  if at the close of any given fiscal year the balance of an employ-
17  er's  account  within  the  fund  exceeds  [~~one  hundred  percent  of~~]  the
18  employer's  [~~payroll~~]  **actuarial  contribution**  for  the  previous  fiscal
19  year,  [~~the  excess  shall  be  applied  to  reduce  the  employer's payment to~~
20  ~~the retirement system for the next succeeding fiscal year~~]  **no  graded**
21  **payment is required or allowed**.
22    § 2. Section 19-a of the retirement and social security law is amended
23  by adding a new subdivision f to read as follows:
24    **f.  (1) An amortizing employer may elect to terminate participation in**
25  **the contribution stabilization program provided that such employer shall**
26  **have  paid  in  full  all  such  prior  year  amortization  amounts  including**
27  **interest  as  determined  by  the  comptroller.  Furthermore,  any amortizing**
28  **employer that has terminated participation in the contribution  stabili-**
29  **zation  program  may re-enter the program in a year in which the employer**
30  **is eligible to amortize and their employer contribution reserve fund has**
31  **been depleted.**
32    **(2) An alternative amortizing employer may elect to terminate  partic-**
33  **ipation  in  the  alternative  contribution stabilization program provided**
34  **that such employer shall have paid in full all such  prior  year  amorti-**
35  **zation  amounts  including  interest  as  determined  by  the  comptroller.**
36  **Furthermore,  any  alternative  amortizing  employer  that  has  terminated**
37  **participation  in  the  alternative  contribution stabilization program may**
38  **not  re-enter  the  alternative  contribution  stabilization  program;**
39  **provided,  however,  such  employer  may  enter the regular contribution**
40  **stabilization program as set forth in paragraph one of this subdivision.**
41    **(3) In order to terminate participation in the contribution stabiliza-**
42  **tion or alternative contribution stabilization  program,  such  employer**
43  **must  file  an  election  on a form prescribed by the comptroller. Such**
44  **election is subject to review and approval by the comptroller.**
45    **(4) Termination shall take effect for the fiscal  year  billing  cycle**
46  **following the fiscal year of approval. An employer who has been approved**

1  to terminate from the contribution stabilization or alternative contrib-
2  ution stabilization program pursuant to this section shall not be
3  required to make a graded payment starting in the following fiscal year
4  billing cycle.
5      (5) In the event an employer in the contribution stabilization program
6  or alternative contribution stabilization program terminates partic-
7  ipation pursuant to this section, any such balance in their employer
8  contribution reserve fund shall be applied to the employer's annual bill
9  in the maximum amount permitted under paragraph two of subdivision e of
10 this section, for the following fiscal year and continue to be applied
11 to future annual bills until the reserve fund is depleted.
12     § 3. Paragraphs 2 and 3 of subdivision e of section 319-a of the
13 retirement and social security law, as amended by chapter 48 of the laws
14 of 2017, are amended to read as follows:
15     (2) For any given fiscal year for which (i) the system actuarial
16 contribution rate exceeds seventeen and one-half percent of payroll as
17 of the end of the previous fiscal year, and (ii) for which an employer's
18 average actuarial contribution rate exceeds the **employer's** graded
19 contribution rate or the alternative [~~system~~] **employer's** graded contrib-
20 ution rate, the balance in the employer's account within such fund shall
21 be applied to reduce the employer's payment to the retirement system for
22 such fiscal year in an amount not to exceed the difference between the
23 employer's actuarial contribution and the employer's graded contribution
24 for the fiscal year.
25     (3) Notwithstanding the provisions of paragraph two of this subdivi-
26 sion, if at the close of any given fiscal year the balance of an employ-
27 er's account within the fund exceeds [~~one hundred percent of~~] the
28 employer's [~~payroll~~] **actuarial contribution** for the previous fiscal
29 year, [~~the excess shall be applied to reduce the employer's payment to~~
30 ~~the retirement system for the next succeeding fiscal year~~] **no graded**
31 **payment shall be required or allowed**.
32     § 4. Section 319-a of the retirement and social security law is
33 amended by adding a new subdivision f to read as follows:
34     f. (1) An amortizing employer may elect to terminate participation in
35 the contribution stabilization program provided that such employer shall
36 have paid in full all such prior year amortization amounts including
37 interest as determined by the comptroller. Furthermore, any amortizing
38 employer that has terminated participation in the contribution stabili-
39 zation program may re-enter the program in a year in which the employer
40 is eligible to amortize and their employer contribution reserve fund has
41 been depleted.
42     (2) An alternative amortizing employer may elect to terminate partic-
43 ipation in the alternative contribution stabilization program provided
44 that such employer shall have paid in full all such prior year amorti-
45 zation amounts including interest as determined by the comptroller.
46 Furthermore, any alternative amortizing employer that has terminated
47 participation in the alternative contribution stabilization program may
48 not re-enter the alternative contribution stabilization program;
49 provided, however, such employer may enter the regular contribution
50 stabilization program as set forth in paragraph one of this subdivision.
51     (3) In order to terminate participation in the contribution stabiliza-
52 tion or alternative contribution stabilization program, such employer
53 must file an election on a form prescribed by the comptroller. Such
54 election is subject to review and approval by the comptroller.
55     (4) Termination shall take effect for the fiscal year billing cycle
56 following the fiscal year of approval. An employer who has been approved

1 to terminate from the contribution stabilization or alternative contrib-
2 ution stabilization program pursuant to this section shall not be
3 required to make a graded payment starting in the following fiscal year
4 billing cycle.
5     (5) In the event an employer in the contribution stabilization program
6 or alternative contribution stabilization program terminates partic-
7 ipation pursuant to this section, any such balance in their employer
8 contribution reserve fund shall be applied to the employer's annual bill
9 in the maximum amount permitted under paragraph two of subdivision e of
10 this section, for the following fiscal year and continue to be applied
11 to future annual bills until the reserve fund is depleted.
12    § 5. This act shall take effect immediately, and shall be deemed to
13 have been in full force and effect on and after April 1, 2023.
       FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
       This bill would revise the terms of participation in the New York
    State and Local Retirement Systems (NYSLRS) Contribution Stabilization
    Program (CSP). Participating employers in the NYSLRS may enter the CSP
    to reduce volatility in average annual contribution rates. Should
    employer billing rates increase rapidly, the CSP allows a portion of the
    increase to be amortized over 10 years for the regular CSP or 12 years
    for the alternative CSP. Should employer billing rates decrease rapid-
    ly, the CSP requires employers to make an additional contribution,
    called a graded payment. The graded payment is deposited into an inter-
    est-bearing reserve fund held within the NYSLRS for the exclusive use by
    the employer to reduce future amortizations.
       This bill revises the CSP in the following ways:
       1) Limits the value of the reserve fund assets. Graded payments would
    cease when the employer's reserve fund assets exceed the employer's
    actuarial contribution in the prior fiscal year. Currently, the reserve
    fund is capped at 100% of the employer's payroll.
       2) Creates provisions for termination from the CSP, subject to
    approval by the Comptroller, provided all prior year amortizations are
    paid in full, including interest. Beginning the fiscal year following
    termination, the employer would not be required (or allowed) to make a
    graded payment. Any existing reserve fund assets would be used to reduce
    future annual bills up to the amount the employer would have been able
    to amortize if still in the program. The employer would be permitted to
    re-enter the regular CSP only if eligible to amortize, provided all
    reserve fund assets are depleted.
       3) Allows an employer to utilize its reserve fund assets to pay a
    portion of its annual bill when the employer's average actuarial
    contribution rate exceeds the employer's graded rate. Currently, the
    employer's average actuarial rate must exceed the System graded rate.
       If this bill is enacted during the 2023 legislative session, we antic-
    ipate some administrative costs to implement the provisions of this
    legislation.
       Summary of relevant resources:
       Membership data as of March 31, 2022 was used in measuring the impact
    of the proposed change, the same data used in the April 1, 2022 actuari-
    al valuation. Distributions and other statistics can be found in the
    2022 Report of the Actuary and the 2022 Annual Comprehensive Financial
    Report.
       The actuarial assumptions and methods used are described in the 2020,
    2021, and 2022 Annual Report to the Comptroller on Actuarial Assump-
    tions, and the Codes, Rules and Regulations of the State of New York:
    Audit and Control.

S. 4005--C                          27                          A. 3005--C

    The Market Assets and GASB Disclosures are found in the March 31, 2022
New York State and Local Retirement System Financial Statements and
Supplementary Information.
    I am a member of the American Academy of Actuaries and meet the Quali-
fication Standards to render the actuarial opinion contained herein.
    This fiscal note does not constitute a legal opinion on the viability
of the proposed change nor is it intended to serve as a substitute for
the professional judgment of an attorney.
    This estimate, dated January 26, 2023, and intended for use only
during the 2023 Legislative Session, is Fiscal Note No. 2023-57,
prepared by the Actuary for the New York State and Local Retirement
System.

1                                  PART X

2                            Intentionally Omitted

3                                  PART Y

4     Section 1. The opening paragraph and paragraph 1 of subdivision b and
5  subdivision e of section 208-f of the general municipal law, paragraph 1
6  of subdivision b and subdivision e as added by chapter 472 of the laws
7  of 1978 and the opening paragraph of subdivision b as amended by chapter
8  782 of the laws of 2022, are amended and a new subdivision k is added to
9  read as follows:
10  The special accidental death benefit shall be paid by the **county,**
11  city, town or village which employed the deceased member at the time of
12  death, and shall consist of a pension which is equal to the salary of
13  the deceased member, reduced by the sum of each of the following bene-
14  fits received by the widow or widower or the deceased member's children
15  under the age of eighteen, if the widow or widower has died, or to the
16  deceased member's parents if the member has no widow, widower, children
17  under the age of eighteen, or a student under the age of twenty-three,
18  on account of the death of the deceased member:
19     1. Any death benefit and any supplementation thereto paid by the said
20  **county,** city, town or village in the form of a pension, and
21     e. There shall be appropriated to the [~~local assistance fund in the~~]
22  general fund [~~to the department of audit and control~~] an amount equal to
23  the special accidental death benefits paid pursuant to subdivisions b
24  and c of this section during each preceding state fiscal year, as certi-
25  fied to the comptroller by the appropriate municipal official, for the
26  purposes of reimbursing such special accidental death benefits.
27     The monies appropriated [~~to the department of audit and control~~] and
28  made available pursuant to this subdivision shall be paid under rules
29  and regulations adopted by the comptroller and subject to the approval
30  of the director of the budget upon the audit and warrant of the comp-
31  troller on vouchers certified or approved as provided by law.
32     **k. In the case of a deceased county member who died prior to the**
33  **effective date of this subdivision, the payment of the benefit to the**
34  **deceased member's beneficiaries pursuant to subdivision f of this**
35  **section, shall commence on the effective date of this subdivision,**
36  **provided, however that the benefit amount shall be deemed to have been**
37  **subject to annual increases pursuant to subdivision b of this section**
38  **and escalation pursuant to subdivision c of this section, from the date**
39  **of such member's death.**

S. 4005--C                              28                         A. 3005--C

1  § 2. This act shall take effect immediately, and shall be deemed to
2  have been in full force and effect on and after April 1, 2023.

3                                  PART Z

4    Section 1. Paragraph (a) of subdivision 4 of section 94 of the execu-
5  tive law, as added by section 2 of part QQ of chapter 56 of the laws of
6  2022, is amended to read as follows:
7    (a) The first class of members of the commission shall serve stag-
8  gered terms to ensure continuity. For the first class of the commis-
9  sion, [~~five members shall serve a term of four years, three members~~
10 ~~shall serve a term of two years, and one member shall serve a term of~~
11 ~~one year. All subsequent members shall serve a term of four years~~] **the**
12 **governor's first appointee shall serve an initial term of four years,**
13 **their second appointee shall serve an initial term of two years, and**
14 **their third appointee shall serve an initial term of one year; the**
15 **attorney general's appointee shall serve an initial term of four years;**
16 **the comptroller's appointee shall serve an initial term of four years;**
17 **the temporary president of the senate's first appointee shall serve an**
18 **initial term of four years and their second appointee shall serve a term**
19 **of two years; the minority leader of the senate's appointee shall serve**
20 **an initial term of four years; the speaker of the assembly's first**
21 **appointee shall serve initial terms of four years and their second**
22 **appointee shall serve a term of two years; and the minority leader of**
23 **the assembly's appointee shall serve a term of four years. All subse-**
24 **quent members shall serve a term of four years**. No member shall be
25 selected to the commission for more than two full consecutive terms,
26 except that a member who has held the position by filling a vacancy
27 can only be selected to the commission for an additional two full
28 consecutive terms.
29   § 2. This act shall take effect immediately.

30                                 PART AA

31   Section 1. Subparagraph (A) of paragraph 7 of subdivision (ee) of
32 section 1115 of the tax law, as amended by section 1 of item A of
33 subpart H of part XXX of chapter 58 of the laws of 2020, is amended to
34 read as follows:
35   (A) "Tenant" means a person who, as lessee, enters into a space lease
36 with a landlord for a term of ten years or more commencing on or after
37 September first, two thousand five, but not later than, in the case of a
38 space lease with respect to leased premises located in eligible areas as
39 defined in clause (i) of subparagraph (D) of this paragraph, September
40 first, two thousand [~~twenty-three~~] **twenty-seven** and, in the case of a
41 space lease with respect to leased premises located in eligible areas as
42 defined in clause (ii) of subparagraph (D) of this paragraph not later
43 than September first, two thousand [~~twenty-five~~] **twenty-nine**, of prem-
44 ises for use as commercial office space in buildings located or to be
45 located in the eligible areas. A person who currently occupies premises
46 for use as commercial office space under an existing lease in a building
47 in the eligible areas shall not be eligible for exemption under this
48 subdivision unless such existing lease, in the case of a space lease
49 with respect to leased premises located in eligible areas as defined in
50 clause (i) of subparagraph (D) of this paragraph expires according to
51 its terms before September first, two thousand [~~twenty-three~~] **twenty-**
52 **seven** or such existing lease, in the case of a space lease with respect

1  to  leased  premises located in eligible areas as defined in clause (ii)
2  of subparagraph (D) of this paragraph and such person  enters  into  a
3  space  lease,  for  a  term of ten years or more commencing on or after
4  September  first,  two  thousand  five, of premises for use as commercial
5  office space in a building located or to  be  located  in  the  eligible
6  areas,  provided  that  such space lease with respect to leased premises
7  located in eligible areas as defined in clause (i) of subparagraph  (D)
8  of  this paragraph commences no later than September first, two thousand
9  [~~twenty-three~~] **twenty-seven**, and provided that  such  space  lease  with
10 respect  to  leased  premises  located  in eligible areas as defined in
11 clause (ii) of subparagraph (D) of this  paragraph  commences  no  later
12 than  September first, two thousand [~~twenty-five~~] **twenty-nine** and
13 provided, further, that such space lease shall expire  no  earlier  than
14 ten years after the expiration of the original lease.
15    § 2. Section 2 of part C of chapter 2 of the laws of 2005 amending the
16 tax  law  relating to exemptions from sales and use taxes, as amended by
17 section 2 of item A of subpart H of part XXX of chapter 58 of  the  laws
18 of 2020, is amended to read as follows:
19    § 2. This act shall take effect September 1, 2005 and shall expire and
20 be  deemed repealed on December 1, [~~2026~~] **2030**, and shall apply to sales
21 made, uses occurring and services rendered on or  after  such  effective
22 date,  in  accordance  with  the  applicable  transitional provisions of
23 sections 1106 and 1217 of the tax law; except that clause (i) of subpar-
24 agraph (D) of paragraph seven of subdivision (ee) of section 1115 of the
25 tax law, as added by section one of this act, shall expire and be deemed
26 repealed December 1, [~~2024~~] **2028**.
27    § 3. Paragraph 1 of subdivision (b) of section  25-s  of  the  general
28 city  law, as amended by section 3 of item A of subpart H of part XXX of
29 chapter 58 of the laws of 2020, is amended to read as follows:
30    (1) non-residential premises that are  wholly  contained  in  property
31 that  is eligible to obtain benefits under title two-D or two-F of arti-
32 cle four of the real property tax law, or would be eligible to  receive
33 benefits  under  such  article  except that such property is exempt from
34 real property taxation and the requirements of paragraph (b) of subdivi-
35 sion seven of section four hundred eighty-nine-dddd of such title two-D,
36 or the requirements of subparagraph (ii) of paragraph (b) of subdivision
37 five of section four hundred eighty-nine-cccccc of such title  two-F,
38 whichever is applicable, have not been satisfied, provided that applica-
39 tion for such benefits was made after May third, nineteen hundred eight-
40 y-five  and  prior  to  July  first, two thousand [~~twenty-three~~]
41 **twenty-seven**, that construction or renovation of such premises  was
42 described in such application, that such premises have been substantial-
43 ly  improved  by  such construction or renovation so described, that the
44 minimum required expenditure as defined in such title  two-D  or  two-F,
45 whichever  is  applicable, has been made, and that such real property is
46 located in an eligible area; or
47    § 4. Paragraph 3 of subdivision (b) of section  25-s  of  the  general
48 city  law, as amended by section 4 of item A of subpart H of part XXX of
49 chapter 58 of the laws of 2020, is amended to read as follows:
50    (3) non-residential premises that are wholly contained in real proper-
51 ty that has obtained approval after October thirty-first,  two  thousand
52 and  prior  to  July first, two thousand [~~twenty-three~~] **twenty-seven** for
53 financing by an industrial development agency  established  pursuant  to
54 article  eighteen-A  of  the  general municipal law, provided that such
55 financing has been used in whole or in  part  to  substantially  improve
56 such  premises  (by  construction  or renovation), and that expenditures

1  have been made for improvements to such real property in excess  of  ten
2  per  centum  of  the  value  at which such real property was assessed for tax
3  purposes  for  the  tax  year  in  which  such  improvements commenced, that
4  such expenditures have been made within thirty-six months after the
5  earlier of (i) the issuance by such agency of bonds for such  financing,
6  or  (ii)  the  conveyance  of  title  to such property to such agency, and
7  that such real property is located in an eligible area; or
8      § 5. Paragraph 5 of subdivision (b) of section  25-s  of  the  general
9  city  law,  as amended by section 5 of item A of subpart H of part XXX of
10  chapter 58 of the laws of 2020, is amended to read as follows:
11     (5) non-residential premises that are wholly contained in real proper-
12  ty owned by such city or the New York  state  urban  development  corpo-
13  ration,  or  a  subsidiary  thereof,  a  lease for which was approved in
14  accordance with the applicable provisions of the charter of such city or
15  by the board of directors of such corporation,  and  such  approval  was
16  obtained  after  October  thirty-first,  two  thousand and prior to July
17  first, two thousand [~~twenty-three~~] <u>twenty-seven</u>, provided, however, that
18  such premises were constructed or renovated subsequent to such approval,
19  that expenditures have been made subsequent  to  such  approval  for
20  improvements  to  such  real property (by construction or renovation) in
21  excess of ten per centum of the value at which such  real  property  was
22  assessed  for  tax  purposes for the tax year in which such improvements
23  commenced, that such  expenditures  have  been  made  within  thirty-six
24  months  after  the  effective date of such lease, and that such real prop-
25  erty is located in an eligible area; or
26     § 6. Paragraph 2 of subdivision (c) of  section  25-t  of  the  general
27  city  law,  as amended by section 6 of item A of subpart H of part XXX of
28  chapter 58 of the laws of 2020, is amended to read as follows:
29     (2) No eligible energy user, qualified eligible energy  user,  on-site
30  cogenerator,  or  clean  on-site cogenerator shall receive a rebate pursu-
31  ant to this article until it has  obtained  a  certification  from  the
32  appropriate  city agency in accordance with a local law enacted pursuant
33  to this section. No such certification for a qualified eligible  energy
34  user  shall  be issued on or after November first, two thousand. No such
35  certification of any other eligible energy user, on-site cogenerator, or
36  clean on-site cogenerator shall be issued on or after  July  first,  two
37  thousand [~~twenty-three~~] <u>twenty-seven</u>.
38     § 7.  Paragraph  1 of subdivision (a) of section 25-aa of the general
39  city law, as amended by section 7 of item A of subpart H of part XXX  of
40  chapter 58 of the laws of 2020, is amended to read as follows:
41     (1) is eligible to obtain benefits under title two-D or two-F of arti-
42  cle  four  of  the  real property tax law, or would be eligible to receive
43  benefits under such title except that such property is exempt from  real
44  property  taxation  and  the requirements of paragraph (b) of subdivision
45  seven of section four hundred eighty-nine-dddd of such title  two-D,  or
46  the  requirements  of  subparagraph (ii) of paragraph (b) of subdivision
47  five of section four hundred eighty-nine-cccccc of  such  title  two-F,
48  whichever  is  applicable,  of  the  real property tax law have not been
49  satisfied, provided that application for such benefits  was  made  after
50  the  thirtieth  day  of June, nineteen hundred ninety-five and before the
51  first day of July, two thousand [~~twenty-three~~] <u>twenty-seven</u>,  that
52  construction  or  renovation of such building or structure was described
53  in such application, that such building or structure has  been  substan-
54  tially  improved  by such construction or renovation, and (i) that the
55  minimum required expenditure as defined in such title has been made,  or
56  (ii)  where  there  is  no  applicable minimum required expenditure, the

1  building was constructed within such period or periods of time estab-
2  lished by title two-D or two-F, whichever is applicable, of article four
3  of the real property tax law for construction of a new building or
4  structure; or
5      § 8. Paragraphs 2 and 3 of subdivision (a) of section 25-aa of the
6  general city law, as amended by section 8 of item A of subpart H of part
7  XXX of chapter 58 of the laws of 2020, are amended to read as follows:
8      (2) has obtained approval after the thirtieth day of June, nineteen
9  hundred ninety-five and before the first day of July, two thousand
10 [**twenty-three**] **twenty-seven**, for financing by an industrial development
11 agency established pursuant to article eighteen-A of the general munici-
12 pal law, provided that such financing has been used in whole or in part
13 to substantially improve such building or structure by construction or
14 renovation, that expenditures have been made for improvements to such
15 real property in excess of twenty per centum of the value at which such
16 real property was assessed for tax purposes for the tax year in which
17 such improvements commenced, and that such expenditures have been made
18 within thirty-six months after the earlier of (i) the issuance by such
19 agency of bonds for such financing, or (ii) the conveyance of title to
20 such building or structure to such agency; or
21     (3) is owned by the city of New York or the New York state urban
22 development corporation, or a subsidiary corporation thereof, a lease
23 for which was approved in accordance with the applicable provisions of
24 the charter of such city or by the board of directors of such corpo-
25 ration, as the case may be, and such approval was obtained after the
26 thirtieth day of June, nineteen hundred ninety-five and before the first
27 day of July, two thousand [**twenty-three**] **twenty-seven**, provided that
28 expenditures have been made for improvements to such real property in
29 excess of twenty per centum of the value at which such real property was
30 assessed for tax purposes for the tax year in which such improvements
31 commenced, and that such expenditures have been made within thirty-six
32 months after the effective date of such lease; or
33     § 9. Subdivision (f) of section 25-bb of the general city law, as
34 amended by section 9 of item A of subpart H of part XXX of chapter 58 of
35 the laws of 2020, is amended to read as follows:
36     (f) Application and certification. An owner or lessee of a building or
37 structure located in an eligible revitalization area, or an agent of
38 such owner or lessee, may apply to such department of small business
39 services for certification that such building or structure is an eligi-
40 ble building or targeted eligible building meeting the criteria of
41 subdivision (a) or (q) of section twenty-five-aa of this article.
42 Application for such certification must be filed after the thirtieth day
43 of June, nineteen hundred ninety-five and before a building permit is
44 issued for the construction or renovation required by such subdivisions
45 and before the first day of July, two thousand [**twenty-three**] **twenty-**
46 **seven**, provided that no certification for a targeted eligible building
47 shall be issued after October thirty-first, two thousand. Such applica-
48 tion shall identify expenditures to be made that will affect eligibility
49 under such subdivision (a) or (q). Upon completion of such expenditures,
50 an applicant shall supplement such application to provide information
51 (i) establishing that the criteria of such subdivision (a) or (q) have
52 been met; (ii) establishing a basis for determining the amount of
53 special rebates, including a basis for an allocation of the special
54 rebate among eligible revitalization area energy users purchasing or
55 otherwise receiving energy services from an eligible redistributor of
56 energy or a qualified eligible redistributor of energy; and (iii)

1  supporting an allocation of charges for energy services between eligible
2  charges and other charges. Such department shall certify a building or
3  structure as an eligible building or targeted eligible building after
4  receipt and review of such information and upon a determination that
5  such information establishes that the building or structure qualifies as
6  an eligible building or targeted eligible building. Such department
7  shall mail such certification or notice thereof to the applicant upon
8  issuance. Such certification shall remain in effect provided the eligi-
9  ble redistributor of energy or qualified eligible redistributor of ener-
10 gy reports any changes that materially affect the amount of the special
11 rebates to which it is entitled or the amount of reduction required by
12 subdivision (c) of this section in an energy services bill of an eligi-
13 ble revitalization area energy user and otherwise complies with the
14 requirements of this article. Such department shall notify the private
15 utility or public utility service required to make a special rebate to
16 such redistributor of the amount of such special rebate established at
17 the time of certification and any changes in such amount and any suspen-
18 sion or termination by such department of certification under this
19 subdivision. Such department may require some or all of the information
20 required as part of an application or other report be provided by a
21 licensed engineer.
22 § 10. Paragraph 1 of subdivision (i) of section 22-601 of the adminis-
23 trative code of the city of New York, as amended by section 10 of item A
24 of subpart H of part XXX of chapter 58 of the laws of 2020, is amended
25 to read as follows:
26 (1) Non-residential premises that are wholly contained in property
27 that is eligible to obtain benefits under part four or part five of
28 subchapter two of chapter two of title eleven of this code, or would be
29 eligible to receive benefits under such subchapter except that such proper-
30 ty is exempt from real property taxation and the requirements of para-
31 graph two of subdivision g of section 11-259 of this code, or the
32 requirements of subparagraph (b) of paragraph two of subdivision e of
33 section 11-270 of this code, whichever is applicable, have not been
34 satisfied, provided that application for such benefits was made after
35 May third, nineteen hundred eighty-five and prior to July first, two
36 thousand [twenty-three] twenty-seven, that construction or renovation of
37 such premises was described in such application, that such premises have
38 been substantially improved by such construction or renovation so
39 described, that the minimum required expenditure as defined in such part
40 four or part five, whichever is applicable, has been made, and that such
41 real property is located in an eligible area; or
42 § 11. Paragraph 3 of subdivision (i) of section 22-601 of the adminis-
43 trative code of the city of New York, as amended by section 11 of item A
44 of subpart H of part XXX of chapter 58 of the laws of 2020, is amended
45 to read as follows:
46 (3) non-residential premises that are wholly contained in real proper-
47 ty that has obtained approval after October thirty-first, two thousand
48 and prior to July first, two thousand [twenty-three] twenty-seven for
49 financing by an industrial development agency established pursuant to
50 article eighteen-A of the general municipal law, provided that such
51 financing has been used in whole or in part to substantially improve
52 such premises (by construction or renovation), and that expenditures
53 have been made for improvements to such real property in excess of ten
54 per centum of the value at which such real property was assessed for tax
55 purposes for the tax year in which such improvements commenced, that
56 such expenditures have been made within thirty-six months after the

1  earlier of (i) the issuance by such agency of bonds for such  financing,
2  or  (ii)  the  conveyance  of title to such property to such agency, and
3  that such real property is located in an eligible area; or
4      § 12. Paragraph 5 of subdivision (i) of section 22-601 of the adminis-
5  trative code of the city of New York, as amended by section 12 of item A
6  of  subpart  H of part XXX of chapter 58 of the laws of 2020, is amended
7  to read as follows:
8      (5) non-residential premises that are wholly contained in real proper-
9  ty owned by such city or the New York  state  urban  development  corpo-
10 ration,  or  a  subsidiary thereof,  a  lease for which was approved in
11 accordance with the applicable provisions of the charter of such city or
12 by the board of directors of such corporation,  and  such  approval  was
13 obtained  after  October  thirty-first,  two  thousand and prior to July
14 first, two thousand [~~twenty-three~~] **twenty-seven**, provided, however, that
15 such premises were constructed or renovated subsequent to such approval,
16 that expenditures  have  been  made  subsequent  to  such  approval  for
17 improvements  to  such  real property (by construction or renovation) in
18 excess of ten per centum of the value at which such  real  property  was
19 assessed  for  tax  purposes for the tax year in which such improvements
20 commenced, that  such  expenditures  have  been  made  within  thirty-six
21 months  after the effective date of such lease, and that such real prop-
22 erty is located in an eligible area; or
23     § 13. Paragraph 1 of subdivision (c) of section 22-602 of the adminis-
24 trative code of the city of New York, as amended by section 13 of item A
25 of subpart H of part XXX of chapter 58 of the laws of 2020,  is  amended
26 to read as follows:
27     (1)  No  eligible energy user, qualified eligible energy user, on-site
28 cogenerator, clean on-site cogenerator or special eligible  energy  user
29 shall   receive  a  rebate pursuant to this chapter until it has obtained a
30 certification  as  an  eligible  energy  user,  qualified  eligible  energy
31 user, on-site cogenerator, clean on-site cogenerator or special eligible
32 energy  user,  respectively,  from the commissioner of small business
33 services. No such certification for a  qualified  eligible  energy  user
34 shall  be  issued  on  or  after July first, two thousand three. No such
35 certification of any other eligible energy user, on-site cogenerator  or
36 clean  on-site  cogenerator  shall be issued on or after July first, two
37 thousand [~~twenty-three~~] **twenty-seven**.  The commissioner  of  small  busi-
38 ness  services,  after  notice  and  hearing, may revoke a certification
39 issued pursuant to this subdivision where it is found  that  eligibility
40 criteria  have  not  been  met  or  that  compliance with conditions for
41 continued eligibility has not been maintained. The  corporation  counsel
42 may  maintain  a  civil action to recover an amount equal to any benefits
43 improperly obtained.
44     § 14. Subparagraph (b-2) of paragraph 2 of subdivision  i  of  section
45 11-704 of the administrative code of the city of New York, as amended by
46 section  14 of item A of subpart H of part XXX of chapter 58 of the laws
47 of 2020, is amended to read as follows:
48     (b-2) The amount of the special reduction allowed by this  subdivision
49 with  respect  to  a lease other than a sublease commencing between July
50 first, two thousand five and June thirtieth, two thousand [~~twenty-three~~]
51 **twenty-seven** with an initial or renewal lease  term  of  at  least  five
52 years shall be determined as follows:
53     (i)  For  the  base year the amount of such special reduction shall be
54 equal to the base rent for the base year.
55     (ii) For the first, second,  third  and  fourth  twelve-month  periods
56 following  the  base  year the amount of such special reduction shall be

```
 1  equal to the lesser of (A) the base rent for each such twelve-month
 2  period or (B) the base rent for the base year.
 3     § 15. Subdivision 9 of section 499-aa of the real property tax law, as
 4  amended by section 15 of item A of subpart H of part XXX of chapter 58
 5  of the laws of 2020, is amended to read as follows:
 6     9. "Eligibility period." The period commencing April first, nineteen
 7  hundred ninety-five and terminating March thirty-first, two thousand
 8  one, provided, however, that with respect to eligible premises defined
 9  in subparagraph (i) of paragraph (b) of subdivision ten of this section,
10  the period commencing July first, two thousand and terminating June
11  thirtieth, two thousand [twenty-four] twenty-eight, and provided,
12  further, however, that with respect to eligible premises defined in
13  subparagraph (ii) of paragraph (b) or paragraph (c) of subdivision ten
14  of this section, the period commencing July first, two thousand five and
15  terminating June thirtieth, two thousand [twenty-four] twenty-eight.
16     § 16. Subparagraph (iii) of paragraph (a) of subdivision 3 of section
17  499-cc of the real property tax law, as amended by section 16 of item A
18  of subpart H of part XXX of chapter 58 of the laws of 2020, is amended
19  to read as follows:
20     (iii) With respect to the eligible premises defined in subparagraph
21  (ii) of paragraph (b) or paragraph (c) of subdivision ten of section
22  four hundred ninety-nine-aa of this title and for purposes of determin-
23  ing whether the amount of expenditures required by subdivision one of
24  this section have been satisfied, expenditures on improvements to the
25  common areas of an eligible building shall be included only if work on
26  such improvements commenced and the expenditures are made on or after
27  July first, two thousand five and on or before December thirty-first,
28  two thousand [twenty-four] twenty-eight; provided, however, that expend-
29  itures on improvements to the common areas of an eligible building made
30  prior to three years before the lease commencement date shall not be
31  included.
32     § 17. Subdivisions 5 and 9 of section 499-a of the real property tax
33  law, as amended by section 17 of item A of subpart H of part XXX of
34  chapter 58 of the laws of 2020, are amended to read as follows:
35     5. "Benefit period." The period commencing with the first day of the
36  month immediately following the rent commencement date and terminating
37  no later than sixty months thereafter, provided, however, that with
38  respect to a lease commencing on or after April first, nineteen hundred
39  ninety-seven with an initial lease term of less than five years, but not
40  less than three years, the period commencing with the first day of the
41  month immediately following the rent commencement date and terminating
42  no later than thirty-six months thereafter. Notwithstanding the forego-
43  ing sentence, a benefit period shall expire no later than March thirty-
44  first, two thousand [thirty] thirty-four.
45     9. "Eligibility period." The period commencing April first, nineteen
46  hundred ninety-five and terminating March thirty-first, two thousand
47  [twenty-four] twenty-eight.
48     § 18. Paragraph (a) of subdivision 3 of section 499-c of the real
49  property tax law, as amended by section 18 of item A of subpart H of
50  part XXX of chapter 58 of the laws of 2020, is amended to read as
51  follows:
52     (a) For purposes of determining whether the amount of expenditures
53  required by subdivision one of this section have been satisfied, expend-
54  itures on improvements to the common areas of an eligible building shall
55  be included only if work on such improvements commenced and the expendi-
56  tures are made on or after April first, nineteen hundred ninety-five and
```

1  on or before September thirtieth, two thousand [twenty-four] twenty-
2  eight; provided, however, that expenditures on improvements to the
3  common areas of an eligible building made prior to three years before
4  the lease commencement date shall not be included.
5    § 19. Subdivision 8 of section 499-d of the real property tax law, as
6  amended by section 19 of item A of subpart H of part XXX of chapter 58
7  of the laws of 2020, is amended to read as follows:
8    8. Leases commencing on or after April first, nineteen hundred nine-
9  ty-seven shall be subject to the provisions of this title as amended by
10  chapter six hundred twenty-nine of the laws of nineteen hundred ninety-
11  seven, chapter one hundred eighteen of the laws of two thousand one,
12  chapter four hundred forty of the laws of two thousand three, chapter
13  sixty of the laws of two thousand seven, chapter twenty-two of the laws
14  of two thousand ten, chapter fifty-nine of the laws of two thousand
15  fourteen, chapter twenty of the laws of two thousand fifteen, chapter
16  sixty-one of the laws of two thousand seventeen [and the], chapter
17  fifty-eight of the laws of two thousand twenty, and the chapter of the
18  laws of two thousand twenty-three that amended this phrase. Notwith-
19  standing any other provision of law to the contrary, with respect to
20  leases commencing on or after April first, nineteen hundred ninety-sev-
21  en, an application for a certificate of abatement shall be considered
22  timely filed if filed within one hundred eighty days following the lease
23  commencement date or within sixty days following the date chapter six
24  hundred twenty-nine of the laws of nineteen hundred ninety-seven became
25  a law, whichever is later.
26    § 20. Subparagraph (a) of paragraph 2 of subdivision i of section
27  11-704 of the administrative code of the city of New York, as amended by
28  section 20 of item A of subpart H of part XXX of chapter 58 of the laws
29  of 2020, is amended to read as follows:
30    (a) An eligible tenant of eligible taxable premises shall be allowed a
31  special reduction in determining the taxable base rent for such eligible
32  taxable premises. Such special reduction shall be allowed with respect
33  to the rent for such eligible taxable premises for a period not exceed-
34  ing sixty months or, with respect to a lease commencing on or after
35  April first, nineteen hundred ninety-seven with an initial lease term of
36  less than five years, but not less than three years, for a period not
37  exceeding thirty-six months, commencing on the rent commencement date
38  applicable to such eligible taxable premises, provided, however, that in
39  no event shall any special reduction be allowed for any period beginning
40  after March thirty-first, two thousand [thirty] thirty-four. For
41  purposes of applying such special reduction, the base rent for the base
42  year shall, where necessary to determine the amount of the special
43  reduction allowable with respect to any number of months falling within
44  a tax period, be prorated by dividing the base rent for the base year by
45  twelve and multiplying the result by such number of months.
46    § 21. This act shall take effect immediately; provided, however, that
47  if this act shall become a law after June 30, 2023, this act shall be
48  deemed to have been in full force and effect on and after June 30, 2023;
49  provided further, however, that the amendments to subparagraph (A) of
50  paragraph 7 of subdivision (ee) of section 1115 of the tax law made by
51  section one of this act shall not affect the repeal of such subdivision
52  and shall be repealed therewith.
53                                    PART BB

1    Section 1. Subdivision 12 of section 239-bb of the general municipal
2  law is REPEALED.
3    § 2. This act shall take effect immediately.

4                                  PART CC

5                             Intentionally Omitted

6                                  PART DD

7    Section 1. Section 13 of chapter 141 of the laws of 1994, amending the
8  legislative  law and the state finance law relating to the operation and
9  administration of the legislature, as amended by section 1 of part II of
10 chapter 55 of the laws of 2022, is amended to read as follows:
11   § 13. This act shall take effect immediately and shall  be  deemed  to
12 have  been  in full force and effect as of April 1, 1994, provided that,
13 the provisions of section 5-a of  the  legislative  law  as  amended  by
14 sections two and two-a of this act shall take effect on January 1, 1995,
15 and provided further that, the provisions of article 5-A of the legisla-
16 tive  law  as  added  by section eight of this act shall expire June 30,
17 [2023] 2024 when upon such date the provisions of such article shall  be
18 deemed  repealed;  and  provided further that section twelve of this act
19 shall be deemed to have been in full force and effect on and after April
20 10, 1994.
21   § 2. This act shall not supersede the findings and determinations made
22 by the compensation committee as authorized  pursuant  to  part  HHH  of
23 chapter  59  of the laws of 2018 unless a court of competent jurisdiction
24 determines that such findings and determinations are invalid  or  other-
25 wise not applicable or in force.
26   § 3.  This  act  shall take effect immediately, provided, however, if
27 this act shall take effect on or after June 30, 2023, this act shall  be
28 deemed to have been in full force and effect on and after June 30, 2023.

29                                  PART EE

30   Section 1. Paragraph (b) of subdivision 5 of section 50 of the civil
31 service law, as amended by section 35 of part PP of chapter  56  of  the
32 laws of 2022, is amended to read as follows:
33 (b)  Notwithstanding  the provisions of paragraph (a) of this subdivi-
34 sion, the state civil service department, subject to the approval of the
35 director of the budget, a municipal commission, subject to the  approval
36 of  the  governing  board or body of the city or county, as the case may
37 be, or a regional commission or personnel officer, pursuant to  govern-
38 mental  agreement,  may  elect  to waive application fees, or to abolish
39 fees for specific classes of  positions  or  types  of  examinations  or
40 candidates,  or  to  establish  a  uniform schedule of reasonable fees
41 different from those prescribed in paragraph (a)  of  this  subdivision,
42 specifying  in  such schedule the classes of positions or types of exam-
43 inations or candidates to which such fees shall apply; provided,  howev-
44 er,  that  fees  shall be waived for candidates who certify to the state
45 civil service department, a municipal commission or a  regional  commis-
46 sion  that they are unemployed and primarily responsible for the support
47 of a household, or are receiving public  assistance.  Provided  further,
48 the state civil service department shall waive the state application fee
49 for  examinations  for  original  appointment for all veterans. Provided
50 further, the state civil  service  department  shall,  and  a  municipal

1 commission may, subject to the approval of the governing board or body
2 of the city or county, as the case may be, or a regional commission or
3 personnel officer, pursuant to governmental agreement, waive application
4 fees for all examinations held between July first, two thousand twenty-
5 three and December thirty-first, two thousand twenty-five. Notwithstand-
6 ing any other provision of law, for purposes of this section, the term
7 "veteran" shall mean a person who has served in the armed forces of the
8 United States or the reserves thereof, or in the army national guard,
9 air national guard, New York guard, or the New York naval militia, and
10 who (1) has been honorably discharged or released from such service
11 under honorable conditions, or (2) has a qualifying condition, as
12 defined in section one of the veterans' services law, and has received a
13 discharge other than bad conduct or dishonorable from such service, or
14 (3) is a discharged LGBT veteran, as defined in section one of the
15 veterans' services law, and has received a discharge other than bad
16 conduct or dishonorable from such service. The term "armed forces" shall
17 mean the army, navy, air force, marine corps, and coast guard.
18     § 2. This act shall take effect immediately and shall expire and be
19 deemed repealed on December 31, 2025; provided that this act shall be
20 deemed to have been in full force and effect on and after April 1, 2023.

21                               PART FF

22     Section 1. Subdivision 2 of section 99-l of the general municipal law,
23 as amended by chapter 388 of the laws of 2012, is amended to read as
24 follows:
25     2. The [counties] county of Nassau [and Suffolk] shall be entitled to
26 receive the amounts set forth in subdivision one of this section for the
27 services of [their respective] Nassau county traffic and parking
28 violations agency.
29     § 2. Section 99-l of the general municipal law is amended by adding a
30 new subdivision 3 to read as follows:
31     3. The county of Suffolk shall be entitled to receive the amounts set
32 forth in subdivision one of this section for the services of the Suffolk
33 county traffic and parking violations agency.
34     § 3. This act shall take effect immediately; provided, however, that
35 the amendments to subdivision 2 of section 99-l of the general municipal
36 law made by section one of this act shall take effect on the same date
37 as the reversion of subdivision 2 of section 99-l of the general munici-
38 pal law as provided in section 6 of chapter 179 of the laws of 2000, as
39 amended.

40                               PART GG

41     Section 1. Section 89-e of the retirement and social security law is
42 amended by adding a new subdivision k to read as follows:
43     k. Notwithstanding any provision of law to the contrary, where a
44 correction officer would have been entitled to retire pursuant to this
45 section at the time of his or her death and where his or her death
46 occurs on or after the effective date of the chapter of the laws of two
47 thousand twenty-three that added this subdivision, the beneficiary or
48 beneficiaries may elect to receive, in a lump sum, an amount payable
49 which shall be equal to the pension reserve that would have been estab-
50 lished had the member retired on the date of his or her death, or the
51 value of the death benefit and the reserve-for-increased-take-home-pay,
52 if any, whichever is greater.

1    § 2. The retirement and social security law is amended by adding a new
2  section 606-c to read as follows:
3    § 606-c. Death benefits for correction officers employed by Westches-
4  ter county. a. As used in this section, the term "correction officer"
5  shall mean a person employed by the Westchester county correction
6  department with a title of correction officer, correction officer-ser-
7  geant, correction officer-captain, assistant warden, associate warden or
8  warden.
9    b. Notwithstanding any provision of law to the contrary, where a
10 correction officer would have been entitled to a service retirement
11 benefit at the time of his or her death and where his or her death
12 occurs on or after the effective date of the chapter of the laws of two
13 thousand twenty-three that added this section, the beneficiary or bene-
14 ficiaries may elect to receive, in a lump sum, an amount payable which
15 shall be equal to the pension reserve that would have been established
16 had the member retired on the date of his or her death, or the value of
17 the death benefit and the reserve-for-increased-take-home-pay, if any,
18 whichever is greater.
19    § 3. All past service costs associated with implementing the
20 provisions of this act shall be borne by the county of Westchester and
21 may be amortized over a period of ten years.
22    § 4. Notwithstanding any other provision of law to the contrary, none
23 of the provisions of this act shall be subject to the appropriation
24 requirement of section 25 of the retirement and social security law.
25    § 5. This act shall take effect immediately.
      FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
      This bill would modify the in-service death benefit for Westchester
   County correction officers in Tiers 2 through 6. The in-service death
   benefit will be the value of the pension reserve as if the member had
   retired on their date of death.
      If this bill is enacted during the 2023 legislative session, we antic-
   ipate that there will be an increase of approximately $110,000 in the
   annual contributions of Westchester County for the fiscal year ending
   March 31, 2024. In future years, this cost will vary as the billing
   rates and salary of the affected members change.
      In addition to the annual contributions discussed above, there will be
   an immediate past service cost of approximately $812,000 which will be
   borne by Westchester County as a one-time payment. This estimate assumes
   that payment will be made on February 1, 2024. If Westchester County
   elects to amortize this cost over a 10-year period, the cost for the
   first year including interest would be $104,000.
      These estimated costs are based on 821 affected members employed by
   Westchester County, with annual salary of approximately $103 million as
   of March 31, 2022.
      Summary of relevant resources:
      Membership data as of March 31, 2022 was used in measuring the impact
   of the proposed change, the same data used in the April 1, 2022 actuari-
   al valuation. Distributions and other statistics can be found in the
   2022 Report of the Actuary and the 2022 Annual Comprehensive Financial
   Report.
      The actuarial assumptions and methods used are described in the 2020,
   2021, and 2022 Annual Report to the Comptroller on Actuarial Assump-
   tions, and the Codes, Rules and Regulations of the State of New York:
   Audit and Control.

S. 4005--C                        39                        A. 3005--C

The Market Assets and GASB Disclosures are found in the March 31, 2022
New York State and Local Retirement System Financial Statements and
Supplementary Information.

This fiscal note does not constitute a legal opinion on the viability
of the proposed change nor is it intended to serve as a substitute for
the professional judgment of an attorney.

This estimate, dated January 11, 2023, and intended for use only
during the 2023 Legislative Session, is Fiscal Note No. 2023-20,
prepared by the Actuary for the New York State and Local Retirement
System.

 1                              PART HH

 2    Section 1. Paragraph 2 of subdivision c of section 513 of the  retire-
 3  ment  and  social  security  law, as added by chapter 890 of the laws of
 4  1976, is amended to read as follows:
 5    2. (i) A police/fire member shall be eligible  to  obtain  credit  for
 6  service  with  a public employer described in paragraph one only if such
 7  service, if rendered prior to July first, nineteen  hundred  seventy-six
 8  by  a police/fire member who was subject to article eleven of this chap-
 9  ter, would have been eligible for credit in the  police/fire  retirement
10  system or plan involved.
11    (ii)  Notwithstanding  any  other  provision of law to the contrary, a
12  member of the New York city fire department pension fund subject to this
13  article shall be eligible to obtain credit for any period  of  allowable
14  service  rendered  as an EMT member, as such term is defined in paragraph
15  one of subdivision a of section six hundred four-e of this  chapter,  as
16  added by chapter five hundred seventy-seven of the laws of two thousand,
17  which  immediately  precedes  service  in the uniformed force of the fire
18  department and such service shall be deemed  to  be  in  service  of  the
19  uniformed  force  of  the fire department for purposes of eligibility for
20  benefits and to determine the amount of benefits under the New York city
21  fire department pension fund, provided that such member pays  or  trans-
22  fers  into  the  New  York  city fire department pension fund all member
23  contributions set forth in section five hundred seventeen of this  arti-
24  cle plus interest, at a rate of five percent per annum. For a member who
25  transfers  such  contributions from the New York city employees' retire-
26  ment system to the New York city fire department pension fund or  for  a
27  member  who  withdraws such contributions from the New York city employ-
28  ees' retirement system, such member's membership in the  New  York  city
29  employees'  retirement  system  shall  cease upon such transfer or with-
30  drawal and such member shall retain no credited service in such system.
31    (iii) The provisions of this paragraph shall apply to  a  member  with
32  ten  or  more  years of credited service in the New York city employees'
33  retirement system, notwithstanding the provisions of section six hundred
34  thirteen of this chapter or any other provision of law to the contrary.
35    § 2. This act shall take effect immediately.
    FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
    SUMMARY OF BILL: This proposed legislation would amend  subdivision  c
  of section 513 of the Retirement and Social Security Law (RSSL) to allow
  New  York  City  Fire  Pension Fund (FIRE) members subject to Article 14
  (Tier 3, Tier 3 Modified, and Tier 3 Enhanced) to obtain service  credit
  for  service  rendered as an emergency medical technician (EMT) with the
  New York City Employee's Retirement System (NYCERS).
    The EMT service credit with NYCERS must immediately precede service in
  FIRE. If properly transferred or purchased, such service shall be deemed

as pensionable service for purposes of determining the eligibility for benefits and benefit amounts in FIRE.

Upon attaining eligible service credit with FIRE, the member would relinquish prior membership and applicable benefits with NYCERS.

Effective Date: Upon enactment.

IMPACT ON BENEFITS/PAYABILITY: Currently, the purchase or transfer of service rendered as a NYCERS EMT member does not provide an additional service retirement benefit for FIRE members subject to Article 14.

Under the proposed legislation, EMT service transferred or purchased would count for purposes of determining benefit amounts and eligibility in FIRE and would increase and/or accelerate the payability date of benefits.

MEMBER CONTRIBUTIONS: Member contributions as defined in Article 14, plus 5.0% annual interest, for EMT service purchased or transferred would apply.

Member contributions made as a NYCERS EMT member in excess of the amount required would, if not otherwise utilized for a separate vested benefit, be refunded with 5.0% annual interest.

FINANCIAL IMPACT - PRESENT VALUES: Based on the census data and the actuarial assumptions and methods described herein, the enactment of this proposed legislation would result in an increase in the present value of future employer contributions of approximately $19.3 million.

This net increase is a result of an increase in the Present Value of Future Benefits (PVFB) of approximately $16.7 million and a decrease in the present value of member contributions of approximately $2.6 million.

Under the Entry Age Normal cost method used to determine the employer contributions to FIRE, there would be an increase in the Unfunded Accrued Liability (UAL) of approximately $40.6 million offset by a decrease in the present value of future employer Normal Cost of approximately $21.3 million.

FINANCIAL IMPACT - ANNUAL EMPLOYER CONTRIBUTIONS: The enactment of this proposed legislation would result in an initial increase in annual employer contributions of approximately $3.9 million which is the result of a decrease in the Normal Cost offset by the UAL payment. The average annual employer cost per member included in this fiscal note is approximately $3,100.

New UAL attributable to benefit changes are generally amortized over the remaining working lifetime of those impacted by the benefit changes. The remaining working lifetime for this group is approximately 19 years and the increase in UAL was therefore amortized over a 19-year period (18 payments under the One-Year Lag Methodology) using level dollar payments.

CENSUS DATA: The estimates presented herein are based on the census data used in the June 30, 2022 actuarial valuation of FIRE to determine the Preliminary Fiscal Year 2024 employer contributions.

There are an estimated 1,261 active FIRE Tier 3 members as of June 30, 2022 who could potentially benefit from the proposed legislation by purchasing or transferring service earned as an EMT member. These active members had an average age of approximately 32.3 years, average service of approximately 5.3 years (before purchasing any additional service), and an average salary of approximately $98,500.

On average, the 1,261 active FIRE Tier 3 members would be able to purchase 3.0 years of service earned as an EMT member with an estimated purchase cost of $7,400 per former EMT member as of June 30, 2022.

ACTUARIAL ASSUMPTIONS AND METHODS: The estimates presented herein have been calculated based on the actuarial assumptions and methods to be

used for the Preliminary Fiscal Year 2024 employer contributions of
FIRE.

For the purposes of this Fiscal Note, it is assumed that the changes
would be reflected for the first time in the June 30, 2022 actuarial
valuation of FIRE used to determine employer contributions for Fiscal
Year 2024.

RISK AND UNCERTAINTY: The costs presented in this Fiscal Note depend
highly on the realization of the actuarial assumptions used, demograph-
ics of the impacted population and other factors such as investment,
contribution, and other risks. If actual experience deviates from actu-
arial assumptions, the actual costs could differ from those presented
herein.

Costs are also dependent on the actuarial methods used, and therefore
different actuarial methods could produce different results. Quantifying
these risks is beyond the scope of this Fiscal Note.

Not measured in this Fiscal Note are the following:

* The employer costs for service purchased by future FIRE Tier 3
members for service earned as an EMT member. However, as noted above,
the average annual employer cost per member included in this Fiscal Note
is approximately $3,100.

* The initial, additional administrative costs to implement the
proposed legislation.

* The impact of this proposed legislation on Other Postemployment
Benefit costs.

STATEMENT OF ACTUARIAL OPINION: I, Marek Tyszkiewicz, am the Chief
Actuary for, and independent of, the New York City Retirement Systems
and Pension Funds. I am an Associate of the Society of Actuaries and a
Member of the American Academy of Actuaries. I meet the Qualification
Standards of the American Academy of Actuaries to render the actuarial
opinion contained herein. To the best of my knowledge, the results
contained herein have been prepared in accordance with generally
accepted actuarial principles and procedures and with the Actuarial
Standards of Practice issued by the Actuarial Standards Board.

FISCAL NOTE IDENTIFICATION: This Fiscal Note 2023-01 dated February
10, 2023 was prepared by the Chief Actuary for the New York City Fire
Pension Fund. This estimate is intended for use only during the 2023
Legislative Session.

1                                  PART II

2     Section 1. Section 63-g of the retirement and social security law, as
3 added by chapter 714 of the laws of 2021, is amended to read as follows:
4     § 63-g. Disability benefits; certain disabilities. Notwithstanding any
5 provision of this chapter or of any general, special or local law to the
6 contrary, any member who is a **county fire marshal,** fire marshal, super-
7 vising fire marshal, division supervising fire marshal, assistant chief
8 fire marshal, chief fire marshal**, assistant fire marshal,** or fire
9 marshal trainee employed by Nassau county who contracts any condition of
10 impairment of health caused by diseases of the heart, resulting in disa-
11 bility or death to such **county fire marshal,** fire marshal, supervising
12 fire marshal, division supervising fire marshal, assistant chief fire
13 marshal, chief fire marshal**, assistant fire marshal,** or fire marshal
14 trainee, presently employed, and who shall have sustained such disabili-
15 ty while so employed, shall be presumptive evidence that such disability
16 was incurred in the performance and discharge of duty and the natural
17 and proximate result of an accident, unless the contrary be proved by

1   competent evidence; provided, however, that prior to entry into service,
2   such **county fire marshal,** fire marshal, supervising fire marshal, divi-
3   sion supervising fire marshal, assistant chief fire marshal, chief fire
4   marshal**, assistant fire marshal,** or fire marshal trainee successfully
5   passed a physical examination which failed to disclose evidence of any
6   disease or other impairment of the heart.
7       § 2. The retirement and social security law is amended by adding a new
8   section 63-i to read as follows:
9       **§ 63-i.  Death benefits for fire marshals employed by Nassau county.**
10   **a.  As used in this section, the term "fire marshal" shall mean a member**
11   **who is employed by Nassau county with a title of county fire marshal,**
12   **supervising fire marshal, fire marshal, assistant fire marshal, assist-**
13   **ant chief fire marshal, chief fire marshal, and division supervising**
14   **fire marshal.**
15       **b.  Notwithstanding any provision of law to the contrary, where a fire**
16   **marshal would have been entitled to a service retirement benefit at the**
17   **time of his or her death and where his or her death occurs on or after**
18   **the effective date of this section, the beneficiary or beneficiaries may**
19   **elect to receive, in a lump sum, an amount payable which shall be equal**
20   **to the pension reserve that would have been established had the member**
21   **retired on the date of his or her death, or the value of the death bene-**
22   **fit and the reserve-for-increased-take-home-pay, if any, whichever is**
23   **greater.**
24       § 3. Subdivisions a and j of section 89-w of the retirement and social
25   security law, as added by chapter 295 of the laws of 2007, are amended
26   to read as follows:
27       a. A member who serves as a county fire marshal, supervising fire
28   marshal, fire marshal, assistant fire marshal, assistant chief fire
29   marshal [**or**]**,** chief fire marshal **or division supervising fire marshal**
30   and is employed by the county of Nassau shall be eligible to retire
31   pursuant to the provisions of this section. Such eligibility shall be an
32   alternative to the eligibility provisions available under any other plan
33   of this article to which such member is subject. The county executive of
34   the county of Nassau shall certify to the comptroller, periodically at
35   such intervals of time as may be required of him or her and in such
36   fashion as may be prescribed, the identity of the eligible county fire
37   marshal, supervising fire marshals, fire marshals, assistant fire
38   marshals, assistant chief fire marshals [**and**]**,** chief fire marshals **and**
39   **division supervising fire marshals** in his or her employ.
40       j. Notwithstanding any provision of this section or of any other
41   provision of law to the contrary, county fire marshals, supervising fire
42   marshals, fire marshals, assistant fire marshals, assistant chief fire
43   marshals [**and**]**,** chief fire marshals **and division supervising fire**
44   **marshals** must serve five years within the Nassau county fire marshal
45   department after the effective date of this section before they are
46   eligible to retire under the provisions of the twenty-five year retire-
47   ment plan.
48       § 4. Subdivision a of section 445 of the retirement and social securi-
49   ty law, as amended by chapter 245 of the laws of 2021, is amended to
50   read as follows:
51       a. No member of a retirement system who is subject to the provisions
52   of this article shall retire without regard to age, exclusive of retire-
53   ment for disability, unless he or she is a police officer, an investi-
54   gator member of the New York city employees' retirement system, fire-
55   fighter, correction officer, a qualifying member as defined in section
56   eighty-nine-t, as added by chapter six hundred fifty-seven of the laws

1   of nineteen hundred ninety-eight, of this chapter, sanitation worker, a
2   special  officer  (including persons employed by the city of New York in
3   the title urban park ranger or  associate  urban  park  ranger),  school
4   safety  agent,  campus  peace officer or a taxi and limousine commission
5   inspector member of the New York city employees'  retirement  system  or
6   the  New  York  city  board of education retirement system, a dispatcher
7   member of the New York city employees'  retirement  system,  a  police
8   communications member of the New York city employees' retirement system,
9   an EMT member of the New York city employees' retirement system, a depu-
10  ty  sheriff  member of the New York city employees' retirement system, a
11  correction officer of the Westchester county correction  department  as
12  defined  in section eighty-nine-e of this chapter or employed in Suffolk
13  county as a peace officer, as defined in section eighty-nine-s, as added
14  by chapter five hundred eighty-eight of the  laws  of  nineteen  hundred
15  ninety-seven,  of  this  chapter, employed in Suffolk county as a
16  correction officer, as defined in section eighty-nine-f of this chapter,
17  or  employed  in Nassau county as a correction officer, uniformed
18  correction  division personnel, sheriff, undersheriff or deputy sheriff,
19  as defined in section eighty-nine-g of  this  chapter,  or  employed  in
20  Nassau  county  as an ambulance medical technician, an ambulance medical
21  technician/supervisor or a member who performs ambulance medical techni-
22  cian related services, or a police medic, police medic supervisor  or  a
23  member  who  performs police medic related services, as defined in section
24  eighty-nine-s,  as  amended by chapter five hundred seventy-eight of the
25  laws of nineteen hundred ninety-eight, of this chapter, or  employed  in
26  Nassau  county  as a peace officer, as defined in section eighty-nine-s,
27  as added by chapter five hundred ninety-five of  the  laws  of  nineteen
28  hundred  ninety-seven, of this chapter, or employed in Albany county as a
29  sheriff, undersheriff, deputy sheriff, correction officer or identifica-
30  tion  officer, as defined in section eighty-nine-h of this chapter or is
31  employed in St. Lawrence county as a sheriff, undersheriff, deputy sher-
32  iff or correction officer, as defined in section eighty-nine-i  of  this
33  chapter  or  is  employed  in Orleans county as a sheriff, undersheriff,
34  deputy  sheriff  or  correction  officer,  as  defined  in  section
35  eighty-nine-l  of  this  chapter or is employed in Jefferson county as a
36  sheriff, undersheriff, deputy sheriff or correction officer, as  defined
37  in  section  eighty-nine-j  of  this  chapter or is employed in Onondaga
38  county as a deputy sheriff-jail division competitively appointed or as a
39  correction officer, as defined in section eighty-nine-k of this  chapter
40  or  is  employed in a county which makes an election under subdivision j
41  of section eighty-nine-p of this chapter  as  a  sheriff,  undersheriff,
42  deputy  sheriff or correction officer as defined in such section eighty-
43  nine-p or is employed in Broome County as a sheriff, undersheriff, depu-
44  ty sheriff or correction officer, as defined in section eighty-nine-m of
45  this chapter or is a Monroe county  deputy  sheriff-court  security,  or
46  deputy  sheriff-jailor  as defined in section eighty-nine-n, as added by
47  chapter five hundred ninety-seven of the laws of nineteen hundred  nine-
48  ty-one,  of  this  chapter or is employed in Greene county as a sheriff,
49  undersheriff, deputy  sheriff  or  correction  officer,  as  defined  in
50  section  eighty-nine-o  of this chapter or is a traffic officer with the
51  town of Elmira as defined in section eighty-nine-q of this chapter or is
52  employed by Suffolk county as a  park  police  officer,  as  defined  in
53  section  eighty-nine-r of this chapter or is a peace officer employed by
54  a county probation department as defined  in  section  eighty-nine-t,  as
55  added by chapter six hundred three of the laws of nineteen hundred nine-
56  ty-eight,  of this chapter or is employed in Rockland county as a deputy

1  sheriff-civil as defined in section eighty-nine-v of this chapter as
2  added by chapter four hundred forty-one of the laws of two thousand one,
3  or is employed in Rockland county as a superior correction officer as
4  defined in section eighty-nine-v of this chapter as added by chapter
5  five hundred fifty-six of the laws of two thousand one or is a paramedic
6  employed by the police department in the town of Tonawanda and retires
7  under the provisions of section eighty-nine-v of this chapter, as added
8  by chapter four hundred seventy-two of the laws of two thousand one, or
9  is a county fire marshal, supervising fire marshal, fire marshal,
10 assistant fire marshal, assistant chief fire marshal [or], chief fire
11 marshal, division supervising fire marshal or fire marshal trainee
12 employed by the county of Nassau as defined in section eighty-nine-w of
13 this chapter and is in a plan which permits immediate retirement upon
14 completion of a specified period of service without regard to age.
15 Except as provided in subdivision c of section four hundred forty-five-a
16 of this article, subdivision c of section four hundred forty-five-b of
17 this article, subdivision c of section four hundred forty-five-c of this
18 article, subdivision c of section four hundred forty-five-d of this
19 article, subdivision c of section four hundred forty-five-e of this
20 article, subdivision c of section four hundred forty-five-f of this
21 article and subdivision c of section four hundred forty-five-h of this
22 article, a member in such a plan and such an occupation, other than a
23 police officer or investigator member of the New York city employees'
24 retirement system or a firefighter, shall not be permitted to retire
25 prior to the completion of twenty-five years of credited service;
26 provided, however, if such a member in such an occupation is in a plan
27 which permits retirement upon completion of twenty years of service
28 regardless of age, he or she may retire upon completion of twenty years
29 of credited service and prior to the completion of twenty-five years of
30 service, but in such event the benefit provided from funds other than
31 those based on such a member's own contributions shall not exceed two
32 per centum of final average salary per each year of credited service.
33   § 5. The retirement and social security law is amended by adding a new
34 section 508-c to read as follows:
35   § 508-c. Death benefits for fire marshals employed by Nassau county.
36 a. As used in this section, the term "fire marshal" shall mean a member
37 who is employed by Nassau county with a title of county fire marshal,
38 supervising fire marshal, assistant fire marshal, assist-
39 ant chief fire marshal, chief fire marshal, or division supervising fire
40 marshal.
41   b. Notwithstanding any provision of law to the contrary, where a fire
42 marshal would have been entitled to a service retirement benefit at the
43 time of his or her death and where his or her death occurs on or after
44 the effective date of this section, the beneficiary or beneficiaries may
45 elect to receive, in a lump sum, an amount payable which shall be equal
46 to the pension reserve that would have been established had the member
47 retired on the date of his or her death, or the value of the death bene-
48 fit and the reserve-for-increased-take-home-pay, if any, whichever is
49 greater.
50   § 6. Subdivision s of section 603 of the retirement and social securi-
51 ty law, as added by chapter 295 of the laws of 2007, is amended to read
52 as follows:
53   s. The service retirement benefit specified in section six hundred
54 four of this article shall be payable to members with twenty-five years
55 of creditable service, without regard to age, who are employed in the
56 county of Nassau as a county fire marshal, supervising fire marshal,

1  fire marshal, assistant fire marshal, assistant chief fire marshal [**or**]**,**
2  chief fire marshal **or division supervising fire marshal** as defined in
3  section eighty-nine-w of this chapter if: (i) such members have met the
4  minimum service requirements upon retirement, and (ii) in the case of a
5  member subject to the provisions of article fourteen of this chapter,
6  such member files an election therefor which provides that he or she
7  will be subject to the provisions of this article and to none of the
8  provisions of such article fourteen.  Such election, which shall be
9  irrevocable, shall be in writing, duly executed and shall be filed with
10 the comptroller within one year of the effective date of this subdivi-
11 sion or within one year after entering the employment with such county
12 upon which eligibility is based, whichever comes later. For the purposes
13 of this subdivision, the term "creditable service" shall have the mean-
14 ing as so defined in both sections eighty-nine-w and six hundred one of
15 this chapter.
16    § 7. Subdivision t of section 604 of the retirement and social securi-
17 ty law, as added by chapter 295 of the laws of 2007, is amended to read
18 as follows:
19    t. The early service retirement benefit for a member who is employed
20 in the county of Nassau as a county fire marshal, supervising fire
21 marshal, fire marshal, assistant fire marshal, assistant chief fire
22 marshal [**or**]**,** chief fire marshal **or division supervising fire marshal** as
23 defined in section eighty-nine-w of this chapter shall be a pension
24 equal to one-fiftieth of final average salary times years of credited
25 service at the completion of twenty-five years of service as such county
26 fire marshal, supervising fire marshal, fire marshal, assistant fire
27 marshal, assistant chief fire marshal [**or**]**,** chief fire marshal **or divi-
28 sion supervising fire marshal**, but not exceeding one-half of his or her
29 final average salary.
30    § 8. The opening paragraph of subdivision a and subdivision g of
31 section 605-d of the retirement and social security law, as added by
32 chapter 416 of the laws of 2013, are amended to read as follows:
33    A member employed as a chief fire marshal, assistant **chief** fire
34 marshal, division supervising fire marshal, supervising fire marshal,
35 fire marshal or fire marshal trainee in Nassau county shall be entitled
36 to an accidental disability retirement allowance if, at the time appli-
37 cation therefor is filed, such member is:
38    g. Notwithstanding any other provision of law, this section shall
39 apply to chief fire marshals, assistant **chief** fire marshals, division
40 supervising fire marshals, supervising fire marshals, fire marshals and
41 fire marshal trainees in Nassau county who were hired on or after July
42 twenty-seventh, nineteen hundred seventy-six.
43    § 9. Section 605-f of the retirement and social security law, as added
44 by chapter 714 of the laws of 2021, is amended to read as follows:
45    § 605-f. Disability benefits; certain disabilities. Notwithstanding
46 any provision of this chapter or of any general, special or local law to
47 the contrary, any member who is a **county fire marshal,** fire marshal,
48 supervising fire marshal, division supervising fire marshal, assistant
49 chief fire marshal, chief fire marshal**, assistant fire marshal,** or fire
50 marshal trainee employed by Nassau county who contracts any condition of
51 impairment of health caused by diseases of the heart, resulting in disa-
52 bility or death to such **county fire marshal,** fire marshal, supervising
53 fire marshal, division supervising fire marshal, assistant chief fire
54 marshal, chief fire marshal**, assistant fire marshal,** or fire marshal
55 trainee, presently employed, and who shall have sustained such disabili-
56 ty while so employed, shall be presumptive evidence that such disability

1  was incurred in the performance and discharge of duty and the natural
2  and proximate result of an accident, unless the contrary be proved by
3  competent evidence; provided, however, that prior to entry into service,
4  such **county fire marshal,** fire marshal, supervising fire marshal, divi-
5  sion supervising fire marshal, assistant chief fire marshal, chief fire
6  marshal**, assistant fire marshal,** or fire marshal trainee successfully
7  passed a physical examination which failed to disclose evidence of any
8  disease or other impairment of the heart.
9      § 10.  The retirement and social security law is amended by adding a
10  new section 606-c to read as follows:
11      **§ 606-c. Death benefits for fire marshals employed by Nassau county.**
12  **a.  As used in this section, the term "fire marshal" shall mean a member**
13  **who is employed by Nassau county with a title of county fire marshal,**
14  **supervising fire marshal, fire marshal, assistant fire marshal, assist-**
15  **ant chief fire marshal, chief fire marshal, or division supervising fire**
16  **marshal.**
17      **b.  Notwithstanding any provision of law to the contrary, where a fire**
18  **marshal would have been entitled to a service retirement benefit at the**
19  **time of his or her death and where his or her death occurs on or after**
20  **the effective date of this section, the beneficiary or beneficiaries may**
21  **elect to receive, in a lump sum, an amount payable which shall be equal**
22  **to the pension reserve that would have been established had the member**
23  **retired on the date of his or her death, or the value of the death bene-**
24  **fit and the reserve-for-increased-take-home-pay, if any, whichever is**
25  **greater.**
26      § 11.  Subdivision a of section 607-j of the retirement and social
27  security law, as added by chapter 524 of the laws of 2021, is amended to
28  read as follows:
29      a. The county of Nassau shall make the benefits provided herein avail-
30  able to **county fire marshals,** chief fire marshals, assistant chief fire
31  marshals, division supervising fire marshals, supervising fire marshals,
32  fire marshals**, assistant fire marshals** and fire marshal trainees in the
33  employ of Nassau county.
34      § 12.  All past service costs associated with implementing the
35  provisions of this act shall be borne by the county of Nassau and may be
36  amortized over a period of ten years.
37      § 13.  Notwithstanding any provision of law to the contrary, none of
38  the provisions of this act shall be subject to the appropriation
39  requirement of section twenty-five of the retirement and social security
40  law.
41      § 14. This act shall take effect immediately.
       FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
       This bill would modify the in-service death benefit for retirement
   eligible members of the New York State and Local Employees' Retirement
   System who are employed by Nassau County in certain fire marshal job
   titles. The in-service death benefit will be the value of the pension
   reserve as if the member had retired on their date of death.
       If this bill is enacted during the 2023 legislative session, we antic-
   ipate that there will be an increase of approximately $5,400 in the
   annual contributions of Nassau County for the fiscal year ending March
   31, 2024. In future years, this cost will vary as the billing rates and
   salary of the affected members change.
       In addition to the annual contributions discussed above, there will be
   an immediate past service cost of approximately $48,700 which will be
   borne by Nassau County as a one-time payment. This estimate assumes that
   payment will be made on February 1, 2024. If Nassau County elects to

amortize this cost over a 10-year period, the cost for the first year
including interest would be $6,220.

These estimated costs are based on 44 affected members employed by
Nassau County, with annual salary of approximately $5.0 million as of
March 31, 2022.

Summary of relevant resources:

Membership data as of March 31, 2022 was used in measuring the impact
of the proposed change, the same data used in the April 1, 2022 actuari-
al valuation. Distributions and other statistics can be found in the
2022 Report of the Actuary and the 2022 Annual Comprehensive Financial
Report.

The actuarial assumptions and methods used are described in the 2020,
2021, and 2022 Annual Report to the Comptroller on Actuarial Assump-
tions, and the Codes, Rules and Regulations of the State of New York:
Audit and Control.

The Market Assets and GASB Disclosures are found in the March 31, 2022
New York State and Local Retirement System Financial Statements and
Supplementary Information.

I am a member of the American Academy of Actuaries and meet the Quali-
fication Standards to render the actuarial opinion contained herein.

This fiscal note does not constitute a legal opinion on the viability
of the proposed change nor is it intended to serve as a substitute for
the professional judgment of an attorney.

This estimate, dated January 31, 2023, and intended for use only
during the 2023 Legislative Session, is Fiscal Note No. 2023-21,
prepared by the Actuary for the New York State and Local Retirement
System.

1                              PART JJ

2    Section 1. Paragraphs 1 and 2 of subdivision b of section 517-c of the
3  retirement and social security law, paragraph 1 as amended and paragraph
4  2 as added by chapter 303 of the laws of 2017, are amended to read as
5  follows:
6    1. A member of the New York state and local employees' retirement
7  system, the New York state and local police and fire retirement system,
8  the New York city employees' retirement system [~~or~~], the New York city
9  board of education retirement system **or the New York city police pension**
10 **fund** in active service who has credit for at least one year of member
11 service may borrow, no more than once during each twelve month period,
12 an amount not exceeding seventy-five percent of the total contributions
13 made pursuant to section five hundred seventeen of this article (includ-
14 ing interest credited at the rate set forth in subdivision c of such
15 section five hundred seventeen compounded annually) and not less than
16 one thousand dollars, provided, however, that the provisions of this
17 section shall not apply to a New York city uniformed
18 correction/sanitation revised plan member or an investigator revised
19 plan member.
20   2. A member of the New York state and local employees' retirement
21 system who first joins such system on or after January first, two thou-
22 sand eighteen**, or a member of the New York city police pension fund who**
23 **first joins such system on or after January first, two thousand eighteen**
24 in active service who has credit for at least one year of member service
25 may borrow, no more than once during each twelve month period, an
26 amount, not less than one thousand dollars and which would not cause the
27 balance owed pursuant to this section, including any amounts borrowed

1  then outstanding, to exceed (i) fifty percent of the member's total
2  contributions made pursuant to section five hundred seventeen of this
3  article (including interest credited at the rate set forth in subdivi-
4  sion c of such section five hundred seventeen compounded annually); or
5  (ii) fifty thousand dollars, whichever is less.
6      § 2. Subdivisions d and i of section 517-c of the retirement and
7  social security law, subdivision d as added by chapter 920 of the laws
8  of 1990 and subdivision i as amended by chapter 426 of the laws of 2018,
9  are amended to read as follows:
10     d. The rate of interest payable upon loans made pursuant to this
11  section shall: (1) for members of the New York state and local employ-
12  ees' retirement system, be one percent less than the valuation rate of
13  interest adopted for such system, however, in no event shall the rate be
14  less than the rate set forth in subdivision c of section five hundred
15  seventeen of this article; (2) for members of the New York city employ-
16  ees' retirement system, be one percent less than the regular interest
17  rate established pursuant to [subdivision (c) of section 13-101.12]
18  **paragraph (c) of subdivision twelve of section 13-101** of the administra-
19  tive code of the city of New York for such system, however, in no event
20  shall the rate be less than the rate set forth in subdivision c of
21  section five hundred seventeen of this article; [and] (3) for members of
22  the New York city board of education retirement system, be one percent
23  less than the regular interest rate established pursuant to subparagraph
24  four of paragraph (b) of subdivision sixteen of section twenty-five
25  hundred seventy-five of the education law for such system, however, in
26  no event shall the rate be less than the rate set forth in subdivision c
27  of section five hundred seventeen of this article**; and (4) for members**
28  **of the New York city police pension fund, be the regular interest rate**
29  **established pursuant to subdivision b of section 13-638.2 of the admin-**
30  **istrative code of the city of New York for such system, however, in no**
31  **event shall the rate be less than the rate set forth in subdivision c of**
32  **section five hundred seventeen of this article**.  Whenever there is a
33  change in the interest rate, it shall be applicable to loans made or
34  renegotiated after the date of such change in the interest rate.
35     i. Notwithstanding the provisions of section five hundred sixteen of
36  this article, whenever a member of such a retirement system, for whom a
37  loan is outstanding, retires, the retirement allowance payable without
38  optional modification shall be reduced by a life annuity which is actu-
39  arially equivalent to the amount of the outstanding loan (all outstand-
40  ing loans shall continue to accrue interest charges until retirement),
41  such life annuity being calculated utilizing the interest rate on thirty
42  year United States treasury bonds as of January first of the calendar
43  year of the effective date of retirement and the mortality tables for
44  options available under section five hundred fourteen of this article. A
45  retiree of the New York city employees' retirement system, board of
46  education retirement system of the city of New York, [or] the New York
47  state and local employees' retirement system**, or the New York city**
48  **police pension fund** whose benefit has been so reduced may repay the
49  outstanding balance of the loan at any time.  Benefits payable after the
50  repayment of the loan shall not be subject to the actuarial reduction
51  required by this subdivision.
52     § 3. This act shall take effect immediately.
      FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
      SUMMARY OF BILL: This proposed legislation would amend the Retirement
   and Social Security Law (RSSL) to permit Tier 3, Tier 3 Revised, and
   Tier 3 Enhanced members (who are subject to Article 14) of the New York

City Police Pension Fund (POLICE) to take loans against their accumulated total member contributions with interest.

Effective Date: Upon enactment.

BACKGROUND: Tier 1 and Tier 2 members of POLICE are generally permitted, subject to certain restrictions, to borrow from their accumulated Basic Member Contributions (BMC) with interest. However, Tier 3, Tier 3 Revised, and Tier 3 Enhanced members are currently not permitted to take loans on their contributions.

The proposed legislation would permit Tier 3, Tier 3 Revised, and Tier 3 Enhanced members of POLICE to borrow from their accumulated total member contributions, which include Enhanced Plan Additional Member Contributions (AMC). Loans may be taken no more than once a year, and the dollar amount is subject to minimum and maximum restrictions. For members with a date of membership before January 1, 2018, the members may take out a loan up to 75% of their total contributions plus accumulated interest. For members with a date of membership on and after January 1, 2018, the loan is limited to 50% of their total member contributions plus accumulated interest or $50,000, whichever is less.

FINANCIAL IMPACT: In the event an outstanding loan exists at retirement, the balance of the unpaid loan is converted to an annuity based on the yield on 30-year U.S. Treasury securities and deducted from the annual retirement allowance otherwise payable. This conversion is made on an actuarial basis that is different than the basis used to determine the employer contribution to POLICE. As a result of this difference in actuarial bases and based on the census data and actuarial assumptions and methods described herein, the enactment of this proposed legislation would increase the Present Value of Future Benefits (PVFB) by approximately $43.7 million.

Under the Entry Age Normal cost method used to determine the employer contributions to POLICE, there would be an increase in the Unfunded Accrued Liability (UAL) of approximately $11.3 million and an increase in the Present Value of Future Employer Normal Cost of approximately $32.4 million.

FINANCIAL IMPACT - ANNUAL EMPLOYER CONTRIBUTIONS: The enactment of this proposed legislation would result in an initial increase in annual employer contributions of approximately $3.4 million. This increase consists of an increase in the Normal Cost in addition to the UAL payment.

Future costs will vary based on the amount of member contributions eligible for loans. Individual member balances are expected to increase, however in the future, a larger portion of the membership will have membership dates on or after January 1, 2018, and therefore be limited to a maximum loan percentage of 50% and a maximum loan amount of $50,000.

New UAL attributable to benefit changes are generally amortized over the remaining working lifetime of those impacted by the benefit changes. The remaining working lifetime for this group is approximately 18 years and the increase in UAL was therefore amortized over an 18-year period (17 payments under the One-Year Lag Methodology) using level dollar payments.

CENSUS DATA: The estimates presented herein are based on the census data used in the June 30, 2022 actuarial valuation of POLICE to determine the Preliminary Fiscal Year 2024 employer contributions.

The 19,375 Tier 3, Tier 3 Revised, and Tier 3 Enhanced members in POLICE as of June 30, 2022 had an average age of approximately 32.2

years, average service of approximately 5.7 years, and an average salary
of approximately $101,600.

ACTUARIAL ASSUMPTIONS AND METHODS: The estimates presented herein have
been calculated based on the actuarial assumptions and methods used for
the Preliminary Fiscal Year 2024 employer contributions of POLICE.

For the purposes of this Fiscal Note, it is assumed that the changes
would be reflected for the first time in the June 30, 2022 actuarial
valuation of POLICE used to determine employer contributions for Fiscal
Year 2024.

It has been further assumed that the yield on 30-year U.S. Treasury
securities, on a long-term basis would equal 3.5% per year and that 25%
of member balances available for borrowing would be taken as loans at
retirement.

RISK AND UNCERTAINTY: The costs presented in this Fiscal Note depend
highly on the realization of the actuarial assumptions used, demograph-
ics of the impacted population and other factors such as investment,
contribution, and other risks. If actual experience deviates from actu-
arial assumptions, the actual costs could differ from those presented
herein.

Costs are also dependent on the actuarial methods used, and therefore
different actuarial methods could produce different results. Quantifying
these risks is beyond the scope of this Fiscal Note.

Not measured in this Fiscal Note are the following:
* The initial additional administrative costs to implement the
proposed legislation.

STATEMENT OF ACTUARIAL OPINION: I, Marek Tyszkiewicz, am the Chief
Actuary for, and independent of, the New York City Retirement Systems
and Pension Funds. I am an Associate of the Society of Actuaries and a
Member of the American Academy of Actuaries. I am a member of NYCERS but
do not believe it impairs my objectivity and I meet the Qualification
Standards of the American Academy of Actuaries to render the actuarial
opinion contained herein. To the best of my knowledge, the results
contained herein have been prepared in accordance with generally
accepted actuarial principles and procedures and with the Actuarial
Standards of Practice issued by the Actuarial Standards Board.

FISCAL NOTE IDENTIFICATION: This Fiscal Note 2023-24 dated April 5,
2023 was prepared by the Chief Actuary for the New York City Police
Pension Fund. This estimate is intended for use only during the 2023
Legislative Session.

 1                            PART KK

 2    Section 1. The retirement and social security law is amended by adding
 3  a new section 89-x to read as follows:
 4    § 89-x. Retirement of deputy sheriffs-civil in Monroe county.  a. A
 5  member employed in Monroe county shall be eligible to retire pursuant to
 6  the provisions of section eighty-nine-p of this title if the county of
 7  Monroe elects to make the benefits provided in section eighty-nine-p of
 8  this title available to the sheriff, undersheriffs, deputy sheriffs and
 9  correction officers of such county and if he or she is a deputy sher-
10  iff-civil of such county. Such eligibility shall be an alternative to
11  the eligibility provisions available under any other plan of this arti-
12  cle to which such member is subject.
13    b. The term "creditable service" shall include any and all services
14  performed as a deputy sheriff-civil of Monroe county and other credita-

1  **ble service as defined in subdivisions d and e of section eighty-nine-p**
2  **of this title.**
3  **c. Monroe county is authorized to adopt a resolution on or before**
4  **December thirty-first, two thousand twenty-four to extend the provisions**
5  **of this section to those members defined in subdivision a of this**
6  **section. A certified copy of such resolution must be filed with the**
7  **comptroller and may contain an election that any past service cost be**
8  **paid over either a five-year or ten-year period. Such resolution shall**
9  **be accompanied by the affidavit of the chief executive officer of Monroe**
10 **county that the county has received an estimate from the retirement**
11 **system of the cost of the benefit provided by this section.**
12 **d. The sheriff shall certify to the comptroller, periodically and at**
13 **such intervals of time as may be required of him or her and in such**
14 **fashion as may be prescribed, the identity of the deputy sheriffs-civil**
15 **of Monroe county.**
16 **e. Unless otherwise indicated in this section, the provisions of**
17 **section eighty-nine-p of this title shall be controlling.**
18 § 2. Subdivision a of section 445 of the retirement and social securi-
19 ty law, as amended by chapter 245 of the laws of 2021, is amended to
20 read as follows:
21 a. No member of a retirement system who is subject to the provisions
22 of this article shall retire without regard to age, exclusive of retire-
23 ment for disability, unless he or she is a police officer, an investi-
24 gator member of the New York city employees' retirement system, fire-
25 fighter, correction officer, a qualifying member as defined in section
26 eighty-nine-t, as added by chapter six hundred fifty-seven of the laws
27 of nineteen hundred ninety-eight, of this chapter, sanitation worker, a
28 special officer (including persons employed by the city of New York in
29 the title urban park ranger or associate urban park ranger), school
30 safety agent, campus peace officer or a taxi and limousine commission
31 inspector member of the New York city employees' retirement system or
32 the New York city board of education retirement system, a dispatcher
33 member of the New York city employees' retirement system, a police
34 communications member of the New York city employees' retirement system,
35 an EMT member of the New York city employees' retirement system, a depu-
36 ty sheriff member of the New York city employees' retirement system, a
37 correction officer of the Westchester county correction department as
38 defined in section eighty-nine-e of this chapter or employed in Suffolk
39 county as a peace officer, as defined in section eighty-nine-s, as added
40 by chapter five hundred eighty-eight of the laws of nineteen hundred
41 ninety-seven, of this chapter, employed in Suffolk county as a
42 correction officer, as defined in section eighty-nine-f of this chapter,
43 or employed in Nassau county as a correction officer, uniformed
44 correction division personnel, sheriff, undersheriff or deputy sheriff,
45 as defined in section eighty-nine-g of this chapter, or employed in
46 Nassau county as an ambulance medical technician, an ambulance medical
47 technician/supervisor or a member who performs ambulance medical techni-
48 cian related services, or a police medic, police medic supervisor or a
49 member who performs police medic related services, as defined in section
50 eighty-nine-s, as amended by chapter five hundred seventy-eight of the
51 laws of nineteen hundred ninety-eight, of this chapter, or employed in
52 Nassau county as a peace officer, as defined in section eighty-nine-s,
53 as added by chapter five hundred ninety-five of the laws of nineteen
54 hundred ninety-seven, of this chapter, or employed in Albany county as a
55 sheriff, undersheriff, deputy sheriff, correction officer or identifica-
56 tion officer, as defined in section eighty-nine-h of this chapter or is

1  employed in St. Lawrence county as a sheriff, undersheriff, deputy sher-
2  iff or correction officer, as defined in section eighty-nine-i of this
3  chapter or is employed in Orleans county as a sheriff, undersheriff,
4  deputy sheriff or correction officer, as defined in section
5  eighty-nine-l of this chapter or is employed in Jefferson county as a
6  sheriff, undersheriff, deputy sheriff or correction officer, as defined
7  in section eighty-nine-j of this chapter or is employed in Onondaga
8  county as a deputy sheriff-jail division competitively appointed or as a
9  correction officer, as defined in section eighty-nine-k of this chapter
10 or is employed in a county which makes an election under subdivision j
11 of section eighty-nine-p of this chapter as a sheriff, undersheriff,
12 deputy sheriff or correction officer as defined in such section eighty-
13 nine-p or is employed in Broome County as a sheriff, undersheriff, depu-
14 ty sheriff or correction officer, as defined in section eighty-nine-m of
15 this chapter or is a Monroe county deputy sheriff-court security, or
16 deputy sheriff-jailor as defined in section eighty-nine-n, as added by
17 chapter five hundred ninety-seven of the laws of nineteen hundred nine-
18 ty-one, of this chapter or is employed in Greene county as a sheriff,
19 undersheriff, deputy sheriff or correction officer, as defined in
20 section eighty-nine-o of this chapter or is a traffic officer with the
21 town of Elmira as defined in section eighty-nine-q of this chapter or is
22 employed by Suffolk county as a park police officer, as defined in
23 section eighty-nine-r of this chapter or is a peace officer employed by
24 a county probation department as defined in section eighty-nine-t, as
25 added by chapter six hundred three of the laws of nineteen hundred nine-
26 ty-eight, of this chapter or is employed in Rockland county as a deputy
27 sheriff-civil as defined in section eighty-nine-v of this chapter as
28 added by chapter four hundred forty-one of the laws of two thousand one,
29 or is employed in Rockland county as a superior correction officer as
30 defined in section eighty-nine-v of this chapter as added by chapter
31 five hundred fifty-six of the laws of two thousand one or is a paramedic
32 employed by the police department in the town of Tonawanda and retires
33 under the provisions of section eighty-nine-v of this chapter, as added
34 by chapter four hundred seventy-two of the laws of two thousand one, or
35 is a county fire marshal, supervising fire marshal, fire marshal,
36 assistant fire marshal, assistant chief fire marshal or chief fire
37 marshal employed by the county of Nassau as defined in section eighty-
38 nine-w of this chapter **or is employed in Monroe county as a deputy sher-**
39 **iff-civil as defined in section eighty-nine-x of this chapter** and is in
40 a plan which permits immediate retirement upon completion of a specified
41 period of service without regard to age. Except as provided in subdivi-
42 sion c of section four hundred forty-five-a of this article, subdivision
43 c of section four hundred forty-five-b of this article, subdivision c of
44 section four hundred forty-five-c of this article, subdivision c of
45 section four hundred forty-five-d of this article, subdivision c of
46 section four hundred forty-five-e of this article, subdivision c of
47 section four hundred forty-five-f of this article and subdivision c of
48 section four hundred forty-five-h of this article, a member in such a
49 plan and such an occupation, other than a police officer or investigator
50 member of the New York city employees' retirement system or a firefight-
51 er, shall not be permitted to retire prior to the completion of twenty-
52 five years of credited service; provided, however, if such a member in
53 such an occupation is in a plan which permits retirement upon completion
54 of twenty years of service regardless of age, he or she may retire upon
55 completion of twenty years of credited service and prior to the
56 completion of twenty-five years of service, but in such event the bene-

1  fit provided from funds other than those based on such  a  member's  own
2  contributions  shall  not  exceed two per centum of final average salary
3  per each year of credited service.
4       § 3. Section 603 of the retirement and social security law is amended
5  by adding a new subdivision u to read as follows:
6       u. The service retirement benefit specified  in  section  six  hundred
7  four  of  this  article  shall be payable to members with twenty-five or
8  more  years  of  creditable  service,  without  regard  to  age,  who are
9  employed  as  deputy  sheriffs-civil  in  Monroe  county,  as defined in
10  section eighty-nine-x of this chapter if: (i) such members have met  the
11  minimum  service  requirements  upon  retirement,  and (ii) in the case of a
12  member subject to the provisions of article fourteen of  this  chapter,
13  such  member  files  an  election therefor which provides that he or she
14  will  be  subject  to  the  provisions  of this article  and  to  none  of  the
15  provisions of such article fourteen. Such election, which shall be irre-
16  vocable,  shall  be  in  writing, duly executed and shall be filed with the
17  comptroller on or before December thirty-first, two thousand twenty-four
18  or within one year of entering into service as a deputy sheriff-civil in
19  Monroe county. The term "creditable service" shall have the  meaning  as
20  so  defined  in  section  eighty-nine-x  and subdivision c of section six
21  hundred one of this chapter.
22       § 4. Section 604 of the retirement and social security law is  amended
23  by adding a new subdivision u to read as follows:
24       u.  The  early  service  retirement  for a member who is employed as a
25  deputy sheriff-civil as defined in section eighty-nine-x of  this  chap-
26  ter,  shall  be  a pension equal to one-fiftieth of final average salary
27  times years of credited service at the completion of  twenty-five  years
28  of  service  as  such  deputy sheriff-civil, but not exceeding one-half of
29  his or her final average salary.
30       § 5. All past service  costs  associated  with  implementing  the
31  provisions of this act shall be borne by Monroe County.
32       § 6. This act shall take effect immediately.
     FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
     This bill would permit members of the New York State and Local Employ-
   ees' Retirement  System  (NYSLERS)  who  are  employed by Monroe County in
   the title of deputy sheriff-civil, as  certified  by  the  sheriff,  to
   retire  upon  completion of twenty-five (25) years of creditable service
   with a benefit of one-half (50%) final average salary,  provided  Monroe
   County  has  filed  a  resolution with the New York State Comptroller to
   provide such benefits on or before December 31, 2024. Additionally,  for
   those  members  covered  under  the  provisions of Article 14, this bill
   would permit an irrevocable election to forfeit the benefits of  Article
   14  in  favor  of  the  25-year  plan benefit, when elected on or before
   December 31, 2024 or within one year of entering  service  as  a  deputy
   sheriff-civil with Monroe County.
     If this bill is enacted during the 2023 legislative session, we antic-
   ipate  that  there  will  be  an increase of approximately $24,000 in the
   annual contributions of Monroe County for the fiscal year  ending  March
   31,  2024.  In future years, this cost will vary as the billing rates and
   salary of the affected members change.
     In addition to the annual contributions discussed above, there will be
   an immediate past service cost of approximately $147,000 which  will  be
   borne  by Monroe County as a one-time payment. This estimate assumes that
   payment will be made on February 1, 2024.
     These  estimated  costs  are  based  on 9 affected members employed by
   Monroe County, with annual salary of approximately $688,000 as of  March

31, 2022. The affected members were identified using information
provided by Andrew Toranzo of the New York State Minority Ways and Means
Committee.

Summary of relevant resources:

Membership data as of March 31, 2022 was used in measuring the impact
of the proposed change, the same data used in the April 1, 2022 actuari-
al valuation. Distributions and other statistics can be found in the
2022 Report of the Actuary and the 2022 Annual Comprehensive Financial
Report.

The actuarial assumptions and methods used are described in the 2020,
2021, and 2022 Annual Report to the Comptroller on Actuarial Assump-
tions, and the Codes, Rules and Regulations of the State of New York:
Audit and Control.

The Market Assets and GASB Disclosures are found in the March 31, 2022
New York State and Local Retirement System Financial Statements and
Supplementary Information.

I am a member of the American Academy of Actuaries and meet the Quali-
fication Standards to render the actuarial opinion contained herein.

This fiscal note does not constitute a legal opinion on the viability
of the proposed change nor is it intended to serve as a substitute for
the professional judgment of an attorney.

This estimate, dated January 26, 2023, and intended for use only
during the 2023 Legislative Session, is Fiscal Note No. 2023-36,
prepared by the Actuary for the New York State and Local Retirement
System.

1                              PART LL

2    Section 1. Subdivision 2 of section 363-a of the retirement and social
3  security law, as amended by chapter 437 of the laws of 2016, is amended
4  to read as follows:
5    2. Notwithstanding any provision of this chapter or of any general,
6  special, or local law to the contrary, any condition of impairment of
7  health caused by diseases of the heart, resulting in disability or death
8  to a police officer, presently employed, and who shall have sustained
9  such disability while so employed, shall be presumptive evidence that it
10 was incurred in the performance and discharge of duty **and the natural**
11 **and proximate result of an accident**, unless the contrary be proved by
12 competent evidence.
13   § 2. The retirement and social security law is amended by adding a new
14 section 809 to read as follows:
15   **§ 809. Effect and rebuttal of certain medical presumptions pertaining**
16 **to diseases of the heart. a. This section shall apply to certain appli-**
17 **cations for disability retirement allowances made by or on behalf of a**
18 **member of the New York state and local employees' retirement system or**
19 **the New York state and local police and fire retirement system. It**
20 **shall apply only to applications that are subject under this chapter to**
21 **a provision that any condition of impairment of health caused by a**
22 **disease of the heart, resulting in disability, shall be presumptive**
23 **evidence that such disability was incurred in the performance and**
24 **discharge of duty and the natural and proximate result of an accident.**
25   **b. Notwithstanding any other provision of law to the contrary an**
26 **application for an accidental disability retirement allowance that is**
27 **based on a permanent incapacity caused by a disease of the heart, shall**
28 **not be required to allege or establish:**

1    (1) that the member sustained an accident or other incident related to
2  the performance and discharge of duty; or
3    (2) that notice was provided thereof.
4    c. Notwithstanding any other provision of law to the contrary, the
5  presumptions referred to in subdivision a of this section may be
6  rebutted only by competent evidence that the disability is not the
7  natural and proximate result of the performance and discharge of duty.
8    § 3. The amendment made to subdivision 2 of section 363-a of the
9  retirement and social security law by section one of this act shall not
10 affect, impair or invalidate any temporary right, privilege or benefit
11 conferred pursuant to the provisions of a general, special or local law
12 (other than pursuant to articles 14 and 15 of the retirement and social
13 security law) for any member of a public retirement system or pension
14 plan funded by the state or one of its political subdivisions, nor shall
15 any amendment thereto affect the application of such provisions as
16 extended by the provisions of section 480 of the retirement and social
17 security law.
18   § 4. This act shall take effect immediately.
     FISCAL NOTE.--Pursuant to Legislative Law, Section 50:
     This bill would amend the Retirement and Social Security Law (RSSL) to
     1. Eliminate certain eligibility requirements for awarding accidental
   disability benefits, when the disability is related to diseases of the
   heart, for members in the New York State and Local Employees' Retirement
   System (NYSLERS) and the New York State and Local Police and Fire
   Retirement System (NYSLPFRS). Accidental disability benefits would be
   granted even where
     a. the member did not sustain an accident,
     b. the member's incapacitation is unrelated to any accident, or
     c. the member failed to provide notice thereof.
     The heart presumption could continue to be rebutted by competent
   evidence that the disability is not the result of the performance and
   discharge of duty.
     2. Increase disability benefits payable to police officers in the
   NYSLPFRS, who become incapacitated due to diseases of the heart, by
   providing an accidental disability benefit equal to 75% of salary less
   workers' compensation. Currently, police officers are eligible for a
   performance-of-duty disability benefit equal to 50% of salary less work-
   ers' compensation.
     3. Increase the death benefits payable on behalf of a deceased police
   officer in the NYSLPFRS, whose death results from diseases of the heart,
   by providing the special accidental death benefit equal to more than
   100% of salary less workers' compensation and social security benefits
   payable to an eligible beneficiary or beneficiaries. Currently the
   death benefit would be the continuance afforded under the performance-
   of-duty disability retirement
     Insofar as this bill affects the New York State and Local Retirement
   System (NYSLRS), more accidental disability benefits and accidental
   death benefits would be granted. The cost of the revised benefit will
   depend upon the applicant's age, service, salary, plan and any benefit
   type otherwise payable. Further, we anticipate that the administrative
   costs to the NYSLRS, required to process applications and litigate
   anticipated disputes, will increase.
     The number of members and retirees who could be affected by this
   legislation cannot be readily determined. However, every active member
   of the NYSLPFRS will be covered, as well as members of the NYSLERS

S. 4005--C                              56                        A. 3005--C

including uniformed court officers and peace officers employed by the
Unified Court System and fire marshals employed by Nassau County.

    If this bill is enacted during the 2023 legislative session, we antic-
ipate that there will be increases of approximately $1.2 million and
$4.3 million in the annual contributions to the NYSLERS and to the
NYSLPFRS, respectively, for the fiscal year ending March 31, 2024.
These costs will be shared by the State of New York (the State), Nassau
County, and other local participating employers in the NYSLPFRS as
follows:

| Employer | payment to the NYSLERS | payment to the NYSLPFRS |
|---|---|---|
| the State | $1.2 million | $900,000 |
| Nassau County | $11,000 | |
| all local participating employers in the NYSLPFRS | | $3.4 million |

    In future years, these annual costs will vary as the salary of the
affected members change.
    In addition to the annual contributions discussed above, there will be
immediate past service costs of approximately $12.5 million and $111,000
which will be borne by the State and Nassau County, respectively, as
one-time payments. This estimate assumes that payment will be made by
the State and Nassau County on March 1, 2024 and February 1, 2024,
respectively.
    Estimated costs arising in the NYSLERS are based on 6,287 affected
members with annual salary of approximately $573 million as of March 31,
2022.
    Estimated costs arising in the NYSLPFRS are based on 32,169 affected
members with annual salary of approximately $3.88 billion as of March
31, 2022.
    Summary of relevant resources:
    Membership data as of March 31, 2022 was used in measuring the impact
of the proposed change, the same data used in the April 1, 2022 actuari-
al valuation. Distributions and other statistics can be found in the
2022 Report of the Actuary and the 2022 Annual Comprehensive Financial
Report.
    The actuarial assumptions and methods used are described in the 2020,
2021, and 2022 Annual Report to the Comptroller on Actuarial Assump-
tions, and the Codes, Rules and Regulations of the State of New York:
Audit and Control.
    The Market Assets and GASB Disclosures are found in the March 31, 2022
New York State and Local Retirement System Financial Statements and
Supplementary Information.
    I am a member of the American Academy of Actuaries and meet the Quali-
fication Standards to render the actuarial opinion contained herein.
    This fiscal note does not constitute a legal opinion on the viability
of the proposed change nor is it intended to serve as a substitute for
the professional judgment of an attorney.
    This estimate, dated February 24, 2023, and intended for use only
during the 2023 Legislative Session, is Fiscal Note No. 2023-73,
prepared by the Actuary for the New York State and Local Retirement
System.

1                               PART MM

S. 4005--C                                57                              A. 3005--C

1   Section 1. Subdivisions 5 and 6 of section 167 of the state finance
2   law, as added by chapter 83 of the laws of 1995, are amended to read  as
3   follows:
4   5.  The  secretary  of  the  senate  shall also have the power, at the
5   request of any member of the senate who shall hereafter resign or  whose
6   term  of  office  shall  hereafter terminate, or the surviving spouse of
7   such member, to sell to such member, or to such  surviving  spouse,  the
8   chair  last  occupied by such member in the senate [~~for the sum of twen-~~
9   ~~ty-five dollars~~] **at a cost set at the discretion of the secretary of the**
10  **senate**, depositing any moneys received from such sale in the state trea-
11  sury; provided, however, that a written request therefor, accompanied by
12  the payment herein provided, be submitted to the secretary of the senate
13  within ninety days after any such resignation or termination of term  of
14  office;  and  provided  further that not more than one such chair may be
15  thus sold, regardless of any service subsequently rendered as  a  member
16  of  the  senate. In the event that any member of the senate dies leaving
17  no surviving spouse, the secretary of the senate shall have the power to
18  sell such chair, upon the terms and conditions  hereinabove  prescribed,
19  and  in the following order of priority: (i) to any person designated by
20  such member in a writing filed with the secretary of the senate, or (ii)
21  to a child of such member, if any, in the order of seniority,  (iii)  to
22  [~~the  father~~] **any parent or parents** of such member, (iv) to [~~the mother~~
23  ~~of such member, (v) to a brother or sister~~] **siblings** of such member**,**  in
24  the order of seniority.
25  6.   The  clerk of the assembly shall have the power, at the request of
26  any member of the assembly who shall hereafter resign or whose  term  of
27  office  shall  hereafter  terminate,  or  the  surviving spouse of such
28  member, to sell to such member, or to such surviving spouse,  the  chair
29  last occupied by such member in the assembly [~~for the sum of twenty-five~~
30  ~~dollars~~] **at  a cost set at the discretion of the clerk of the assembly**,
31  depositing any moneys received from such sale  in  the  state  treasury;
32  provided,  however,  that a written request therefor, accompanied by the
33  payment herein provided, be submitted to the clerk of the assembly with-
34  in ninety days after such resignation or termination of term of  office;
35  and provided further that not more than one such chair may be thus sold,
36  regardless  of  any  service  subsequently  rendered as a member of the
37  assembly. In the event that any member of the assembly dies  leaving  no
38  surviving spouse, the clerk of the assembly shall have the power to sell
39  such chair, upon the terms and conditions hereinabove prescribed, and in
40  the  following  order  of  priority: (i) to any person designated by such
41  member in a writing filed with the clerk of the assembly, or (ii)  to  a
42  child  of  such member, if any, in the order of seniority, (iii) to [~~the~~
43  ~~father~~] **any parent or parents** of such member, (iv)  to  [~~the  mother  of~~
44  ~~such member, (v) to a brother or sister~~] **siblings** of such member**,** in the
45  order of seniority.
46  § 2. This act shall take effect immediately.

47                              PART NN

48  Section 1. Subdivision 1 of section 711 of the executive law, as added
49  by  section  2 of part B of chapter 1 of the laws of 2004, is amended to
50  read as follows:
51  1. On or before January thirty-first of each year, the director  shall
52  appear  before  and deliver a report to representatives of each house of
53  the legislature. The temporary president of the senate and  the  speaker
54  of the assembly shall each appoint [~~three~~] **four** members of their respec-

1   tive houses, and the minority leader of each house shall each appoint
2   one member, to hear the director's report. The appointed members may
3   hear the report in a joint meeting of the members of the senate and
4   assembly or in separate meetings attended by the members from one house.
5   **The chief information security officer of the state office of informa-**
6   **tion technology services shall participate in such joint or separate**
7   **meetings to supplement the report delivered by the director.** The report
8   shall provide information including, but not limited to: the state's
9   current threat level, imminent threats to New York state, the state's
10  current threat posture and collaborative efforts among localities,
11  regions and with other states to prepare for and defend against acts of
12  terrorism. **The chief information security officer of the state office of**
13  **information technology services shall supplement the report delivered by**
14  **the director with information on the state's cyber security infrastruc-**
15  **ture and cyber security resiliency efforts.**
16      § 2. This act shall take effect immediately.

17                             PART OO

18      Section 1. Short title. This act shall be known and may be cited as
19  the "unmarked burial site protection act".
20      § 2. Section 1503 of the not-for-profit corporation law is amended by
21  adding a new paragraph (c) to read as follows:
22      **(c) Except as otherwise provided in paragraph (c) of section fifteen**
23  **hundred seven and paragraph (m) of section fifteen hundred ten of this**
24  **article, this article does not apply to a burial site as defined in**
25  **paragraph (a) of subdivision one of section one hundred seventy-one of**
26  **the executive law.**
27      § 3. Article 7 of the executive law is amended by adding a new section
28  171 to read as follows:
29      **§ 171. Discovery and disposition of human remains and funerary**
30  **objects. 1. Definitions. As used in this section:**
31      **(a) "Burial site" means any location in which human remains are inter-**
32  **red, which is not a cemetery subject to provisions of the not-for-profit**
33  **corporation law, the religious corporations law, the general municipal**
34  **law, the county law, the town law or the village law.**
35      **(b) "Committee" means the Native American burial site review committee**
36  **created by subdivision three of this section.**
37      **(c) "Culturally-affiliated group" means any group, including a Native**
38  **American Nation or tribe, whose past or present government, or tradi-**
39  **tional culture or religion, was or is affiliated with human remains or**
40  **funerary objects which are the subject of this section.**
41      **(d) "Forensic anthropologist or bioarchaeologist" means a person qual-**
42  **ified in the medicolegal or osteological investigation/examination of**
43  **human skeletal remains.**
44      **(e) "Funerary objects" means any item or items reasonably believed to**
45  **have been placed with human remains at the time of burial, including but**
46  **not limited to burial markers, items of personal adornment, vessels,**
47  **beads, tools, implements, ceremonial objects and other artifacts.**
48      **(f) "Human remains" means the remains of any part of the body of a**
49  **deceased person, excluding teeth.**
50      **(g) "Lineal descendant" means a genealogical descendant established by**
51  **oral tradition, traditional Indigenous knowledge, or written record.**
52      **(h) "Native American Nation or tribe" means any Native American tribe,**
53  **nation or group.**

1    (i) "State archaeologist" means the person appointed to such office
2 pursuant to section two hundred thirty-five of the education law.
3    2. Applicability. (a) This section shall apply to all lands within the
4 state except for lands located upon any Native American territory or
5 reservation located wholly or partly within the state.
6    (b) Subdivisions three, four, five, six, and seven of this section
7 shall not apply to any project that has been reviewed pursuant to
8 section 14.09 of the parks, recreation, and historic preservation law or
9 to state participation in any review conducted pursuant to section 106
10 of the National Historic Preservation Act. If any human remains are
11 discovered during the project, the applicant shall immediately notify
12 the state archaeologist.
13    3. Native American burial site review committee. (a) There is hereby
14 established a Native American burial site review committee consisting of
15 the following:
16    (i) one member to be appointed by each of the Native American Nations
17 or tribes recognized by the state;
18    (ii) the state archaeologist;
19    (iii) a forensic anthropologist or bioarchaeologist appointed by the
20 executive director of the New York state museum;
21    (iv) the chair of the human remains committee or other designee of the
22 New York Archaeological Council; and
23    (v) one member with expertise in the field of historic preservation
24 appointed by the commissioner of the office of parks, recreation and
25 historic preservation.
26    (b) The committee shall elect a chairperson from among its members.
27 The members who are not public employees shall be reimbursed by the
28 state for their reasonable, necessary expenses incurred in the perform-
29 ance of committee functions. Three-fifths of the members of the commit-
30 tee shall constitute a quorum for the purpose of conducting business. A
31 majority vote of all members who have been appointed or who are serving
32 ex-officio shall be necessary for action. Any vacancy shall be filled in
33 the same manner as the original appointment.
34    (c) It shall be the function of the committee to determine the lineal
35 descendants and/or culturally-affiliated groups for Native American
36 human remains and funerary objects subject to this section, and to
37 provide notice to such descendants and/or groups as provided in this
38 section. The state archaeologist shall prepare, and the committee shall
39 adopt, standard procedures for determining the lineal descendants and
40 culturally-affiliated groups for human remains as required by this
41 section, including acceptable types of proof of such descent and affil-
42 iation. Such procedures shall include dispute resolution methods to
43 resolve disagreements among the committee members.
44    4. Discovery of burial site; reporting requirements. (a) Any person
45 who in the course of any ground-disturbing activity discovers a burial
46 site, human remains or funerary objects shall immediately cease any
47 further disturbance of such site, remains or objects, and shall imme-
48 diately report such discovery to the coroner or medical examiner in the
49 county in which the remains were discovered. The coroner or medical
50 examiner shall, within ninety-six hours, determine whether any actions
51 are required pursuant to the provisions of article seventeen-A of the
52 county law. If any such remains appear to the coroner or medical examin-
53 er to be more than fifty years old, the coroner or medical examiner
54 shall immediately provide notice of the discovery of such remains to the
55 state archaeologist, who shall in turn convey such notice to the other
56 members of the committee. If no action is required under article seven-

1  teen-A of the county law, or once such actions are undertaken and no
2  further action is required, the state archaeologist and the committee
3  may commence their inspection or examination of the remains or objects.
4  Any inspection or examination shall be made in situ except as necessary
5  to comply with such article seventeen-A, this section, or to determine
6  the age of the remains. The state archaeologist and the committee may
7  use ground penetrating radar or other pertinent technology or equipment
8  on any portion of the project site that has yet to be disturbed to
9  determine if any other remains exist within the project site.
10   (b) The state archaeologist, or a registered archeologist or regis-
11  tered professional archeologist as may be designated by the state
12  archaeologist, shall, upon receiving notice from a coroner or medical
13  examiner of the discovery of human remains, inspect the site, remains
14  and/or objects which are the subject of such notice. Within ten days of
15  receiving such notice, the state archaeologist shall prepare a report
16  thereon and provide a copy of the report to the committee and to the
17  property owner. The report shall be based upon physical examination of
18  the discovered burial site, remains and/or objects, and shall contain
19  the state archaeologist's conclusion as to whether such site, remains
20  and/or objects may be of Native American origin. In the event the state
21  archaeologist determines there is a reasonable possibility the site
22  contains multiple remains, an additional period of ten days may be
23  provided for assessment by the state archaeologist in consultation with
24  the culturally-affiliated group to determine the parameters of the site.
25  In preparing the report, the state archaeologist may seek and obtain
26  assistance from any employee of the regents, from the committee, and
27  from the office of parks, recreation and historic preservation.
28   (c) The committee may recommend to the office of parks, recreation,
29  and historic preservation that the site should be designated as a place
30  of historic interest under section twelve-a of the Indian law.
31   5. Determination of and notification to lineal descendants or cultur-
32  ally-affiliated groups. (a) If the state archaeologist, the forensic
33  anthropologist or bioarchaeologist, and the committee agree that the
34  burial site does not wholly or partly contain human remains or funerary
35  objects that are of Native American origin, it shall be the responsibil-
36  ity of the state archaeologist to determine, as soon as practicable,
37  whether there are any reasonably ascertainable lineal descendants or
38  culturally-affiliated groups with respect to such site, remains or
39  objects and, immediately upon making such determination, to provide
40  notice to such descendants or groups of the reported discovery.
41   (b) If the state archaeologist, the forensic anthropologist or bioar-
42  chaeologist, and the committee agree that the burial site wholly or
43  partly contains human remains or funerary objects that may be of Native
44  American origin, it shall be the responsibility of the committee to
45  determine the lineal descendants or culturally-affiliated groups. Such
46  determination shall be made as soon as practicable after the committee
47  receives a report from the state archaeologist concerning the burial
48  site. Immediately upon making such determination, the committee shall
49  provide notification to such descendants or groups of the reported
50  discovery.
51   (c) The committee shall have stewardship of Native American human
52  remains and funerary objects from the time it receives notification from
53  the state archaeologist pursuant to subdivision four of this section
54  until the lineal descendants and/or culturally-affiliated groups receive
55  notification from the committee pursuant to this subdivision, at which
56  time such lineal descendants and/or culturally-affiliated groups shall

1  have the right of possession and stewardship of such remains and
2  objects. Upon notification to such lineal descendants or culturally-af-
3  filiated groups pursuant to this subdivision, ownership of and responsi-
4  bility for the human remains and funerary objects shall vest exclusively
5  in such descendants or groups, which shall have authority to determine
6  their disposition subject to the provisions of this section.
7     (d) The state archaeologist shall have stewardship of non-Native Amer-
8  ican human remains and funerary objects from the time he or she receives
9  notification from the coroner or medical examiner pursuant to subdivi-
10 sion four of this section until the lineal descendants and/or cultural-
11 ly-affiliated groups receive notification from the state archaeologist
12 pursuant to this paragraph, at which time such lineal descendants and/or
13 culturally-affiliated groups shall have the right of possession and
14 stewardship of such remains and objects. Upon notification to such
15 lineal descendants or culturally-affiliated groups pursuant to this
16 subdivision, ownership of and responsibility for the human remains and
17 funerary objects shall vest exclusively in such descendants or groups,
18 which shall have authority to determine their disposition subject to the
19 provisions of this section.
20    (e) Where a burial site contains both Native American and non-Native
21 American human remains or funerary objects, the committee shall be
22 responsible for the Native American burials at the site, and the state
23 archaeologist shall be responsible for all other burials at the site.
24 Once stewardship of each is determined, the procedures established in
25 paragraphs (c) and (d) of this subdivision shall apply.
26    6. Disposition of remains and objects. (a) Within ten days after
27 receiving notification from the state archaeologist to lineal descend-
28 ants or a culturally-affiliated group, other than a Native American
29 Nation or tribe, of the discovery of a burial site, the descendants or
30 group shall advise the state archaeologist in writing as to the
31 preferred disposition of the discovered remains or objects, which may
32 include a request to protect the burial site and keep the remains inter-
33 red where they were found. The state archaeologist shall consult with
34 the property owner to try to facilitate the request of the lineal
35 descendants or culturally-affiliated group.
36    (b) Within sixty days after receiving notification from the committee
37 to a lineal descendant or culturally-affiliated group of the discovery
38 of a burial site, the descendants or group shall advise the committee in
39 writing as to the preferred disposition of the discovered remains or
40 objects, which may include a request to protect the burial site and keep
41 the remains interred where they were found. The committee shall consult
42 with the property owner to try to facilitate the request of the lineal
43 descendants or culturally-affiliated group.
44    (c) No later than ten days after receiving the report from the state
45 archaeologist pursuant to subdivision four of this section, the property
46 owner shall inform the state archaeologist of their decision with
47 respect to the interment of the remains on their property. The report
48 from the state archaeologist to the property owner shall clearly include
49 that the property owner has ten days to notify the state archaeologist
50 of their decision. If a property owner fails to notify the state
51 archaeologist of their decision, the state archaeologist or the commit-
52 tee, as appropriate, shall abide by the decision of the lineal descend-
53 ants or culturally-affiliated group.
54    (d) Only the state archaeologist, a registered archaeologist, or a
55 registered professional archaeologist may touch or handle any remains or
56 funerary objects.

1    7. Disposition of human remains and funerary objects, generally. (a)
2   The property owner, their agents, assignees, employees, family members,
3   friends, acquaintances, or any other individuals acting on behalf of
4   such property owner, other than the state archeologist or a registered
5   archeologist or a registered professional archaeologist hired by the
6   property owner and acting pursuant to paragraph (d) of this subdivision,
7   are strictly prohibited from moving, relocating, transferring, selling,
8   possessing, touching, handling, or otherwise intentionally disturbing,
9   in any manner, all human remains and funerary objects that are discov-
10  ered on site.   Except as necessary to carry out the purposes of this
11  section, burial sites, human remains and funerary objects shall remain
12  undisturbed after discovery and during the process established by this
13  section.
14    (b) While the disposition of the remains shall be determined by the
15  lineal descendants or culturally-affiliated group, and the property
16  owner, the preferred disposition as a matter of policy is to have the
17  remains stay interred where they are discovered.
18    (c) (i) If the lineal descendants, or culturally-affiliated group, and
19  the property owner agree that the remains shall stay interred, the
20  committee or state archaeologist, as appropriate, shall establish a plan
21  of action for the preservation and protection of the remains.
22    (ii) If the lineal descendants or culturally-affiliated group requests
23  that the remains be excavated and moved to a different location, the
24  committee or state archaeologist, as appropriate, shall establish and
25  implement a plan of action for the respectful, dignified excavation and
26  removal of the remains.
27    (iii) If the lineal descendants or culturally-affiliated group advise
28  that the remains stay interred, but the property owner notifies of their
29  decision, as provided in this section, that the remains should be
30  removed, the committee or state archaeologist, as appropriate, shall
31  establish and implement a plan of action for the respectful, dignified
32  excavation and removal of the remains. Such plan shall not be inconsist-
33  ent with the provisions of this section. The committee or state archae-
34  ologist may, prior to the execution of the plan of action, consult with
35  the property owner in an attempt to realize the request of the lineal
36  descendants or culturally-affiliated group. The committee or state
37  archaeologist may use a mediator, at no cost to the property owner
38  unless mediation is requested by the property owner, as part of this
39  process.
40    (d) (i) If the plan of action has not been implemented within ninety
41  days of the notification to the state archaeologist by the coroner or
42  medical examiner pursuant to paragraph (a) of subdivision four of this
43  section, and any additional time provided pursuant to paragraph (b) of
44  subdivision four of this section, the property owner may decide to exca-
45  vate and remove the remains, provided that they shall engage a regis-
46  tered archeologist or a registered professional archaeologist, regis-
47  tered with the Register of Professional Archaeologists and who practices
48  in the field of bioarchaeology or forensic anthropology, to excavate and
49  remove the remains in a respectful and dignified manner that is not
50  inconsistent with the provisions of this section, and provided further
51  that the property owner may request the state archeologist to perform
52  any such excavation or removal. The culturally-affiliated group shall
53  have the right to have a cultural monitor on site prior to and during
54  any excavation and removal of human remains or funerary objects. Fail-
55  ure of the culturally-affiliated group to have a monitor on site shall

1 not be grounds to prohibit, prevent, or pause any excavation, removal,
2 or other conduct as provided in this section.
3 (ii) If the plan of action has been substantially implemented but not
4 completed within the ninety-day period, and any additional time provided
5 pursuant to paragraph (b) of subdivision four of this section, the
6 committee or state archaeologist may have one additional ten-day period
7 to complete the excavation and removal. The state archaeologist, in
8 consultation with the committee, where appropriate, shall determine
9 whether the plan of action has been substantially implemented.
10 (iii) Any excavation and removal caused by the property owner pursuant
11 to this paragraph shall be done at the expense of the property owner and
12 shall be performed and supervised by the registered archaeologist, or a
13 registered professional archaeologist, hired by the property owner
14 pursuant to this subdivision, provided that the property owner may
15 request the state archeologist to complete any such excavation or
16 removal even after the ninety-day implementation period or any addi-
17 tional time provided in this section has expired. The culturally-affi-
18 liated group may select a cultural monitor to observe the work. Such
19 archaeologist shall review the established plan of action with the state
20 archaeologist or the committee, as appropriate, and act in accordance
21 with that plan. For the purposes of this paragraph, only the state
22 archaeologist, as provided in this section, or the registered archaeol-
23 ogist or registered professional archaeologist hired to perform the
24 excavation pursuant to this subdivision may have physical contact with
25 or otherwise disturb the remains or burial site.
26 (iv) The state archaeologist or committee shall make themselves avail-
27 able to the registered archaeologist or registered professional archae-
28 ologist forthwith for the purposes of discussing the established plan of
29 action for the site. If the state archaeologist or committee fails to
30 make themselves available forthwith, the registered archaeologist or
31 registered professional archaeologist may proceed with the excavation
32 and removal.
33 (v) If no plan of action has been established prior to the expiration
34 of the ninety-day period, and any additional time provided pursuant to
35 paragraph (b) of subdivision four of this section, the registered
36 archaeologist or registered professional archaeologist may proceed with
37 the excavation and removal in a professional, respectful, dignified
38 manner that is not inconsistent with the provisions of this section.
39 (vi) Any remains or funerary objects excavated from the site as a
40 result of the implementation of the process established by this para-
41 graph shall be deposited with the New York state museum for disposition.
42 (vii) Notwithstanding any conflicting provision of this section, the
43 state archeologist may at any time monitor and observe any excavation
44 and removal performed pursuant to this section.
45 (e) If the state archeologist and the committee have been unable to
46 identify the lineal descendants or culturally-affiliated group for human
47 remains or funerary objects, the state archaeologist shall take steward-
48 ship of the remains and shall make the recommendation for their disposi-
49 tion in accordance with the provisions of this section.
50 (f) Notwithstanding any conflicting provision of paragraph (d) of this
51 subdivision, for project sites that contain the remains of six or more
52 individuals, if the state archaeologist determines that additional time
53 is necessary for the excavation of such site, an additional thirty-day
54 period may be added before the remains can be excavated and removed by
55 the property owner. If the state archeologist continues to find that
56 additional time is necessary, the period before remains can be excavated

1  and removed by the property owner may be extended multiple times in
2  increments of thirty days. The state archaeologist must provide a copy
3  of each such determination to the property owner in writing. The proper-
4  ty owner may bring an action pursuant to article seventy-eight of the
5  civil practice law and rules to review the determination of the state
6  archaeologist pursuant to this paragraph.
7     8. Penalties. (a) Any person who fails to report the discovery of a
8  burial site, human remains or funerary objects as required by subdivi-
9  sion four of this section shall be guilty of a class B misdemeanor, as
10 defined in the penal law.
11    (b) Any person other than the state archaeologist, or a person or
12 group with a right to remove or a right of possession or stewardship
13 pursuant to this section, or a designee thereof, who intentionally
14 removes human remains or funerary objects from a burial site shall be
15 guilty of a class A misdemeanor, as defined in the penal law.
16    (c) Any person (i) who knowingly defaces or destroys a burial site,
17 human remains or funerary objects, or (ii) who, knowing that a burial
18 site, human remains, or funerary objects exist causes another person to
19 deface or destroy such burial site, human remains, or funerary objects,
20 or (iii) who possesses human remains or funerary objects with intent to
21 sell such remains or artifacts, or (iv) who sells or attempts to sell
22 human remains or funerary objects, except when authorized by law, shall
23 be guilty of a class E felony, as defined in the penal law.
24    9. Enforcement. The attorney general or any aggrieved party, including
25 the committee and any lineal descendant or culturally-affiliated group,
26 may bring an action in supreme court in the judicial district where the
27 remains or objects covered by this section are located to enjoin
28 violations or threatened violations of this section, and to recover such
29 remains or objects.
30    § 4. Section 235 of the education law is amended to read as follows:
31    § 235. State science service.  There shall be maintained in the
32 university a science service which shall be known as the state science
33 service and the state geologist, paleontologist, botanist [and], ento-
34 mologist, and archaeologist shall constitute its staff together with
35 such other scientists as the regents may employ or who are now employed
36 by them.  This service is empowered and directed to make available its
37 services to all the departments of the state, and the residents of the
38 state under such rules and regulations as the regents may prescribe and
39 is empowered to engage in such scientific research as directed by law or
40 by the regents and shall cooperate with scientific units or agencies of
41 other states, the federal government, educational institutions and
42 industry in the discovery, analysis and dissemination of scientific
43 information.  The director of the state museum shall also be the direc-
44 tor and head of the state science service and the staff of the service
45 shall be members of the staff of the state museum.
46    § 5.  This act shall take effect on the ninetieth day after it shall
47 have become a law; provided, however, that if chapter 817 of the laws of
48 2022 shall not have taken effect on or before such date then section two
49 of this act shall take effect on the same date and in the same manner as
50 such chapter of the laws of 2022 takes effect.
51    § 2. Severability clause. If any clause, sentence, paragraph, subdivi-
52 sion, section or part of this act shall be adjudged by any court of
53 competent jurisdiction to be invalid, such judgment shall not affect,
54 impair, or invalidate the remainder thereof, but shall be confined in
55 its operation to the clause, sentence, paragraph, subdivision, section
56 or part thereof directly involved in the controversy in which such judg-

1  ment shall have been rendered. It is hereby declared to be the intent of
2  the legislature that this act would have been enacted even if such
3  invalid provisions had not been included herein.
4      § 3.  This  act shall take effect immediately provided, however, that
5  the applicable effective date of Parts A through OO of this act shall be
6  as specifically set forth in the last section of such Parts.